**22-2025, 22-2028, 22-2029, 22-2030, 22-2032, 22-2037**

# United States Court of Appeals for the Federal Circuit

CELLSPIN SOFT, INC.,

*Plaintiff-Appellant,*

*v.*

FITBIT LLC, NIKE, INC., UNDER ARMOUR, INC., FOSSIL GROUP, INC., MISFIT, INC., NIKON AMERICAS, INC., NIKON INC., GARMIN INTERNATIONAL, INC., GARMIN USA, INC.,

*Defendants-Appellees.*

*Appeal from the United States District Court for the Northern District of California, in Case Nos. 4:17-cv-05928, 4:17-cv-05931, 4:17-cv-05932, 4:17-cv-05933, 4:17-cv-05936, and 4:17-CV-05934*
*(Hon. Yvonne Gonzalez Rogers, Judge)*

## BRIEF OF DEFENDANTS-APPELLEES GARMIN INTERNATIONAL, INC. AND GARMIN USA, INC.

RACHAEL D. Lamkin
LAMKIN IP DEFENSE
One Harbor Drive, Suite 304
Sausalito, California 94965
(916) 757-6091
rdl@LamkinIPDefense.com

*Counsel for Defendants-Appellees Garmin International, Inc. and Garmin USA, Inc.*

**Claim 1 of U.S. Patent No. 8,738,794 (per Fed. Cir. R. 32(a)(3))**

1. A method for acquiring and transferring data from a Bluetooth enabled data capture device to one or more web services via a Bluetooth enabled mobile device, the method comprising:

> providing a software module on the Bluetooth enabled data capture device;
>
> providing a software module on the Bluetooth enabled mobile device;
>
> establishing a paired connection between the Bluetooth enabled data capture device and the Bluetooth enabled mobile device;
>
> acquiring new data in the Bluetooth enabled data capture device, wherein new data is data acquired after the paired connection is established;
>
> detecting and signaling the new data for transfer to the Bluetooth enabled mobile device, wherein detecting and signaling the new data for transfer comprises:
>
>> determining the existence of new data for transfer, by the software module on the Bluetooth enabled data capture device; and
>>
>> sending a data signal to the Bluetooth enabled mobile device, corresponding to existence of new data, by the software module on the Bluetooth enabled data capture device automatically, over the established paired Bluetooth connection, wherein the software module on the Bluetooth enabled mobile device listens for the data signal sent from the Bluetooth enabled data capture device, wherein if permitted by the software module on the Bluetooth enabled data capture device, the data signal sent to the Bluetooth enabled mobile device comprises a data signal and one or more portions of the new data;
>
> transferring the new data from the Bluetooth enabled data capture device to the Bluetooth enabled mobile device automatically over the paired Bluetooth connection by the software module on the Bluetooth enabled data capture device;
>
> receiving, at the Bluetooth enabled mobile device, the new data from the Bluetooth enabled data capture device;

> applying, using the software module on the Bluetooth enabled mobile device, a user identifier to the new data for each destination web service, wherein each user identifier uniquely identifies a particular user of the web service;
>
> transferring the new data received by the Bluetooth enabled mobile device along with a user identifier to the one or more web services, using the software module on the Bluetooth enabled mobile device;
>
> receiving, at the one or more web services, the new data and user identifier from the Bluetooth enabled mobile device, wherein the one or more web services receive the transferred new data corresponding to a user identifier; and
>
> making available, at the one or more web services, the new data received from the Bluetooth enabled mobile device for public or private consumption over the internet, wherein one or more portions of the new data correspond to a particular user identifier.

Appx396 (11:48-12:38).

**Claim 1 of U.S. Patent No. 8,892,752 (per Fed. Cir. R. 32(a)(3))**

1. A method for transferring data from a Bluetooth enabled data capture device to a remote internet server via a Bluetooth enabled mobile device comprising:

performing at the Bluetooth enabled data capture device:

establishing a secure paired Bluetooth connection between the Bluetooth enabled data capture device and the Bluetooth enabled mobile device, wherein the secure paired Bluetooth connection uses a cryptographic encryption key;

acquiring new data in the Bluetooth enabled data capture device, wherein new data is data acquired after the secure paired Bluetooth connection is established;

detecting and signaling the new data for transfer, to the Bluetooth enabled mobile device, wherein detecting and signaling the new data for transfer comprises:

receiving a message from the Bluetooth enabled mobile device, over the established secure paired Bluetooth connection, to enable event notifications, corresponding to new data for transfer, on the Bluetooth enabled data capture device;

enabling event notification on Bluetooth enabled data capture device, corresponding to new data for transfer;

determining existence of the new data for transfer; and

sending an event notification to the Bluetooth enabled mobile device, corresponding to existence of new data for transfer, over the established secure paired Bluetooth connection, wherein the Bluetooth enabled mobile device is configured to listen for the event notification sent from the Bluetooth enabled data capture device;

encrypting, using the cryptographic encryption key, the new data acquired in the Bluetooth enabled data capture device; and

> transferring the encrypted data from the Bluetooth enabled data capture device to the Bluetooth enabled mobile device, over the established secure paired Bluetooth connection, wherein the Bluetooth enabled mobile device has access to the internet, wherein the Bluetooth enabled mobile device is configured to receive the encrypted data and obtain the new data from the encrypted data using the cryptographic encryption key, wherein the Bluetooth enabled mobile device is configured to attach a user identifier, an action setting and a destination web address of a remote internet server to the obtained new data, wherein the user identifier uniquely identifies a particular user of internet service provided by the remote internet server, wherein action setting comprises one of a remote procedure call (RPC) method and hypertext transfer protocol (HTTP) method, and wherein the Bluetooth enabled mobile device is configured to send the obtained new data with the attached user identifier, an action setting and a destination web address to a remote internet server.

Appx411 (11:48-12:37).

**<u>Claim 1 of U.S. Patent No. 9,749,847 (per Fed. Cir. R. 32(a)(3))</u>**

1. A system comprising:

a Bluetooth enabled data capture device, comprising:

a first memory device;

a first processor coupled to the first memory device;

a first Bluetooth communication device configured to establish a paired Bluetooth wireless connection between the Bluetooth enabled data capture device and a Bluetooth enabled cellular phone, wherein the Bluetooth enabled data capture device is configured to cryptographically authenticate identity of the Bluetooth enabled cellular phone when the first Bluetooth communication device establishes the paired Bluetooth wireless connection;

a data capture circuitry;

said first processor configured to acquire new-data using the data capture circuitry after the paired Bluetooth wireless connection between the Bluetooth enabled data capture device and the Bluetooth enabled cellular phone is established;

said first processor configured to store the acquired new-data in the first memory device; and said first processor configured to send an event notification and the acquired new-data to the cryptographically authenticated Bluetooth enabled cellular phone over the established paired Bluetooth wireless connection, wherein the event notification corresponds to the acquired new-data and comprises sending a signal to the cryptographically authenticated Bluetooth enabled cellular phone;

a mobile application in the Bluetooth enabled cellular phone comprising executable instructions that, when executed by a second processor inside the Bluetooth enabled cellular phone controls the second processor to:

detect and receive the acquired new-data, comprising:

> listen for the event notification, sent from the Bluetooth enabled data capture device, over the established paired Bluetooth wireless connection, wherein the event notification corresponds to the acquired new-data; and
>
> receive the event notification and the acquired new-data, from the Bluetooth enabled data capture device, over the established paired Bluetooth wireless connection, wherein receiving the event notification comprises receiving the signal sent by the Bluetooth enabled data capture device corresponding to the acquired new-data;
>
> store the new-data received over the established paired Bluetooth wireless connection, in a second memory device of the Bluetooth enabled cellular phone before transfer to a website; and
>
> use HTTP to transfer the new-data received over the established paired Bluetooth wireless connection, along with user information stored in the second memory device of the cryptographically authenticated Bluetooth enabled cellular phone, to the website, over the cellular data network;
>
> wherein the mobile application further comprises executable instructions to control the processor to provide a graphical user interface (GUI) for the new-data.

Appx427-428 (12:13-13:3).

# CERTIFICATE OF INTEREST

Counsel for Garmin International, Inc. and Garmin USA, Inc. ("Garmin") certify under Federal Circuit Rule 47.4 that the following information is accurate and complete to the best of their knowledge:

1. **Represented Entities.** Provide the full names of all entities represented by undersigned counsel in this case.

Garmin International, Inc. and Garmin USA, Inc.

2. **Real Parties in Interest.** Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

None (other than named entities).

3. **Parent Corporations and Stockholders.** Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

Garmin, LTD.

4. **Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court.

None.

5. **Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case.

*Cellspin Soft, Inc. v. Moov Inc.*, 4:17-cv-05929 (N.D. Cal.)
*Cellspin Soft, Inc. v. Nike, Inc.*, 6:21-cv-00803 (W.D. Tex.)
*Cellspin Soft, Inc. v. Panasonic Corp.*, 20-1948 (Fed. Cir.)
*Cellspin Soft, Inc. v. Canon U.S.A., Inc.*, 20-1947 (Fed. Cir.)
*Cellspin Soft, Inc. v. Canon U.S.A., Inc.*, 4:17-cv-05938 (N.D. Cal)
*Cellspin Soft, Inc. v. GoPro, Inc.*, 4:17-cv-05939 (N.D. Cal)

*Cellspin Soft, Inc. v. Panasonic Corp. of N. Am.*, 4:17-cv-05941 (N.D. Cal)
*Cellspin Soft, Inc. v. JK Imaging Ltd.*, 4:17-cv-06881 (N.D. Cal)
*Cellspin Soft, Inc. v. Garmin Int'l, Inc.*, 4:20-cv-03673 (N.D. Cal)

6. **Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).

Not applicable.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......... iv

I. STATEMENT OF RELATED CASES .......... vii

II. INTRODUCTION .......... 1

III. STATEMENT OF THE ISSUES .......... 5

IV. STATEMENT OF THE CASE .......... 7

A. Garmin is the Actual Innovator .......... 7

B. The Asserted Claims Are Directed To A Particular Way To Use Bluetooth To Transmit New Data .......... 9

C. Garmin's 145+ Diverse Accused Devices, Employing Custom, Proprietary Bluetooth Configurations, Do Not Infringe Cellspin's Narrow Claims .......... 9

D. Rule 28(b) Disclosure .......... 10

V. SUMMARY OF THE ARGUMENT .......... 11

VI. ARGUMENT .......... 12

A. Standard of Review .......... 12

B. Cellspin's Global Attacks Against The District Court's Summary Judgment Order Are Meritless .......... 12

1. The District Court's Summary Judgment Order Reflects Its Careful Consideration Of The Evidentiary Record .......... 13

2. The District Court Correctly Characterized Cellspin's Expert's Opinions As Conclusory .......... 13

C. Cellspin Has Failed To Evidence That The Accused Products Meet The *User Identifier* And *User Information* Limitations Present In Every Asserted Claim....................................................13

D. Cellspin Has Failed To Evidence That The Accused Instrumentalities Perform The Steps Of The Asserted Method Claims In The Required Temporal Order..........................................16

E. Cellspin Has Failed To Evidence That The Step Of *Providing A Software Module* Is Performed In The United States..........................20

F. Cellspin Has Failed To Evidence That Garmin's Devices Themselves Infringe (Paired Connection) .........................................23

G. Cellspin Has Failed To Evidence That The Accused Garmin Devices Detect, Signal, And Determine New Data For Transfer .......30

H. Cellspin Has Failed to Evidence That Garmin Itself Performs Every Step of the Asserted Method Claims Via Internal Testing, Performed in the United States.........................................................34

I. Cellspin Has Failed to Evidence that Anyone Has Assembled the Claimed System..........................................................................35

J. Cellspin Has Failed To Evidence That The Accused Devices Contain A *First Processor* ..................................................................36

K. Cellspin Has Failed to Evidence Any Evidence of the Claimed *Second Processor* in Mobile Phones ..................................................38

L. No Inducement As a Matter of Law ..................................................40

M. Cellspin Has Failed To Evidence That The *New Data* Associated With *Event Notifications* Is The Same *New Data* Sent To Websites...........................................................................................41

VII. CONCLUSION...........................................................................................45

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Becton Dickinson & Co. v. C.R. Bard, Inc.*,
922 F.2d 792 (Fed. Cir. 1990)....................23

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
927 F.3d 1306 (Fed. Cir. 2019)....................1, 3, 4, 7

*Cellspin Soft, Inc. v. Fitbit, Inc., Nike, Inc., Under Armour, Inc., Fossil Grp.*,
No. 4:17-CV-05928-YGR,
2022 U.S. Dist. LEXIS 129030 (N.D. Cal. June 7, 2022)....................10

*Centillion Data Sys., LLC v. Qwest Communs. Int'l*,
631 F.3d 1279 (Fed. Cir. 2011)....................35, 36

*Christian Legal Soc'y Chapter of Univ. of Cal. v. Wu*,
626 F.3d 483 (9th Cir. 2010)....................15

*Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*,
460 F.3d 1349 (Fed. Cir. 2006)....................22, 39

*E-Pass Techs., Inc. v. 3Com Corp.*,
473 F.3d 1213 (Fed. Cir. 2007)....................17, 19

*Ericsson, Inc. v. D-Link Sys.*,
773 F.3d 1201 (Fed. Cir. 2014)....................23, 30

*Finjan, Inc. v. Blue Coat Sys., LLC*,
283 F. Supp. 3d 839 (N.D. Cal. 2017)....................18

*Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*,
45 F.3d 1550 (Fed. Cir. 1995)....................22

*Harris Corp. v. Fed. Express Corp.*,
502 F. App'x 957 (Fed. Cir. 2013)....................42

*IBM v. Booking Holdings Inc.*,
775 F. App'x 674 (Fed. Cir. 2019)........................................................29, 30

*In re Personalweb Techs.*,
No. 18-md-02834-BLF,
2020 U.S. Dist. LEXIS 225266 (N.D. Cal. Feb. 3, 2020)....................... 21-22

*Invitrogen Corp. v. Clontech Labs., Inc.*,
429 F.3d 1052 (Fed. Cir. 2005)..................................................................22

*Joy Technologies, Inc. v. Flakt, Inc.*,
6 F.3d 770 (Fed. Cir. 1993).......................................................................40

*Koninklijke Philips N.V. v. Zoll Med. Corp.*,
656 F. App'x 504 (Fed. Cir. 2016)............................................................30

*Limelight Networks, Inc. v. Akamai Techs, Inc.*,
572 U.S. 915 (2014)..................................................................................40

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995).....................................................................22

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) ...............................3

*Miller v. Fairchild Indus., Inc.*,
797 F.2d 727 (9th Cir. 1986).....................................................................16

*Music Square Church v. United States*,
218 F.3d 1367 (Fed. Cir. 2000)..................................................................15

*Novartis Corp. v. Ben Venue Labs., Inc.*,
271 F.3d 1043 (Fed. Cir. 2001)......................................................2, 3, 32, 34

*NTP, Inc. v. Rsch. In Motion Ltd*,
418 F.3d 1282 (Fed. Cir. 2005)..................................................20, 21, 23, 35

*One, Inc. v. Uber Techs., Inc.*,
440 F. Supp. 3d 1019 (N.D. Cal. 2020).......................................................42

*Pandrol USA, LP v. Airboss Ry. Prods.*,
320 F.3d 1354 (Fed. Cir. 2003)....................................................................23

*Rohm and Haas Co. v. Brotech Corp.*,
127 F.3d 1089 (Fed. Cir. 1997)....................................................................18

*Rumsfeld v. Freedom NY, Inc.*,
346 F.3d 1359 (Fed. Cir. 2003)....................................................................23

*Safeguard Base Operations, LLC v. United States*,
989 F.3d 1326 (Fed. Cir. 2021)....................................................15, 25, 34, 43

*Sandisk Corp. v. Memorex Prods.*,
415 F.3d 1278 (Fed. Cir. 2005)....................................................................14

*SiRF Tech., Inc. v. ITC*,
601 F.3d 1319 (Fed. Cir. 2010)....................................................23, 24, 29, 30

*SmithKline Beecham Corp. v. Apotex Corp.*,
439 F.3d 1312 (Fed. Cir. 2006)....................................................................15

*Traxcell Techs., LLC v. Sprint Communs. Co. LP*,
15 F.4th 1121 (Fed. Cir. 2021).........................................................2, 3, 32, 34

**RULES**

Fed. R. App. P. 28(b)...........................................................................................10

Fed. R. App. P. 28(i).......................................................................................12, 13

**STATEMENT OF RELATED CASES**

Pursuant to Federal Circuit Rule 47.5(a), Garmin International, Inc. and Garmin USA, Inc. ("Garmin") provides the following statement of related cases.

An appeal from the same civil action was previously before this Court, titled *Cellspin Soft, Inc. v. Fitbit, Inc., et al.*, 927 F.3d 1306. The panel was composed of Judges Lourie, O'Malley, and Taranto.

The following cases are known to counsel to be pending that will directly affect or be affected by this Court's decision:

- *Cellspin Soft, Inc. v. Nike, Inc.*, Case No. 2022-2028 (Fed. Cir.), originating from Case No. 4:17-cv-05931-YGR (N.D. Cal.)
- *Cellspin Soft, Inc. v. Under Amour, Inc.*, Case No. 2022-2029 (Fed. Cir.), originating from 4:17-cv-05932-YGR (N.D. Cal.)
- *Cellspin Soft, Inc. v. Fossil Group, Inc., et al.*, Case No. 2022-2030 (Fed. Cir.), originating from 4:17-cv-05933-YGR (N.D. Cal.)
- *Cellspin Soft, Inc. v. Garmin International, Inc., et al.*, Case No. 2022-2037 (Fed. Cir.), originating from 4:17-cv-05934 (N.D. Cal.)

## II. INTRODUCTION

Cellspin finds itself in a self-inflicted, untenable position on appeal. It chose to continue to pursue infringement of over 300 functionally disparate products from 8 different companies when, *inter alia*, this Court had already held that it did not invent the only building blocks common to these 300 products. *See Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1316 (Fed. Cir. 2019) ("But the patents' shared specification acknowledges that users could already transfer data from a data capture device—even an Internet-incapable device—to a website.") In a continued attempt to allege infringement employing narrow claims over 300 diverse products, Cellspin (i) had its expert bulk-cite to largely irrelevant portions of the record, (ii) served identical expert reports on many of the Appellees, and then (iii) hoped that no one noticed the lack of any evidence specific to the accused products.

But the district court did notice. The district court found that Cellspin and its expert cited "to swaths of documents without explanation" resulting in opinions that were "conclusory and lacking substance." Appx0032 (SJ Order, 2:12-16). Without any evidence specific to the accused products, or in many cases specific to the accused party, the district court rightfully concluded that Cellspin "fail[ed] to marshal the evidence necessary to defeat the defendants' summary judgment motions." *Id*. at 2:6-9; 5:12-18 (Appx0035). Nothing on appeal can change this conclusion. The same flaws that doomed Cellspin on summary judgment will doom

its appeal—it has no evidence of infringement on, at least, 7 independent bases for the '794 and '752 method claims, an additional 8th basis for the '794 method claims, and 6 independent bases for the asserted system claims of the '847 patent:

| **Noninfringement Issue** | **Asserted Method Claims** | | **Asserted System Claims** |
|---|---|---|---|
| | **'794 Patent** | **'752 Patent** | **'847 Patent** |
| No User Identifier or User Information | ✓ | ✓ | ✓ |
| No Temporal Order | ✓ | ✓ | |
| No Performance In The United States | ✓ | | |
| No Establishing A Paired Bluetooth Connection | ✓ | ✓ | |
| No Detect & Determine the Existence of New Data | ✓ | ✓ | |
| No Internal Testing of the Claimed Methods (No Garmin Direct Infringement) | ✓ | ✓ | |
| No Assembly (No Garmin Direct Infringement) | | | ✓ |
| No First Processor | | | ✓ |
| No Second Processor | | | ✓ |
| No Inducement | ✓ | ✓ | ✓ |
| No New Data Sent to Websites | ✓ | ✓ | ✓ |

It's not the district court's duty, nor this Court's responsibility, to dig through bulk citations to piece together an infringement case for Cellspin. *Traxcell Techs., LLC v. Sprint Communs. Co. LP*, 15 F.4th 1121, 1133 (Fed. Cir. 2021); *see also Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1054 (Fed. Cir. 2001) ("it was Novartis's obligation to set forth the detailed basis of its evidence such that the

district court could evaluate whether it could support a finding of infringement by a reasonable fact-finder. Without such basis in the record, we must regard Dr. Nauman's opinion as no more than theoretical speculation[.]"). As in *Traxcell*, Cellspin "didn't explain how any of these approaches match up to the court's claim construction, how the approaches are actually used in the accused technology, and how the approaches would meet other limitations of the claims." *Traxcell*, at 1130 (*citing Novartis*, 271 F.3d, at 1054; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

To be clear, this is not the case where Cellspin could have demonstrated infringement but simply had too much on its plate, or that its attorneys failed where other attorneys might have succeeded. Cellspin failed to evidence infringement because the accused products do not infringe.

The Patents-in-Suit cover, at a high level, systems and methods for collecting data, then sending data—using Bluetooth—from the collecting device to an intermediary device where operations occur, and then sending the data to websites. As this Court has already found, none of these ideas were new: "the patents' shared specification acknowledges that users could already transfer data from a data capture device—even an Internet-incapable device—to a website." *Cellspin*, 927 F.3d, at 1316 (patent citations omitted). Because these ideas were not new, Cellspin's issued

claims are narrow and drawn to very specific methods for transferring data from a capture device to an intermediary device to the internet. *See id.*, at 1315-19.

As to Garmin, Cellspin accused more than 145 functionally diverse devices, from a baseball bat swing sensor to a bicycle peddle to high-end watches. Many of the accused products don't even have Bluetooth, a requirement of each claim. Undaunted, Cellspin attempted to assert its patents over not only Garmin's wide range of disparate devices but also over soccer balls (Adidas), cameras (Nikon), and shoes (Nike). It should come as no surprise that Cellspin was unable to evidence infringement.

Although Garmin parses out each individual issue, *infra*, the real issue before this Court is: can a patentee assert narrow claims against more than 300 functionally disparate products from 8 different companies, supported by a generic expert report with bulk citations to the record, and survive summary judgement of non-infringement? The clear answer is no.

The district court's summary judgment order should be affirmed.

## III. STATEMENT OF THE ISSUES

1. Whether, for all asserted claims for each asserted patent, the district court properly exercised its discretion to exclude Cellspin's only infringement theory for the *user identifier* and *user information* limitations as untimely under the Patent Local Rules of the Northern District of California and thus properly granted summary judgment of noninfringement.

2. Whether, for all asserted method claims (the claims of the '794 and '752 patents) the district court correctly granted summary judgment of noninfringement because Cellspin failed to proffer evidence that the accused system performs the claimed operations in the order required.

3. Whether, for all asserted method claims of the '794 patent, the district court correctly granted summary judgment of noninfringement because there is no evidence that Garmin *provides a software module* in the United States.

4. Whether, for all asserted method claims (the claims of the '794 and '752 patents) the district court correctly granted summary judgment of noninfringement because the accused devices do not operate automatically and without user intervention.

5. Whether, for all asserted method claims (the claims of the '794 and '752 patents) the district court correctly granted summary judgment of noninfringement

because Cellspin failed to evidence that the accused Garmin watches *detect* and *determine new data*.

6. Whether, for all asserted method claims (the claims of the ’794 and ’752 patents) the district court correctly granted summary judgment of noninfringement because Garmin does not test the accused devices in the United States.

7. Whether, for all asserted system claims (the claims of the ’847 patent) the district court correctly granted summary judgment of noninfringement because Cellspin failed to evidence that Garmin has put the claimed system into use in the United States.

8. Whether, for all asserted system claims (the claims of the ’847 patent) the district court correctly granted summary judgment of noninfringement because Cellspin proffered no evidence that the accused Garmin devices have a *first processor*.

9. Whether, for all asserted system claims (the claims of the ’847 patent) the district court correctly granted summary judgment of noninfringement because Cellspin proffered no evidence that the accused Garmin devices have a *second processor*.

10. Whether the district court properly found there can be no inducement where there is no direct infringement.

11. Whether, for all asserted claims for each asserted patent, this Court can affirm the trial court's non-infringement finding based on the record because the accused Garmin system does not meet the *new data* limitations.

## IV. STATEMENT OF THE CASE

### A. Garmin is the Actual Innovator

Garmin is a Swiss-domiciled technology company founded more than 3 decades ago in Lenexa, Kansas, with U.S. headquarters in Olathe, Kansas. Garmin is a world-renowned innovator in the technologies underpinning the accused instrumentalities, including Bluetooth and complex fitness and health tracking. Garmin's accused products predate the formation of Plaintiff Cellspin by at least a decade. The accused eTrex products were introduced in 2000 and the accused Forerunner products were introduced in 2005, long before Cellspin filed its asserted patents.

Plaintiff Cellspin asserted three patents drawn largely to the same subject matter: (i) a data capture device; (ii) Bluetooth; (iii) a mobile phone; (iv) with a mobile phone application; and (v) web services. *Cellspin Soft*, 927 F.3d, at 1315-17; *see also, e.g.*, Appx0396 ('794 patent, claim 1, 11:48-12:38). That is, Cellspin's patents cover a *data capture device*, e.g., the accused Nikon camera or the accused Adidas soccer ball or the accused Garmin bicycle peddle. The *data capture device* collects *new data* and sends that *new data* to a *mobile device* (e.g., a mobile phone)

using *Bluetooth*. The phone performs operations on the *new data* (e.g., attaches a *user identifier* ('752, '794) or *user information* ('847) to the *new data* and sends said *new data* to a website. *See e.g.*, Appx0396 ('794 patent, claim 1, 11:48-12:38); Appx0411 ('752 patent, claim 1, 11:48-12:38); Appx0427-0428 ('847 patent, claim 1, 12:12-13:9).

The asserted claims and the accused Garmin system are fundamentally different. As Cellspin's expert, Mr. Vijh, concedes, "Cellspin's patents … cover a ***specific way*** of using Bluetooth to communicate data from a data capture device to a web server using an intermediary mobile device." Appx15646. But of the accused devices that even employ Bluetooth—as opposed to Garmin's proprietary Bluetooth alternative (ANT+)—said devices use proprietary, custom Bluetooth configurations, configurations that are radically different than the asserted claims. *See* Appx4562 (Vijh Depo Tr., 25:13-26:9 wherein Cellspin's expert admits that Garmin's devices use custom, proprietary Bluetooth configurations); Appx11156-11157, Appx11159, Appx11218-11220, Appx11220-11222 (Gallup Depo Tr., at 26:23-27:9, 29:1-12, 88:22-90:1, 90:25-92:12, 92:6-12, wherein Garmin's Bluetooth team lead explains that Garmin's devices use custom, proprietary Bluetooth configurations).

One should be fundamentally suspicious of an infringement case wherein the patentee asserts narrow claims against a broad range of functionally diverse products, as Cellspin has done here. Regardless, as to Garmin, Cellspin has failed

to demonstrate that Garmin's award-winning devices meet the asserted system and method claims.

### B. The Asserted Claims Are Directed To A Particular Way To Use Bluetooth To Transmit New Data

Pursuant to Federal Rule of Appellate Procedure 28(i), Garmin joins and incorporates by reference Section IV.A of Fitbit's response brief in Lead Appeal No. 22-2025.

### C. Garmin's 145+ Diverse Accused Devices, Employing Custom, Proprietary Bluetooth Configurations, Do Not Infringe Cellspin's Narrow Claims

Garmin's 145+ accused devices each comprise distinct functionality and employ Garmin's proprietary, custom Bluetooth configurations, *supra*. Cellspin's infringement allegations are so obtuse and impenetrable that Cellspin itself accused products that cannot possible infringe, and has litigated those products for 6 years. For example, all asserted claims require Bluetooth, and yet Cellspin admits it accused at least 6 products that do not even have Bluetooth. Appx15663 (Cellspin's Response to Garmin's Undisputed Facts, Facts Nos. 3-8). At the 11th hour, Cellspin realized it had accused products without Bluetooth and has tried to drop its

allegations related to those claims. *See id.*[1] But the material take-away is that Cellspin litigated this case for 6 years, drafting and serving infringement contentions, expert reports, and summary judgment motions, and never realized its own contentions were impossible.

Cellspin has no evidence of infringement on, at least, 7 independent bases for the ’794 and ’752 method claims, an additional 8th basis for the ’794 method claims, and 6 independent bases for the asserted system claims of the ’847 patent:

### D. Rule 28(b) Disclosure

Pursuant to Federal Circuit Rule 28(b), the citation to the order appealed is *Cellspin Soft, Inc. v. Fitbit, Inc., Nike, Inc., Under Armour, Inc., Fossil Grp*., No. 4:17-CV-05928-YGR, 2022 U.S. Dist. LEXIS 129030 (N.D. Cal. June 7, 2022).

---

[1] In its Response to Garmin’s Undisputed Facts, Cellspin does not dispute that the 6 products do not have Bluetooth. Instead, as to each device it states, “This device is not accused.” Appx15663. That is not accurate. In 2022, Cellspin attempted to withdraw its accusations as to those 6 products. Appx0377 (Dkt. No. 197, Notice of Removal). Cellspin filed its “Notice” on January 24, 2022, four years and three months after it filed its Complaint. More importantly, a party cannot amend its infringement contentions with a “notice”. NDCA PLR 3-6. Those improperly accused 6 devices—along with all Garmin improperly accused devices—remain in the case.

## V. SUMMARY OF THE ARGUMENT

The district court's order finding that Cellspin failed to evidence infringement as to Garmin should be affirmed on, at least, 7 independent bases for the '794 and '752 method claims, an additional 8th basis for the '794 method claims, and 6 independent bases for the asserted system claims of the '847 patent:

| Noninfringement Issue | Asserted Method Claims | | Asserted System Claims |
|---|---|---|---|
| | '794 Patent | '752 Patent | '847 Patent |
| No User Identifier or User Information | ✓ | ✓ | ✓ |
| No Temporal Order | ✓ | ✓ | |
| No Performance In The United States | ✓ | | |
| No Establishing A Paired Bluetooth Connection | ✓ | ✓ | |
| No Detect & Determine the Existence of New Data | ✓ | ✓ | |
| No Internal Testing of the Claimed Methods (No Garmin Direct Infringement) | ✓ | ✓ | |
| No Assembly (No Garmin Direct Infringement) | | | ✓ |
| No First Processor | | | ✓ |
| No Second Processor | | | ✓ |
| No Inducement | ✓ | ✓ | ✓ |
| No New Data Sent to Websites | ✓ | ✓ | ✓ |

## VI. ARGUMENT

The district court's grant of summary judgment as to Garmin should be affirmed on each of its 10 independent non-infringement grounds. And, the Court can and should affirm the district court based on one additional ground; *i.e.*, Cellspin has failed to evidence that *new data* gets sent to websites, a requirement of every asserted claim of each asserted patent.

Cellspin begins its appeal brief by attacking the district court's summary judgment order globally, arguing that "[t]hroughout its Order," the district court failed to properly credit Cellspin's cited evidence. Br., at 17, 20, 37. Cellspin then proceeds to challenge each of the 10 grounds on which the district court granted summary judgment in favor of Garmin. But Cellspin cannot prevail on ***any*** of its appeal issues, let alone a sufficient number to warrant vacatur of any portion of the summary judgment order with respect to any asserted claim.

### A. Standard of Review

Pursuant to Federal Rule of Appellate Procedure ("Rule") 28(i), Garmin incorporates by reference Section VI.A of Fitbit's response brief in Lead Appeal No. 22-2025.

### B. Cellspin's Global Attacks Against The District Court's Summary Judgment Order Are Meritless.

Pursuant to Rule 28(i), Garmin incorporates by reference Section VI.B of Fitbit's response brief in Lead Appeal No. 22-2025.

#### 1. The District Court's Summary Judgment Order Reflects Its Careful Consideration Of The Evidentiary Record.

Pursuant to Rule 28(i), Garmin incorporates by reference Section VI.B.1 of Fitbit's response brief in Lead Appeal No. 22-2025.

#### 2. The District Court Correctly Characterized Cellspin's Expert's Opinions As Conclusory.

Pursuant to Rule 28(i), Garmin incorporates by reference Section VI.B.2 of Fitbit's response brief in Lead Appeal No. 22-2025.

### C. Cellspin Has Failed To Evidence That The Accused Products Meet The *User Identifier* And *User Information* Limitations Present In Every Asserted Claim

The Asserted Method Claims require "attaching" or "applying" a "user identifier" at an intermediary device and the asserted system claims require that "user information" be "stored" at an intermediary device before being sent "along with" new data. Appx396 ('794 patent, claim 1, 12:20-24); Appx397 ('794 patent, claim 16, 14:46-50) Appx411 ('752 patent, claim 1, 12:17-37), Appx412 ('752 patent, claim 12, 14:26-32); Appx427-428 ('847 patent, claim 1, 12:62-67). Garmin moved for summary judgment on the basis that Cellspin lacked evidence that the accused Garmin devices meet the *user identifier* and *user information* claim limitations. Appx0099-100.

In response, Cellspin relied exclusively on an infringement theory based on an "OAuth token" that Cellspin never disclosed in its infringement contentions. The

district court exercised its discretion to exclude Cellspin's untimely infringement theory for violation of the Northern District of California's Patent Local Rules, and the court then found that Cellspin lacked any evidence that those limitations are met by the accused devices. Appx0099-100. The decision to enforce the local rules was within the district court's "sound discretion," and it should not be disturbed unless Cellspin can show that it was (i) clearly unreasonable, arbitrary, or fanciful; (ii) based on erroneous conclusions of law; (iii) clearly erroneous; or (iv) unsupported by any evidence. *Sandisk Corp. v. Memorex Prods*., 415 F.3d 1278, 1292 (Fed. Cir. 2005).

Cellspin makes no Garmin specific arguments on this issue. Br., at 65. As to Defendant-Appellee Fitbit, Cellspin admits that it did not discover Fitbit's use of OAuth tokens until after it received source code, *i.e.*, after it served infringement contentions. Br., 41. Cellspin was then obligated to move to amend its infringement contentions under the Northern District of California's Patent Local Rules. Appx0048 (SJ Order, at 18). Cellspin failed to do so, and the Court property excluded any reliance on OAuth tokens under well-established law. *See id*. That decision disposes of every asserted claim against all Defendant-Appellees, and this

Court can affirm summary judgment in favor of Garmin as to all patents on that basis alone.[2]

In its Appellant Brief, Cellspin provides no Garmin-specific arguments; *i.e.*, as to Garmin and the OAuth issue, Cellspin devotes a mere paragraph in its Brief:

> In the same manner in which the District Court erred with respect to its rulings relating to Defendant Fitbit, the District Court also necessarily erred in finding that Cellspin offered "a different infringement theory" involving OAuth tokens in its case against Garmin. Appx099-100 at 69:15-70:7. As such, Cellspin hereby adopts and incorporates by reference all arguments made *supra* concerning Fitbit. *See supra* at § VI.D.5.

Br., at 65.

Cellspin's drive-by mention, bereft of any specific arguments as to Garmin, cannot support reversal and remand. *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) ("We find that these mere statements of disagreement with the district court as to the existence of factual disputes do not amount to a developed argument.") (collecting cases); *Christian Legal Soc'y Chapter of Univ. of Cal. v. Wu*, 626 F.3d 483, 487 (9th Cir. 2010) ("we've refused

---

[2] The district court only ruled on the method claims in the Garmin section of its summary judgment order, but the court notes that Garmin, Nike, Fossil, and Fitbit ***have the same issue***. Appx0099 (FN 54). The district court ruled as to those Appellees that the issue resolves all asserted claims of each asserted patent. *See, e.g.*, Appx0047. Thus, this Court should affirm as to all asserted claims for Garmin alongside affirmance of the other Appellees on this issue. *Safeguard Base Operations, LLC v. United States*, 989 F.3d 1326, 1348 (Fed. Cir. 2021) ("This court may affirm on any basis supported by the record.") (*citing Music Square Church v. United States*, 218 F.3d 1367, 1373 (Fed. Cir. 2000).)

to address [appellant's] claims that were only argued in passing or that were bare assertion with no supporting argument.") (citations and formatting omitted); *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 738 (9th Cir. 1986) ("The Court of Appeals will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief.").

Garmin respectfully asks that this Court affirm and find that Cellspin failed to evidence the *user identifier* and *user information* limitations, together present in every asserted claim of each asserted patent.

### D. Cellspin Has Failed To Evidence That The Accused Instrumentalities Perform The Steps Of The Asserted Method Claims In The Required Temporal Order

For all asserted method claims (the '752 and '794 patents), Cellspin conceded that claims must be performed in order (with three exceptions not relevant on appeal). Appx11073-11076 (CC Hearing Tr. 30:8-33:13). On appeal, Cellspin does not dispute that the asserted method claims must be performed in order. *See* Br., at 24. And, Cellspin proffered no actual evidence that the accused Garmin system follows the claimed temporal steps.

By way of example, each asserted claim of the '752 patent requires that the watch: (1) obtain new data; then (2) enable event notifications; then (3) determine the existence of new data; and then (4) send an event notification to the phone corresponding to the existence of new data for transfer. Appx0411 ('752, 11:57,

12:1-8); Appx0034-0036 (SJ Order, 4:8-6:6). Cellspin has proffered no evidence that the accused Garmin devices follow this temporal order. Cellspin's only discussion of the temporal order is at paragraph 134 of the Vijh Report. Appx1095-1097 (Vijh Rpt., ¶134). Paragraph 134 cites no Garmin evidence. Paragraph 134 merely cites back to Vijh's previous discussions of the claim elements, but those discussions do not contain any discussion of temporal order. *Id*. That is, for temporal order, Cellspin's expert Mr. Vijh states at paragraph 134:

> As I have discussed above, for a given bit of data, each of the recited elements of Claim 1 of the '752 Patent are performed by the Accused Instrumentalities and Accused Mobile Applications in the same order in which they appear in the Claim. More specifically, in my opinion, the secure paired Bluetooth connection between the Accused Instrumentalities and the mobile devices on which the Accused Mobile Applications are installed is carried out as a first step. See discussion above concerning Element 1.I.a of Claim 1 of the '752 Patent.

Appx1095-1096 (Vijh Rpt., ¶134).

Vijh then repeats this pattern throughout paragraph 134, stating his conclusion that the claimed element is performed in order, and then stating "see discussion above". Appx1095-1096. But nowhere "above" does Vijh discuss temporal order, much less evidence that the accused products follow the requisite claimed order. Cellspin's expert's unsupported conclusion that the accused system follows the requisite temporal order of the claims is insufficient as a matter of law. *E-Pass Techs., Inc. v. 3Com Corp*., 473 F.3d 1213, 1222 (Fed. Cir. 2007) ("However, this chart does not demonstrate that Visa actually performed or induced anyone to

perform all of the steps of the claimed method, much less that it did so in the necessary order and in the United States.”); *Finjan, Inc. v. Blue Coat Sys., LLC*, 283 F. Supp. 3d 839, 864 (N.D. Cal. 2017) (“Expert opinions are not evidence; thus, an expert’s unsupported assertion that an accused product contains a claim element is not sufficient to raise a material dispute.”) (*citing Rohm and Haas Co. v. Brotech Corp*., 127 F.3d 1089, 1092 (Fed. Cir. 1997).)

On appeal, Cellspin tells this Court, “The District Court first recognized that Vijh had expressly opined concerning the temporal order and its satisfaction by the Accused Garmin Instrumentalities, yet the District Court nevertheless failed to credit such testimony.” Br., at 62 (citing Appx0099 at 69:6-12). But in the provision cited by Cellspin, the district court is merely saying, even if you credit Cellspin with the statement of its expert, the statement does not evidence temporal order:

> The report does not indicate why event notifications are enabled after the message is received requesting enablement. The only evidence offered is Garmin source code that Vijh states contains “a function on the data capture device for allowing subscriptions to notifications of real-time updates to data such as heart rate and accelerometer values and the sending of real-time data to a subscriber.” *Id*. Even crediting Vijh’s description, it does not explain or otherwise indicate the performance of the event notifications in the requisite order.

Appx0099 (SJ Order, 69:6-12).

The district court did not, “first recognized that Vijh had expressly opined concerning the temporal order”. *Compare* Br., at 62 *with* Appx0099. The opposite is true.

Cellspin claims to have evidenced the order of performance of the event notifications limitation (*event notification on Bluetooth enabled data capture device, corresponding to new data for transfer*) because its expert opined that the accused Garmin devices are constantly ("persistently") collecting new data. Br., at 63. This attorney argument is nonsensical. If a device is constantly collecting data, why does it need to employ event notifications indicating the existence of new data? The accused Garmin devices do in fact constantly collect data; that is why they do ***not*** employ *event notifications corresponding to new data for transfer*. Regardless, Cellspin's statement is illusory; Vijh does not opine anywhere that persistent data collection proves something about the temporal order of the event notification limitation. The paragraph Cellspin cites from the Vijh Report (¶114) doesn't even mention event notifications. *See* Br., at 63-64 (*citing* Vijh Report ¶114, Appx1081-1082).

The alleged expert testing cited throughout Cellspin's Brief fares no better. *See, e.g.*, Br., at 63. Cellspin repeatedly states that its expert tested the accused devices. But there is no evidence that Cellspin's expert tested the actual temporal order by which the accused devices perform their alleged functions. *See E-Pass*, 473 F.3d, at 1222.

In any event, the fact that a device constantly collects data does not prove that event notifications happen in the claimed order in the accused devices, *i.e.*,

(i) enabling event notification on Bluetooth enabled data capture device, corresponding to new data for transfer; (ii) determining existence of the new data for transfer; and (iii) sending an event notification, to name but three of the many limitations that must be performed in order. *See* ’752 patent, 12:1-7.

Cellspin has failed to proffer any evidence that the accused Garmin devices follow the requisite temporal order of the asserted method claims (the ’795 and ’752 patents).

### E. Cellspin Has Failed To Evidence That The Step Of *Providing A Software Module* Is Performed In The United States

To prove infringement of the asserted claims of the ’794 patent, Cellspin must evidence that the limitation *providing a software module on the Bluetooth enabled data capture device* was performed in the United States. *See, e.g.*, *NTP, Inc. v. Rsch. In Motion Ltd*, 418 F.3d 1282, 1318 (Fed. Cir. 2005); Appx0396 (’794 patent, 11:52-53). For this step, Mr. Vijh opined only that “it is ***obvious and necessarily true*** that the Accused Instrumentalities are each provided with a software module ***at the time they are manufactured and shipped*** to consumers by the Defendant.” Appx1113 (Vijh Report ¶166, emphasis added).

It is undisputed that Garmin manufactures and assembles the accused products outside the United States. Appx3477 (Cellspin SJ Opp., 7:25-28); Appx0092 (SJ Order, at 62:16-19). The district court thus found that, as a matter of law, Garmin cannot infringe the ’794 patent. Appx0091-0092 (SJ Order, at 62:18-20); *see also*

*NTP, Inc. v. Research In Motion, Ltd*., 418 F.3d 1282, 1318 (Fed. Cir. 2005) ("We therefore hold that a process cannot be used 'within' the United States as required by section 271(a) unless each of the steps is performed within this country.")

At summary judgment Cellspin offered new attorney argument not disclosed under the court's Patent Local Rules *i.e*., that Garmin performs the step of providing a software module when, either (1) the watch is sold, or (2) the software on the watch is updated. *See* Appx0091 (SJ Order, 61:21-24). On appeal, Cellspin tells this Court, "these arguments do not contradict the testimony of Vijh, given that he opined how software is "provided" on multiple occasions: (i) when they are manufactured; and (ii) when they are shipped to consumers." Br., at 53 (*citing* Vijh Rpt., ¶166). But Cellspin's expert actually stated, "it is obvious and necessarily true that the Accused Instrumentalities are each provided with a software module at the time they are manufactured and shipped to consumers by the Defendant." Appx1113. Mr. Vijh does not provide "multiple" theories of infringement. Mr. Vijh did not opine or evidence Cellspin's attorney argument at the district court and here. Mr. Vijh only opined that, in his opinion, it is necessarily true that the software module is provided at manufacture and shipping. Appx1113. And it is undisputed that Garmin performs those actions outside the United States. Appx3477; Appx0092. Cellspin "may not replace its expert's analysis with attorney arguments to create a factual dispute." *In re Personalweb Techs*., No. 18-md-02834-BLF, 2020 U.S. Dist. LEXIS 225266, at

*39-40 (N.D. Cal. Feb. 3, 2020) (*citing Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc*., 45 F.3d 1550, 1562 (Fed. Cir. 1995); *Invitrogen Corp. v. Clontech Labs., Inc*., 429 F.3d 1052, 1068 (Fed. Cir. 2005).)

Finally, Cellspin appears to argue that the district court incorrectly construed the *providing a software module* limitation, *i.e*., that in the context of the '794 Patent, *providing a software module on the Bluetooth enabled data capture device* could be construed as "selling the accused device with a software module installed on the Bluetooth enabled device" or "updating the software module on the Bluetooth enabled device". Br., at 54. But Cellspin never expressly asked the district court to construe the *providing a software module* limitation as it now argues. *See* Appx3477-3478 (Cellspin SJ Opp., 7:23-8:27). As such, Cellspin cannot ask this Court to construe a term for the first time on appeal. *Conoco, Inc. v. Energy & Envtl. Int'l, L.C*., 460 F.3d 1349, 1358 (Fed. Cir. 2006) (a party may not introduce new claim construction arguments on appeal).

In the alternative, Cellspin appears to be suggesting, as it did at summary judgment, that it will ask the ***jury*** to construe the limitation in a multitude of ways. Appx3477-3478 (Cellspin SJ Opp.) That too is improper. *See Markman v. Westview Instruments, Inc*., 52 F.3d 967, 979 (Fed. Cir. 1995) (claim construction is a matter of law for the court to decide).

Cellspin's expert's opinion is that the *providing a software module* limitation is performed at manufacture and shipping. It is undisputed that Garmin manufactures and ships its devices outside the United States. Garmin cannot infringe the '794 patent as a matter of law. *NTP*, 418 F.3d, at 1318.

### F. Cellspin Has Failed To Evidence That Garmin's Devices Themselves Infringe (Paired Connection)

As to Garmin, Cellspin expressly abandoned any reliance on divided infringement. *See* Appx3474-3475 (Cellspin SJ Opp., 4:15-5:19, wherein Cellspin explains it is not alleging divided infringement). Further, Cellspin did not raise divided infringement as to Garmin on appeal. As such, Cellspin has waived any reliance on divided infringement on appeal. *Rumsfeld v. Freedom NY, Inc.*, 346 F.3d 1359, 1361 (Fed. Cir. 2003) ("An issue not raised by an appellant in its opening brief . . . is waived.") (*citing Pandrol USA, LP v. Airboss Ry. Prods*., 320 F.3d 1354, 1366 n.3 (Fed. Cir. 2003) (*quoting Becton Dickinson & Co. v. C.R. Bard, Inc*., 922 F.2d 792, 800 (Fed. Cir. 1990)) (alterations in original).

Cellspin was required to demonstrate that a single entity performed each and every step of the asserted method claims. *Ericsson, Inc. v. D-Link Sys*., 773 F.3d 1201, 1219 (Fed. Cir. 2014). Because Cellspin failed to evidence that any entity performed all of the steps of the '752 and '794 method claims in the requisite order, Cellspin attempts to rely on a rarely applied case, *SiRF Tech., Inc. v. ITC*, 601 F.3d 1319 (Fed. Cir. 2010), wherein liability attached where the accused device

automatically performed all steps of the claimed method without end-user assistance. *See id*., at 1331. Cellspin's reliance on *SiRF* is improbable on its face and impossible in its application.

Cellspin identifies this issue as "Establishing a Paired Connection" (Br., at 54), but properly phrased, the issue is: does the accused system automatically and without user intervention directly infringe the asserted method claims of the '752 and '794 patents, including, *inter alia*, automatically pairing the device and phone. The answer is no.

At summary judgment, Cellspin relied upon the following theory:

> Here, the evidence of record supports the conclusion that when the Accused Instrumentalities are in use, the claimed methods are carried out and performed entirely by Garmin's software in the Accused Devices and Mobile Applications. No claim limitation specifically recites any action by a user; rather, the Asserted Method Claims expressly recite actions performed exclusively in hardware and software. As such, Garmin directly infringes. To this end, Mr. Vijh has opined that all method steps are directly performed by Garmin's software.

Appx3474 (Cellspin SJ Opp., 4:25-5:4).

But, the asserted method claims require a user to establish a *paired* Bluetooth connection. For example, claim 1 of the '794 patent requires *establishing a **paired** connection between the Bluetooth enabled data capture device and the Bluetooth enabled mobile device*. Appx0396 ('794 patent, Claim 1, 11:55-57). And Claim 1 of the '752 patent, which requires *establishing a secure **paired** Bluetooth connection*

*between the Bluetooth enabled data capture device and the Bluetooth enabled mobile device*. Appx0411 ('752, Claim 1, 11:51-54).[3]

[remainder of page intentionally blank]

[3] Cellspin attempts to limit this issue to the '752 patent, but it implicates all method claims, *i.e.* both the '752 and '794 patents. *See* '794 patent, 11:56-58. To the extent the district court only ruled on the '752 claims, this Court should affirm as to all asserted method claims, *i.e.,* both the '752 and '794 patents. *Safeguard Base Operations, LLC v. United States*, 989 F.3d 1326, 1348 (Fed. Cir. 2021) ("This court may affirm on any basis supported by the record.").

Cellspin asserted at summary judgment and now asserts on appeal, that Garmin's software itself performs this limitation, not the user. Br., at 55. Cellspin's theory is an abrupt about-face.

For example, in Cellspin's Patent Local Rule Infringement Contentions, Cellspin carefully sets forth the multiple steps ***a user*** must take to pair the device and phone:






Appx3542-3543 (Cellspin Infringement Contentions).

Cellspin's own screenshots of the process an end-user undertakes when pairing an accused Garmin device to their own (separately purchased) phone via Bluetooth requires multiple end-user actions, including (i) browsing devices, (ii) selecting the device to be paired (iii) connecting the device ("connect it"), (iv) giving permission for the connection ("ok"), and (v) entering a pin provided by the device into the phone, *inter alia*. Appx3542-3543.

By way of a second example, in Garmin's Statement Of Undisputed Facts, Garmin states, "Cellspin has failed to evidence that Garmin itself has paired any accused device to a mobile phone, and during the requisite damages period."

Appx15642 (Issue 1, Fact 12). Cellspin responded, "Disputed. Cellspin contends that Garmin directly infringes when the Accused Instrumentalities ***are put in use by consumer users***." *Id*. (emphasis added).

And, Cellspin's counsel admitted during the summary judgment hearing that end-user action is required for this limitation. Appx0093 (SJ Order, at 63:14-17). On appeal Cellspin suggests the district court mischaracterized the record, *i.e.*, Cellspin confirms its admission that "user action was required" to pair the device and phone, but Cellspin then states that the district court "ignored and otherwise failed to credit" later allegedly clarifying testimony of Cellspin's counsel "which unequivocally affirm (again) that it is the *software* – not the user – which actually **performs** the recited function." Br., at 55 (emphasis in the original). But Cellspin's attack on the district court is unfounded. The entirety of Cellspin's counsel's hearing testimony on this issue is as follows:

> CELLSPIN: that it is Fitbit – Fitbit's code that performs the pairing. ***A user just pushes a button***. The code performs the step in the claim, and that's what Mr. Vijh said in his deposition. That's what he said in his report. Now, agreed that, ***yes, there is a user input***. ***There is some user action required***. But the cases we cited – namely the Surftech [*SiRF*] case specifically goes to that point. That if it is the code of the defendant that performs the claimed step -- and here I don't think anyone is going to argue that a person running around doesn't create a Bluetooth-paired connection. It's the code that does it. So regardless of whether or not that step performed by Fitbit's code requires a user to actually engage it or not doesn't change the fact that it is the code that directly infringes. There is no requirement –

> THE COURT: So what I hear you saying is that the user accesses the code, but the code is what performs the function.
>
> CELLSPIN: Precisely.

Appx4092-4093 (Summary Judgment Hearing Tr., 39:13-40:11) (emphasis added).

Cellspin's counsel clearly admits that user action is "required" to pair the device and phone via Bluetooth. As such, "this case is distinguishable from *SiRF* because some third party (at least a party that is not [Garmin]) is involved in the performance of a method step[.]" *IBM v. Booking Holdings Inc.*, 775 F. App'x 674, 678 (Fed. Cir. 2019).

Cellspin is suggesting that, although a user is required to pair the device and phone, it is software that does the actual pairing. Br., at 54-56. As such, Cellspin argues, the software and only the software performs the step. *Id*. The argument is non-sensical. Under Cellspin's argument, an end-user of a software product can never perform a method step, it would eliminate end-user liability of software patents.

Regardless, Cellspin misreads *SiRF*. By its express terms, *SiRF* does not apply. In *SiRF*, "the method claims at issue here are drawn to actions which can be performed and are performed by a single party. As they do not require that any of the steps be performed here by the customers or the end users, and the disputed steps are not in fact performed by third parties, we conclude that SiRF directly infringes."

*SiRF,* 601 F.3d, at 1329; *see also Koninklijke Philips N.V. v. Zoll Med. Corp*., 656 F. App'x 504, 521 (Fed. Cir. 2016); *IBM*, 775 F. App'x, at 678.

Cellspin's theory violates the well-established law that an entity cannot be held liable for selling a device merely capable of being used to perform method steps. *Koninklijke*, 656 F. App'x, at 521 (*quoting Ericsson, Inc. v. D-Link Sys*., 773 F.3d 1201, 1222 (Fed. Cir. 2014).) Cellspin attempts to circumvent this well-established law by relying on the rare application of *SiRF Tech., Inc. v. ITC*, 601 F.3d 1319 (Fed. Cir. 2010). But Cellspin's "argument seeks to extend the holding in *SiRF* to a place where we have previously declined to take it." *Koninklijke*, 656 F. App'x, at 521.

*SiRF*-style liability only attaches where the accused device automatically performs all steps of the claimed method without end-user assistance. *Koninklijke*, 656 F. App'x, at 521; *SiRF*, at 1330-31; *IBM*, 775 F. App'x, at 678.

Based on controlling law, and based upon Cellspin's own evidence and attorney admissions, the district court correctly found that *SiRF* does not apply. Appx0092-0093 (SJ Order).

### G. Cellspin Has Failed To Evidence That The Accused Garmin Devices Detect, Signal, And Determine New Data For Transfer

The '752 and '794 patents require a Bluetooth enabled capture device to *detect, signal, and determin[e] new data for transfer.* '794 patent at 11:65-67 (claim 1); *id*. at 14:36-38 (claim 16); '752 patent at 11:60-62 (claim 1); *id*. at 13:65-67

(claim 12). Said detection and determination of new data for transfer involves lengthy, temporal operations. For example, Claim 1 of the '794 requires:

> . . .
> **detecting and signaling the new data for transfer**, to the Bluetooth enabled mobile device, **wherein detecting and signaling the new data for transfer comprises**:
>
> > receiving a message from the Bluetooth enabled mobile device, over the established secure paired Bluetooth connection, to enable event notifications, corresponding to new data for transfer, on the Bluetooth enabled data capture device;
> >
> > enabling event notification on Bluetooth enabled data capture device, corresponding to new data for transfer;
> >
> > **determining existence of the new data for transfer**; and
> >
> > sending an event notification to the Bluetooth enabled mobile device, corresponding to existence of new data for transfer, over the established secure paired Bluetooth connection, . . .

Appx0396 ('794, 11:62-12:12).

At summary judgment, Garmin explained that its accused Garmin devices cannot perform these operations. Appx0097 (SJ Order, at 67:15-21). The accused Garmin devices do not detect and signal new data for transfer, they have no onboard logic allowing said detection. Instead, the Garmin devices merely push data at time intervals from device to phone. Appx0097 (SJ Order, at 67:15-21); Appx11158 (Gallup Depo Tr., 28:6-25). Cellspin thus did not, cannot, raise a genuine dispute of material fact that Garmin's watches perform the claimed *detect, signal, and determin[e] new data for transfer* limitations, present in every method claim.

At summary judgment in response, "Cellspin cites to 22 paragraphs of Vijh's expert report with the parenthetical that the report cites 'Garmin Source Code.'". Appx0097 (SJ Order, 67:23-25). The district court reviewed all 22 paragraphs and found that they "only offer the conclusory assertion that the accused Garmin devices 'detect' or 'determin[e]' 'new data.'" *Id.* The district court provided an example, paragraph 115 of the Vijh Report. Appx0097-0098. The district court found that paragraph 115 cites to Garmin source code but that neither Cellspin nor Vijh explain how the source code evidences the limitation at-issue. *Id*. It is a problem endemic to the Vijh Report and Cellspin's appeal, the bulk citation of the record without any explanation for how the purported evidence satisfies the limitations at-issue. Cellspin may not survive summary judgment through unexplained bulk citation. *Traxcell*, 15 F.4th, at 1133; *Novartis*, 271 F.3d, at 1054.

On appeal, Cellspin cites the very paragraph of its expert report discussed by the district court, ¶115. Br., at 61. Paragraph 115 of the Vijh Report cites Garmin source code (GARMIN_SOURCE_000202). Appx1083 (*citing* Appx4550). Cellspin argues, "Vijh explained that the Garmin Code [Appx4550] 'includes a function on the data capture device for subscribing to notifications of real-time updates to data such as heart rate and accelerometer values and the sending of real-time data to a subscriber.'" Br., at 61 (*citing* Vijh Rpt., Appx1082-1083, at ¶ 115; Garmin Source Code, Appx4550). Cellspin then opines that the district court

"apparently, was not able to understand the technical implication of such a statement, and erroneously found an absence of explanation and evidence." *Id*.

But the district court understood Mr. Vijh's conclusory statement precisely, finding, "Left unexplained is how the function shows that the Garmin devices perform the claimed 'detect' function." Appx0098 (SJ Order, 68:6-7). That is, even if one credits Vijh's testimony, that the cited source code shows that the device can subscribe to real time updates, that purported fact is irrelevant to the actual claim language; Vijh does not explain how the device itself is able to detect new data and signal that the new data is ready for transfer, or meet all of the limitations required under the claimed detect and transfer operations. *See* Appx0396 ('794, 11:62-12:12).

That ends the inquiry, but it is worth noting that the code cited by Cellspin in its Brief, the same code cited by Cellspin's expert in his report, is for the Garmin Approach S-40:

```
"C:\Users\Review\Desktop\Garmin 6.30.2021 Source Code Production\approach-s40\BTM\nordic\btm_realtime_data.c"
```

Appx4550 (Garmin source code for the Approach S-40).

Cellspin's expert admitted in deposition, ***Cellspin did not accuse the Approach S-40***. Appx4572 (Vijh Depo Tr., 66:3-67:8); *see also* Appx1048-1052 (Cellspin list of accused products, Approach S-40 not listed). Thus, the purported

"evidence" for the detect and determine limitations is for a product that was not accused by Cellspin; Cellspin proffered zero evidence that any ***accused*** devices detect and determine new data. *See Safeguard*, 989 F.3d, at 348.

This issue alone should result in an affirmance of summary judgment of non-infringement as to every asserted claim of the '752 and '794 patents.

### H. Cellspin Has Failed to Evidence That Garmin Itself Performs Every Step of the Asserted Method Claims Via Internal Testing, Performed in the United States

Before the district court, Cellspin failed to proffer evidence that Garmin itself performs each and every step of the claimed methods in the United States when it tests its own products. Appx0093-0094 (SJ Order, at 63-64). As it did below, in refutation, Cellspin dumps a truck-load of citations upon this Court but fails to explain how any of those cited documents provide evidence that Garmin itself performed each and every step of the claimed methods. *See* Br., 57-58. Cellspin's data dump was insufficient to create a triable issue before the district court and its insufficient here. *Traxcell*, 15 F.4th, at 1133; *Novartis*, 271 F.3d, at 1054.

In addition to its attempted trial-by-truckload, Cellspin's accounting is not faithful to the record. For example, Cellspin cites "deposition testimony confirming the fact that Garmin tests all functions, including automatic updating, in the United States [Appx4355-4356 and Appx4357-4359]." Br., at 58. Cellspin is referring to the deposition testimony of Dan Bartel, a marketing executive, who was not asked

about each and every step of the method claims, and he did not opine thereon. Appx4355-4359. Thus, Cellspin's statement that the citation provides "deposition testimony confirming the fact that Garmin tests all functions, including automatic updating, in the United States" is simply inaccurate. Cellspin failed to proffer any evidence that Garmin itself performs every step of the asserted method claims via internal testing in the United States.

And Cellspin fails to mention that the testing of any Bluetooth functionality, required for every asserted claim of all three asserted patents, would happen in Canada, where the Bluetooth team is located. Appx11139-11140 (Gallup Depo Tr. 9:91-10:18); *NTP, Inc. v. Rsch. In Motion Ltd*, 418 F.3d 1282, 1318 (Fed. Circ. 2005) (all steps of a method claim have to be performed in the United States for infringement to lie).

The district court correctly found that Cellspin failed to evidence that Garmin itself performed each step of the asserted method claims in the United States.

### I. Cellspin Has Failed to Evidence that Anyone Has Assembled the Claimed System

Switching now from the asserted method claims of the '794 and '752 patents to the asserted system claims of the '847 patent:

Direct infringement by use of a system claim requires an entity to use each and every element of a claimed system. *Centillion Data Sys., LLC v. Qwest Communs. Int'l*, 631 F.3d 1279, 1284 (Fed. Cir. 2011). Cellspin failed to proffer

evidence that anyone put into use the full claimed system of the ’847 patent. Appx0096 (SJ Order, at 66). For example, mobile devices (phones) are required for each and every asserted system claim and it is undisputed that Garmin does not sell phones. *See* Appx0427 (’847, 12:42-46).

On appeal, Cellspin appears to argue that the very existence of Garmin’s devices means someone put the entire system into use. *See* Br., 59-60. But Cellspin was required to show that an entity made, used, or sold the entire claimed system, and Cellspin failed to make that showing. *See Centillion*, 631 F.3d, at 1284.

Cellspin’s appeal fares no better. While no model of clarity, Cellspin appears to rely on the bare conclusion of its expert that “The Garmin Fenix 6 Accused Instrumentalities comprise the system of claim 1.” Br., at 60. But Cellspin points to nothing that actually demonstrates that any entity actually made, used, or sold the entire claimed system. Summary judgment of non-infringement for the ’847 system claims should be affirmed.

### J. Cellspin Has Failed To Evidence That The Accused Devices Contain A *First Processor*

The asserted system claims of the ’847 patent recite a *first processor* on the device configured to perform three steps: (1) acquires new-data; (2) stores the acquired new-data; and (3) sends an event notification. Appx0427 (’847, 12:27-32).

The district court correctly found that Cellspin failed to identify any *first processor* that performed these limitations. Appx0100 (SJ Order, at 70).

Cellspin repeats the same arguments on appeal that it unsuccessfully proffered at summary judgment before the district court. Cellspin argues that the accused devices each have processors and therefore, *ipse dixit*, the *first processor* limitations have been met. *See* Br., at 65-66. But Cellspin misses the governing consideration: do the accused devices have a first processor that itself performs all of the claimed operations. Cellspin did not at summary judgment and does not now point to any evidence of a claimed *first processor* in the accused devices.

As the district court correctly found, Cellspin's expert merely concludes that certain limitations are met, and then cites purported evidence such as source code; Vijh never actually ties the evidence to the claim limitation. Appx0100-0101 (SJ Order, 70-71).

Cellspin argues on appeal, "Notwithstanding the foregoing, Cellspin did identify a 'first processor' in the form of a single Maxim MAX32630 with an ARM Cortex M4 Core processor for the Accused Garmin Devices." Br., at 67 (*citing* Appx3488 at 18:1-3; Appx4389; Appx4565 at 38:1-8; Appx4571 at 63:15-64:9; Appx4626; Appx4627-4628; Appx4629-4630; Appx4631-4633; Appx4634; Appx4635; Appx4636). But, again, Cellspin's bulk-cited evidence does not support its allegations. Even assuming *arguendo* that each of these documents mention a "Maxim MAX32630 with an ARM Cortex M4 Core processor" (they don't), that fails to evidence Cellspin's case because Cellspin was required to show said

processor is capable of actually performing each of the requisite claim limitations: (1) acquires new-data; (2) stores the acquired new-data; and (3) sends an event notification. Appx0427 ('847, 12:27-32). Cellspin fails to make that showing. Cellspin proffers no evidence that any single processor in the accused devices is capable of performing the requisite three operations.

Further, even if this Court finds as a matter of claim construction that the '847 claims do not require the *first processor* to be a single first processor, Cellspin has still failed to evidence that multiple processors on the accused Garmin devices are capable of performing all 3 requisite functions. Appx0051-0054, Appx0100-0101 (SJ Order, at 21:10-24:15, 70:8-71:18).

### K. Cellspin Has Failed to Evidence Any Evidence of the Claimed *Second Processor* in Mobile Phones

Each asserted claim of the '847 patent requires a *second processor* located in the Bluetooth enabled cellular phone that *when executed*: (1) detects and receives the new data, (2) listens for the event notification, (3) receives the event notification and the new data, (4) stores the new data, and (5) uses HTTP to transfer the new data from the Bluetooth enabled cellular phone to a website. Appx0427 ('847 patent, 12:45-67). The district court correctly held that Cellspin failed to offer any evidence of a *second processor* in any mobile phone that meets these limitations. Appx0101-0102 (SJ Order, 71-72).

On appeal Cellspin states:

> There is no affirmative recitation of a "second processor" as part of an infringing system; as such, the evidence of record establishing the ***capability to control*** such a processor by Garmin's Mobile Applications is sufficient to establish the fact of infringement, without an express identification of the specific processors used in each mobile phone sold in the United States over the past six years. Appx3488-3489 at 18:25-19:1.

Br., at 69 (emphasis in the original).

Cellspin cites nothing in the intrinsic record in support of its new proposed claim construction and the claims at-issue do not contain Cellspin's "capability" language. The relevant portion of claim 1 states, "a mobile application in the Bluetooth enabled cellular phone comprising executable instructions that, ***when executed*** by a second processor inside the Bluetooth enabled cellular phone controls the second processor to . . . ". Appx0427 ('847, Claim 1, 12:42-46).

Cellspin did not ask the district court to construe the relevant limitation and does not directly ask this Court to construe the limitation here. As such, Cellspin should not be permitted to have the claim construed as part of its appeal in the first instance. *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1358 (Fed. Cir. 2006) (a party may not introduce new claim construction arguments on appeal).

Regardless, Cellspin's argument on appeal is a distinction without a difference. Cellspin needed to point to a *second processor* in a mobile phone that, when executed by the phone, performs or—if the Court allows Cellspin's proposed

new claim construction—is capable of performing the five (5) claimed operations. Cellspin failed to evidence that Garmin's mobile phone application, Garmin Connect Mobile, when executed, controls a single second processor on a mobile phone to perform the five (5) claimed operations. Appx0427 ('847, 12:42-67).

There is no question that phones have processors. And it ***may*** be the case that mobile phone applications can control a phone's processors (Cellspin took no third party discovery from phone manufacturers and Garmin does not make, use, or sell phones, so we don't know what phones do). The question, left unanswered by Cellspin, is whether the accused system contains a mobile phone application that controls a single second processor to perform the 5 claimed operations. Cellspin has failed to evidence the *second processor* limitations. Appx0101-0102 (SJ Order, at 71:19-72:24).

Summary judgment of non-infringement of the system claims (the '847 patent) should be affirmed.

### L. No Inducement As a Matter of Law

The district court correctly held that because Cellspin failed to evidence direct infringement, it could not proffer inducement as a matter of law. Appx0096 (*citing Limelight Networks, Inc.*, 572 U.S. at 921 ("Liability for inducement must be predicated on direct infringement."); *Joy Techs*., 6 F.3d at 774 ("Liability for either

active inducement of infringement or contributory infringement is dependent upon the existence of direct infringement.”).

On appeal, Cellspin does not contest this legal principle. Br., at 60. As such, affirmance of summary judgment of no direct infringement means Cellspin cannot proceed with an inducement allegation.

### M. Cellspin Has Failed To Evidence That The *New Data* Associated With *Event Notifications* Is The Same *New Data* Sent To Websites

At summary judgment, Garmin argued that Cellspin failed to demonstrate that the *new data* collected by the devices is the same *new data* that is sent to websites, a requirement of every claim. Appx11160-11163 (Garmin SJ Mot., at 16-19). That is, every asserted claim for all three patents identifies first *new data* and then uses *new data* or *the new data* to identify that data throughout the claims. For example, claim 1 of the ’794 patent:

> . . .
> acquiring **new data** in the Bluetooth enabled data capture device. . .
>
> detecting and signaling **the new data** for transfer to the Bluetooth enabled mobile device . . .
>
> determining the existence of **new data** for transfer, by the software module on the Bluetooth enabled data capture device; and
>
> sending a data signal to the Bluetooth enabled mobile device, corresponding to existence of **new data**, . . .
>
> transferring **the new data** from the Bluetooth enabled data capture device to the Bluetooth enabled mobile device . . .

> receiving, at the Bluetooth enabled mobile device, **the new data** from the Bluetooth enabled data capture device;
>
> applying, using the software module on the Bluetooth enabled mobile device, a user identifier to **the new data** for each destination web service, . . .
>
> transferring the **new data** received by the Bluetooth enabled mobile device along with a user identifier to the one or more web services, . . .

Appx0396 ('794 patent, Claim 1, 11:59-12:38).

As such, the *new data* must be the same *new data* throughout the claim. *Harris Corp. v. Fed. Express Corp*., 502 F. App'x 957, 963 (Fed. Cir. 2013) ("When identical language is found in multiple steps within the same claim, it is reasonable to assume that all references relate to the same subject matter. . . . This is especially true where, as here, the later instance refers to 'the' data and therefore begs for some antecedent basis."); *One, Inc. v. Uber Techs., Inc*., 440 F. Supp. 3d 1019, 1033-35 (N.D. Cal. 2020) (collecting cases).

In the Garmin system, the *new data* associated with *event notifications* (the '752 and '847 patents) and *new data* associated with *data signals* (the '794 patent) is discarded at the phone because it is live data merely mirrored on the phone. Appx11282-11283 (Garmin SJ Mot., 16-17); Appx11160, Appx11211 (Gallup Depo Tr., 30:15-16, 81:17-20).

The district court acknowledged Garmin's argument, but declined to rule on the issue because Cellspin's case-in-chief was already disposed of multiple times

over. Appx0102-0103 (SJ Order, FN 57, at 72-73). But this Court may affirm upon any bases in the record. *Safeguard*, 989 F.3d, at 1348.

Cellspin has proffered no evidence that the same data that allegedly meets the *detecting and signaling* ***the new data*** *for transfer to the Bluetooth enabled mobile device* limitation is the same new data that meets the *transferring the* ***new data*** *. . . to the one or more web services* limitation. Cellspin has not made this showing because it cannot.

In brief, Garmin devices have two distinct data streams: (1) real time data; and (2) historical data. Appx11212 (Gallup Depo Tr., 82:13-20); Appx11160 (Garmin SJ Mot., at 16). Historical data is, for example, data collected while a Garmin athlete is running. When the athlete stops the run, the activity is saved to her watch. **Historical data** is sent to Garmin's servers through Garmin's mobile application after the run has been completed. There are no *event notifications* associated with historical data.

Conversely, **real time data** (e.g., real time heart rate data) is merely mirrored from the watch onto the mobile application's User Interface layer when Garmin Connect Mobile is open and is then discarded.



The *new data* allegedly associated with the *event notification* is solely Garmin's real time data. In the Garmin system, the new data that Cellspin identifies as meeting the *detecting and signaling* limitations is live data, which is discarded at the phone. The data that Cellspin alleges meets some of the limitations is not the same data that is transferred to websites.

Cellspin may, as it did at summary judgment, offer unsupported attorney argument denying Garmin's evidence of two distinct data streams. Appx3493 (Cellspin SJ Opp., 23:7-18). But Garmin explained the two data streams as Technical Background. Appx11160 (Garmin SJ Mot., at 16). Garmin need not prove it has two distinct data streams. The critical inquiry is whether Cellspin has proffered evidence to show that the *new data* associated with *event notifications* ('752, '847) or the *new data* associated with *data signals* ('794) is the same *new data* that goes to *websites*. Cellspin has not and cannot make that showing.

As such, Cellspin has failed to demonstrate infringement of each and every asserted claim across all three asserted patents.

## VII. CONCLUSION

For the foregoing reasons, the Court should affirm the district court's grant of summary judgment.

Dated: March 27, 2023

Respectfully submitted,

*<u>/s/ Rachael D. Lamkin</u>*
Rachael D. Lamkin
LAMKIN IP DEFENSE
One Harbor Drive, Suite 300
Sausalito, CA 94965
916.747.6091
RDL@LamkinIPDefense.com

*Counsel for Defendants-Appellees Garmin International, Inc. and Garmin USA, Inc.*

**CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on this 27th day of March, 2023, I caused this Brief of Defendants-Appellees Garmin International, Inc. and Garmin USA, Inc. to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the all counsel of record as registered CM/ECF users.

/s/ Rachael D. Lamkin
*Counsel for Defendants-Appellees*
*Garmin International, Inc.*
*and Garmin USA, Inc.*

# CERTIFICATE OF COMPLIANCE

1. This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

   [ X ] this brief contains 9,538 words. The brief incorporates by reference 1,959 words from the lead Fitbit brief, making the total for the Garmin brief 11,497 words.

   [ ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2. This brief complies with the typeface and type style requirements because:

   [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 365*] in [*14pt Times New Roman*]; *or*

   [ ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: March 27, 2023

/s/ Rachael D. Lamkin
*Counsel for Defendants-Appellees*
*Garmin International, Inc.*
*and Garmin USA, Inc.*