**22-2025, -2028, -2029, -2030, -2032, -2037**

# United States Court of Appeals for the Federal Circuit

CELLSPIN SOFT, INC.,

*Plaintiff-Appellant*,

v.

FITBIT LLC, NIKE, INC., UNDER ARMOUR, INC., FOSSIL GROUP, INC., MISFIT, INC., NIKON AMERICAS, INC., NIKON INC., GARMIN INTERNATIONAL, INC., GARMIN USA, INC.,

*Defendants-Appellees*.

APPEALED FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA IN CASE NOS. 4:17-CV-005928, 4:17-CV-005931, 4:17-CV-005932, 4:17-CV-005933, 4:17-CV-005934, 4:17-CV-005936, JUDGE YVONNE GONZALEZ ROGERS

## BRIEF OF DEFENDANT-APPELLEE UNDER ARMOUR, INC.

George D. Moustakas
HARNESS, DICKEY, & PIERCE, P.L.C.
5445 Corporate Drive, Ste. 200
Troy, MI 48098
Tel: 248.641.1600
Email: gdmoustakas@harnessip.com

Michael P. Kella
HARNESS, DICKEY & PIERCE, P.L.C.
4400 Bonhomme Ave, Ste. 400
St. Louis, MO 63105
Tel: 314.446.7665
Email: mkella@harnessip.com

*Counsel for Defendant-Appellee Under Armour, Inc.*

March 27, 2023

**U.S. Patent No. 8,738,794, Claim 1 (Fed. Cir. R. 32(a)(3))**

1. A method for acquiring and transferring data from a Bluetooth enabled data capture device to one or more web services via a Bluetooth enabled mobile device, the method comprising:

providing a software module on the Bluetooth enabled data capture device;

providing a software module on the Bluetooth enabled mobile device;

establishing a paired connection between the Bluetooth enabled data capture device and the Bluetooth enabled mobile device;

acquiring new data in the Bluetooth enabled data capture device, wherein new data is data acquired after the paired connection is established;

detecting and signaling the new data for transfer to the Bluetooth enabled mobile device, wherein detecting and signaling the new data for transfer comprises:

determining the existence of new data for transfer, by the software module on the Bluetooth enabled data capture device; and

sending a data signal to the Bluetooth enabled mobile device, corresponding to existence of new data, by the software module on the Bluetooth enabled data capture device automatically, over the established paired Bluetooth connection, wherein the software module on the Bluetooth enabled mobile device listens for the data signal sent from the Bluetooth enabled data capture device, wherein if permitted by the software module on the Bluetooth enabled data capture device, the data signal sent to the Bluetooth enabled mobile device comprises a data signal and one or more portions of the new data;

transferring the new data from the Bluetooth enabled data capture device to the Bluetooth enabled mobile device automatically over the paired Bluetooth connection by the software module on the Bluetooth enabled data capture device;

receiving, at the Bluetooth enabled mobile device, the new data from the Bluetooth enabled data capture device;

applying, using the software module on the Bluetooth enabled mobile device, a user identifier to the new data for each destination web service, wherein each user identifier uniquely identifies a particular user of the web service;

transferring the new data received by the Bluetooth enabled mobile device along with a user identifier to the one or more web services, using the software module on the Bluetooth enabled mobile device;

receiving, at the one or more web services, the new data and user identifier from the Bluetooth enabled mobile device, wherein the one or more web services receive the transferred new data corresponding to a user identifier; and

making available, at the one or more web services, the new data received from the Bluetooth enabled mobile device for public or private consumption over the internet, wherein one or more portions of the new data correspond to a particular user identifier.

Appx396 ('794 Asserted Patent at 11:48–12:38).

**U.S. Patent No. 8,892,752, Claim 1 (Fed. Cir. R. 32(a)(3))**

1. A method for transferring data from a Bluetooth enabled data capture device to a remote internet server via a Bluetooth enabled mobile device comprising:

performing at the Bluetooth enabled data capture device:

establishing a secure paired Bluetooth connection between the Bluetooth enabled data capture device and the Bluetooth enabled mobile device, wherein the secure paired Bluetooth connection uses a cryptographic encryption key;

acquiring new data in the Bluetooth enabled data capture device, wherein new data is data acquired after the secure paired Bluetooth connection is established;

detecting and signaling the new data for transfer, to the Bluetooth enabled mobile device, wherein detecting and signaling the new data for transfer comprises:

receiving a message from the Bluetooth enabled mobile device, over the established secure paired Bluetooth connection, to enable event notifications, corresponding to new data for transfer, on the Bluetooth enabled data capture device;

enabling event notification on Bluetooth enabled data capture device, corresponding to new data for transfer;

determining existence of the new data for transfer; and

sending an event notification to the Bluetooth enabled mobile device, corresponding to existence of new data for transfer, over the established secure paired Bluetooth connection, wherein the Bluetooth enabled mobile device is configured to listen for the event notification sent from the Bluetooth enabled data capture device;

encrypting, using the cryptographic encryption key, the new data acquired in the Bluetooth enabled data capture device; and

transferring the encrypted data from the Bluetooth enabled data capture device to the Bluetooth enabled mobile device, over the established secure paired Bluetooth connection, wherein the Bluetooth enabled mobile device has access to the internet, wherein the Bluetooth enabled mobile device is configured to receive the encrypted data and obtain the new data from the encrypted data using the cryptographic encryption key, wherein the Bluetooth enabled mobile device is configured to attach a user identifier, an action setting and a destination web address of a remote internet server to the obtained new data, wherein the user identifier uniquely identifies a particular user of internet service provided by the remote internet server, wherein action setting comprises one of a remote procedure call (RPC) method and hypertext transfer protocol (HTTP) method, and wherein the Bluetooth enabled mobile device is configured to send the obtained new data with the attached user identifier, an action setting and a destination web address to a remote internet server.

Appx411 ('752 Asserted Patent at 11:48–12:37).

**U.S. Patent No. 9,749,847, Claim 1 (Fed. Cir. R. 32(a)(3))**

1. A system comprising:

a Bluetooth enabled data capture device, comprising:

a first memory device;

a first processor coupled to the first memory device;

a first Bluetooth communication device configured to establish a paired Bluetooth wireless connection between the Bluetooth enabled data capture device and a Bluetooth enabled cellular phone, wherein the Bluetooth enabled data capture device is configured to cryptographically authenticate identity of the Bluetooth enabled cellular phone when the first Bluetooth communication device establishes the paired Bluetooth wireless connection;

a data capture circuitry;

said first processor configured to acquire new-data using the data capture circuitry after the paired Bluetooth wireless connection between the Bluetooth enabled data capture device and the Bluetooth enabled cellular phone is established;

said first processor configured to store the acquired new-data in the first memory device; and said first processor configured to send an event notification and the acquired new-data to the cryptographically authenticated Bluetooth enabled cellular phone over the established paired Bluetooth wireless connection, wherein the event notification corresponds to the acquired new-data and comprises sending a signal to the cryptographically authenticated Bluetooth enabled cellular phone;

a mobile application in the Bluetooth enabled cellular phone comprising executable instructions that, when executed by a second processor inside the Bluetooth enabled cellular phone controls the second processor to:

detect and receive the acquired new-data, comprising:

listen for the event notification, sent from the Bluetooth enabled data capture device, over the established paired Bluetooth wireless

connection, wherein the event notification corresponds to the acquired new-data; and

receive the event notification and the acquired new-data, from the Bluetooth enabled data capture device, over the established paired Bluetooth wireless connection, wherein receiving the event notification comprises receiving the signal sent by the Bluetooth enabled data capture device corresponding to the acquired new-data;

store the new-data received over the established paired Bluetooth wireless connection, in a second memory device of the Bluetooth enabled cellular phone before transfer to a website; and

use HTTP to transfer the new-data received over the established paired Bluetooth wireless connection, along with user information stored in the second memory device of the cryptographically authenticated Bluetooth enabled cellular phone, to the website, over the cellular data network;

wherein the mobile application further comprises executable instructions to control the processor to provide a graphical user interface (GUI) for the new-data.

Appx427–428 ('847 Patent at 12:13–13:3).

## CERTIFICATE OF INTEREST

Counsel for Under Armour, Inc. certify under Federal Circuit Rule 47.4 that the following information is accurate and complete to the best of their knowledge:

1. **Represented Entities.** Provide the full names of all entities represented by undersigned counsel in this case.

Under Armour, Inc.

2. **Real Party in Interest.** Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

None.

3. **Parent Corporations and Stockholders.** Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

None.

4. **Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court.

HARNESS, DICKEY & PIERCE P.L.C.: Michael P. Doerr, Scott D. Barnett (no longer associated with Harness, Dickey & Pierce P.L.C.)

AMIN TUROCY & WATSON, LLP: Vinay V. Joshi

5. **Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

Yes. Statement of Related Cases is provided in Section I of this brief.

6. **Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).

Not applicable.

Dated: March 27, 2023

*/s/ George D. Moustakas*
George D. Moustakas

## TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ..... vii

TABLE OF CONTENTS ..... ix

TABLE OF AUTHORITIES ..... xii

I. STATEMENT OF RELATED CASES ..... 1

II. INTRODUCTION ..... 2

III. STATEMENT OF THE ISSUES ..... 4

IV. STATEMENT OF THE CASE ..... 6

A. Cellspin's Asserted Claims Are Directed to a Particular Application of Bluetooth Technology, for Which Cellspin Disclaimed Broad Coverage ..... 6

1. The Asserted Claims of the Asserted Patents ..... 6

2. Cellspin's prosecution history disclaimer ..... 10

3. The district court's claim constructions ..... 11

B. Cellspin's Infringement Theories for Under Armour Were Based on Two Representative Accused Products ..... 13

1. The representative HOVR Sonic 3 ..... 14

2. The representative Samsung Galaxy Watch ..... 16

C. The District Court Granted Summary Judgment of Noninfringement in Favor of Under Armour on Multiple Independent Grounds ..... 17

V. SUMMARY OF THE ARGUMENT ..... 19

VI. ARGUMENT ..... 22

A. Standard of Review ..... 22

B. There is No Genuine Dispute of Material Fact That the Accused Products Cannot Acquire New Data After Establishing and Maintaining a Bluetooth "Connection" On a "Continuous" Basis, As Required by All Asserted Claims ..... 23

1. The unrebutted evidence is that the representative HOVR Sonic 3 and Samsung Galaxy Watch cannot "establish and maintain" a Bluetooth connection "on a continuous basis" ....24

2. Cellspin's arguments on appeal again ignore the district court's construction and fail to raise a genuine dispute of material fact that the representative HOVR Sonic 3 and Samsung Galaxy Watch cannot establish and "maintain" a Bluetooth connection "on a continuous" basis ....27

C. There Is No Genuine Dispute of Material Fact That the Representative HOVR Sonic 3 and Corresponding Accused Products Cannot Establish a "Paired" Connection That Is "In the Condition of Having an Exchanged Link Key," As Required by All Asserted Claims ....32

1. Cellspin admits that the representative HOVR Sonic 3 is a Bluetooth Low Energy device and that link-key-based paired connections are optional in Bluetooth Low Energy ....33

2. There is no genuine dispute of material fact that the representative HOVR Sonic 3 does not implement Bluetooth Low Energy's optional link-key-based pairing ....36

a. Under Armour's expert explained in detail the unrebutted evidence that the representative HOVR Sonic 3 does not establish link-key-based paired connections ....36

b. Cellspin's conclusory expert testimony and unexplained evidence fail to raise a genuine dispute of material fact that the representative HOVR Sonic 3 cannot establish a "paired" Bluetooth connection "in the condition of having an exchanged link key" ....38

c. The district court did not erroneously conclude that Cellspin failed to meet its evidentiary burden to show a triable issue on whether the representative HOVR Sonic 3 establishes a "paired" Bluetooth connection in the manner required by the court's claim construction .....................39

d. The district court did not improperly credit or discredit expert testimony or weigh evidence against Cellspin.............................................................47

D. There Is No Genuine Dispute of Material Fact That The Representative HOVR Sonic 3 and Corresponding Accused Products Cannot Establish a "Secure" Bluetooth Connection That Uses a "Cryptographic Encryption Key" or "Cryptographically Authenticate" Identity, as Required by All '752 and '847 Asserted Claims .....................................................50

1. The is no genuine dispute of material fact that the representative HOVR Sonic 3 cannot establish a "secure" Bluetooth connection that uses a "cryptographic encryption key" or "cryptographically authenticate".........................................................................52

2. The district court did not err in granting summary judgment on the basis that the representative HOVR Sonic 3 cannot establish a "secure" Bluetooth connection that uses a "cryptographic encryption key" or "cryptographically authenticate" ..........................................54

VII. CONCLUSION..........................................................................................56

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Ariz. Dream Act Coalition v. Brewer*,
818 F.3d 901 (9th Cir. 2016) ....................22

*Bernhardt, L.L.C. v. Collezione Europa USA, Inc.*,
386 F.3d 1371 (Fed. Cir. 2004) ....................22

*Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biomorph, Inc.*,
249 F.3d 1341 (Fed. Cir. 2001) ....................42, 45

*Carmen v. San Francisco Unified Sch. Dist.*,
237 F.3d 1026 (9th Cir. 2001) ....................42

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
927 F.3d 1306 (Fed. Cir. June 25, 2019) ....................1

*Classen Immunotherapies, Inc. v. Elan Pharms., Inc.*,
786 F.3d 892 (Fed. Cir. 2015) ....................22

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
363 F.3d 1263 (Fed. Cir. 2004) ....................31

*E-Pass Techs., Inc. v. 3Com Corp.*,
473 F.3d 1213 (Fed. Cir. 2007) ....................46

*Ferring B.V. v. Barr Lab'ys, Inc.*,
437 F.3d 1181 (Fed. Cir. 2006) ....................31

*Forsberg v. Pac. Nw. Bell Tel. Co.*,
840 F.2d 1409 (9th Cir. 1988) ....................22

*Fujitsu Ltd. v. Netgear Inc.*,
620 F.3d 1321 (Fed. Cir. 2010) ....................33, 36, 54, 55

*Intell. Sci. & Tech., Inc. v. Sony Elecs., Inc.*
589 F.3d 1179 (Fed. Cir. 2009) ....................42

*Invitrogen Corp. v. Clontech Lab'ys, Inc.*,
429 F.3d 1052 (Fed. Cir. 2005) ....................39, 45, 48, 54, 55

*INVT SPE LLC v. Int'l Trade Comm'n*,
46 F.4th 1361 (Fed. Cir. 2022) ........................................................................36

*Mahdavi v. C.I.A.*,
898 F.2d 156 (9th Cir. 1990) ....................................................................39, 48

*Novartis Corp. v. Ben Venue Labs., Inc.*,
271 F.3d 1043 (Fed. Cir. 2001) ................................................................54, 55

*OSRAM Sylvania, Inc. v. Am. Induction Techs., Inc.*,
701 F.3d 698 (Fed. Cir. 2012) ...........................................................41, 45, 55

*Ricoh Co. v. Quanta Computer Inc.*,
550 F.3d 1325 (Fed. Cir. 2008) ......................................................................46

*Sitrick v. Dreamworks, LLC*,
516 F.3d 993 (Fed. Cir. 2008) ..................................................................31, 48

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
247 F.3d 1316 (Fed. Cir. 2001) ................................................................36, 40

*Traxcell Techs., LLC v. Sprint Commc'ns Co. LP*,
15 F.4th 1121 (Fed. Cir. 2021) ...............................................................*passim*

**Statutes & Other Authorities:**

Fed. Cir. R. 28(j) ...............................................................................................10

Fed. Cir. R. 47.5(a) ...............................................................................................1

# I. STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5(a), Under Armour, Inc. ("Under Armour") provides the following statement of related cases.

This Court previously decided an appeal from some of the actions in these consolidated appeals. *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306 (Fed. Cir. June 25, 2019). The Court issued a precedential decision authored by Judge O'Malley and joined by Judges Lourie and Taranto. *Id.*

Cellspin has also asserted claims of the patents here—U.S. Patent Nos. 8,738,794, 8,892,752, and 9,749,847—in the following cases (in addition to those involved in the current consolidated appeals):

- *Cellspin Soft, Inc. v. Moov Inc.*, 4:17-cv-05929 (N.D. Cal.);
- *Cellspin Soft, Inc. v. Nike, Inc.*, 6:21-cv-00803 (W.D. Tex.); and
- *Cellspin Soft, Inc. v. Nike, Inc.*, 2:22-cv-455 (E.D. Tex.).

Counsel for Under Armour know of no other cases pending in this Court or any other court that will directly affect or be affected by this Court's decision in this appeal.

## II. INTRODUCTION

Cellspin Soft, Inc.'s (Cellspin) downfall is of its own making. As shown in the chart below, Under Armour, Inc. (Under Armour) moved for summary judgment of noninfringement on multiple independent grounds:

| | **Noninfringement Ground** | **Asserted Method Claims** | | **Asserted System Claims** | **Accused Products Implicated** |
|---|---|---|---|---|---|
| | | **'794 Patent** | **'752 Patent** | **'847 Patent** | |
| 1 | No Bluetooth Connection Maintained on a "Continuous" Basis[1] (§ VI.B) | ✓ | ✓ | ✓ | All Accused Products |
| 2 | No "Paired" Bluetooth Connection "in the Condition of Having an Exchanged Link Key" (§ VI.C) | ✓ | ✓ | ✓ | Representative HOVR Sonic 3 and Corresponding Devices |
| 3 | No "Secure" Bluetooth Connection That Uses "Cryptographic Encryption Key" and No "Cryptographic Authentication" Using "Encryption" (§ VI.D) | | ✓ | ✓ | Representative HOVR Sonic 3 and Corresponding Devices |

Faced with the overwhelming evidence—including unrefuted expert testimony—that the Accused Products do not meet the limitations of the Asserted

[1] Under Armour first addresses this case dispositive limitation because it cuts across all Asserted Claims and all Accused Products.

Claims, Cellspin in response used broad generalizations, supported its arguments with citations to large ranges of documents that failed to support its position, and suggested that documents and evidence showed things that they did not show. Not surprisingly, Cellspin's purported evidence fell short, and the district court correctly determined after scrutinizing the record that "Cellspin's citations to swaths of documents without explanation [did] not create a genuine dispute of material fact. Nor [did] Cellspin's reliance upon its lengthy expert reports short in analysis or explanation for how they reach their conclusions" and was "conclusory and lacking substance." Appx32 (Summ. J. Order at 4:12–16).

On the first ground the record is clear, all Accused Products are Bluetooth *Low Energy* devices that establish discontinuous or temporary connections to save power. As the Accused Products are *Low Energy* devices, they **cannot** establish the "continuous" Bluetooth connection required by the district court's unchallenged construction, a construction based on Cellspin's prosecution disclaimer that a "continuous" connection was the "key" to the overall improvement of its "invention." Cellspin's conclusory expert testimony—which ignored the district court's construction and instead focused on the wrong limitation—predictably failed to raise a genuine issue of material fact.

On the second ground, the "lion's share" of Accused Products cannot establish "paired" Bluetooth connections as construed by the district court. It is undisputed

that "paired" Bluetooth connections are an optional feature of the Bluetooth Low Energy specification, and the relevant Accused Products **do not** implement this optional feature.

On the third ground, the same lion's share of Accused Products cannot establish "secure" Bluetooth connections that use "a cryptographic encryption key" or "cryptographically authenticate" as required by the district court's unchallenged claim construction. While security, encryption, and authentication are optional features of the Bluetooth Low Energy specification, the relevant Accused Products **do not** implement these options.

On appeal, Cellspin fails to show error in the district court's detailed analysis memorialized in an 83-page opinion and devotes little in its brief in the form of effort or content to show error on the limitations directed to Under Armour. This Court should affirm the district court's grant of summary judgment in favor of Under Armour.

## III. STATEMENT OF THE ISSUES

Whether to affirm the district court's grant of summary judgment of noninfringement in favor of Under Armour because:

1. for all Asserted Claims, there is no genuine issue of material fact that all the Accused Products[2] cannot acquire new data after a Bluetooth "connection" is established and "maintained on a continuous basis" as required by the district court's unchallenged claim construction;

2. for all Asserted Claims and the representative HOVR Sonic 3 and corresponding products, there is no genuine issue of material fact that the representative HOVR Sonic 3 and corresponding Accused Products cannot establish a "paired" Bluetooth connection "in the condition of having an exchanged linked key" as required by the district court's unchallenged construction; and

3. for all Asserted Claims of the '752 and '847 Asserted Patents and the representative HOVR Sonic 3 and corresponding products, there is no genuine issue of material fact that the representative HOVR Sonic 3 and corresponding Accused Products cannot:

(a) establish a "secure" paired Bluetooth connection that "uses a cryptographic encryption key" for "encrypting the new data" ('752 Asserted Patent) or

[2] As explained *infra* Section IV.B, the Accused Products include two sets of products: (1) the representative HOVR Sonic 3 and a group of corresponding products represented by the HOVR Sonic 3 for purposes of infringement and (2) the representative Samsung Galaxy Watch and another corresponding product represented by the Galaxy Watch for purposes of infringement.

(b) establish a paired Bluetooth with a configuration to "cryptographically authenticate" (or "verif[y] as legitimate by use of encryption and decryption involving an algorithm") identity ('847 Asserted Patent) as required by the district court's unchallenged construction.

## IV. STATEMENT OF THE CASE

### A. Cellspin's Asserted Claims Are Directed to a Particular Application of Bluetooth Technology, for Which Cellspin Disclaimed Broad Coverage

#### *1. The Asserted Claims of the Asserted Patents.*

Each of the Asserted Patents is titled "Automatic Multimedia Upload for Publishing Data and Multimedia Content." Appx385 ('794 Asserted Patent); Appx400 ('752 Asserted Patent); Appx415 ('847 Asserted Patent). The Asserted Patents were filed between 2013 and 2014 and relate back to a provisional patent application filed in 2007. Appx385; Appx400; Appx415–416. The Asserted Patents share a common disclosure directed to using Bluetooth wireless radio communications to transfer data from a "digital data capture device" (*e.g.*, a digital camera) to a "mobile device" (*e.g.*, a cellular phone). *E.g.*, Appx406 ('752 Asserted Patent at 2:19–57). Figure 5—showing digital data capture device 201 with a Bluetooth communication device 201a in connection with mobile device 202—is illustrative.




Appx405; *see also, e.g.,* Appx409 ('752 Asserted Patent at 8:23–42).

The Asserted Claims are: 1–4, 7, 9, 16–18, and 20-21 of the '794 Asserted Patent; 1–2, 4, 5, and 12–14 of the '752 Asserted Patent; and 1–3 of the '847 Asserted Patent. Appx14766 (Cellspin L.P.R. 3-1 Disc'l at 3:4–8). Of these, the independent Asserted Claims are 1 and 16 of the '794 Asserted Patent, 1 and 12 of the '752 Asserted Patent, and 1 of the '847 Asserted Patent. Appx396–397 ('794 Asserted Claims 1 and 16); Appx411–412 ('752 Asserted Claims 1 and 12); Appx427 ('847 Asserted Claim 1).

Asserted Claim 1 of the '794 Patent serves as an example of the claim scope:

> 1. A method for acquiring and transferring data from a Bluetooth enabled data capture device to one or more

web services via a Bluetooth enabled mobile device, the method comprising:

providing a software module on the Bluetooth enabled data capture device;

providing a software module on the Bluetooth enabled mobile device;

**establishing a paired connection between the Bluetooth enabled data capture device and the Bluetooth enabled mobile device**;

acquiring new data in the Bluetooth enabled data capture device, wherein **new data is data acquired after the paired connection is established**;

detecting and signaling the new data for transfer to the Bluetooth enabled mobile device, wherein detecting and signaling the new data for transfer comprises:

determining the existence of new data for transfer, by the software module on the Bluetooth enabled data capture device; and

sending a data signal to the Bluetooth enabled mobile device, corresponding to existence of new data, by the software module on the Bluetooth enabled data capture device automatically, over the established paired Bluetooth connection, wherein the software module on the Bluetooth enabled mobile device listens for the data signal sent from the Bluetooth enabled data capture device, wherein if permitted by the software module on the Bluetooth enabled data capture device, the data signal sent to the Bluetooth enabled mobile device comprises a data signal and one or more portions of the new data;

transferring the new data from the Bluetooth enabled data capture device to the Bluetooth enabled mobile device automatically over the paired Bluetooth connection by

> the software module on the Bluetooth enabled data capture device;
>
> receiving, at the Bluetooth enabled mobile device, the new data from the Bluetooth enabled data capture device;
>
> applying, using the software module on the Bluetooth enabled mobile device, a user identifier to the new data for each destination web service, wherein each user identifier uniquely identifies a particular user of the web service;
>
> transferring the new data received by the Bluetooth enabled mobile device along with a user identifier to the one or more web services, using the software module on the Bluetooth enabled mobile device;
>
> receiving, at the one or more web services, the new data and user identifier from the Bluetooth enabled mobile device, wherein the one or more web services receive the transferred new data corresponding to a user identifier; and
>
> making available, at the one or more web services, the new data received from the Bluetooth enabled mobile device for public or private consumption over the internet, wherein one or more portions of the new data correspond to a particular user identifier.

Appx396 ('794 Patent at 11:48–12:38) (emphasis added to indicate limitations particularly relevant on appeal).

The'752 and '847 Asserted Claims are similar to those of the '794 Asserted Patent for purposes of this appeal, but recite additional limitations directed to security, encryption, and authentication. For example, independent Asserted Claim 1 of the '752 Asserted Patent—like claim 12—recites:

> **establishing a <u>secure</u> paired Bluetooth connection between the Bluetooth enabled data capture device and the Bluetooth enabled mobile device, wherein the <u>secure</u> paired Bluetooth connection <u>uses a cryptographic encryption key</u>**;
>
> acquiring new data in the Bluetooth enabled data capture device, wherein **new data is data acquired after the <u>secure</u> paired Bluetooth connection is established**;

Appx411 ('752 Asserted Patent at 11:52–59).

Similarly, independent Asserted Claim 1 of the '847 Asserted Patent recites:

> . . . a first Bluetooth communication device configured to **establish a paired Bluetooth wireless connection between the Bluetooth enabled data capture device and a Bluetooth enabled cellular phone**, wherein **the Bluetooth enabled data capture device is configured to <u>cryptographically authenticate</u> identity of the Bluetooth enabled cellular phone when the first Bluetooth communication device establishes the paired Bluetooth wireless connection** . . . .

Appx427 ('847 Asserted Patent at 12:17–25).

### *2. Cellspin's prosecution history disclaimer.*[3]

While prosecuting the '794 Asserted Patent, Cellspin advised the public about the narrow scope of the claims here. The examiner rejected the then-pending claims over a prior art reference that disclosed intermittently establishing and terminating a Bluetooth connection as needed to transfer newly acquired data. Appx8176–8177

[3] Pursuant to Fed. Cir. R. 28(j), this Section IV.A.2. is duplicative of content in the Response Brief of Defendants-Appellees Nikon Americas, Inc. and Nikon Inc.

('794 Asserted Patent File History, Cellspin's Request for Continued Examination). Cellspin responded by amending its claims from reciting "establishing a *pairing* between" a data capture and mobile device to "establishing a *paired connection* between" the devices. Appx8121; Appx8124. It also added other limitations based on use of that "established paired connection." Appx8121–8122. Cellspin then argued that its amended claims differed from the prior art: "Conventional wisdom was to not have a constant BT connection between devices. On the contrary, conventional wisdom was to initiate the connection when required, use the connection, and then terminate the connection to conserve battery charge on the device." Appx8177 (using "BT" as acronym for Bluetooth). Cellspin then defined its purportedly different approach: "However, **applicant in his initial disclosure in 2007** took the opposing view i.e., to have the BT pairing connection between devices as a pre-requisite before the data is acquired by the data capture device, and maintain the BT paired connection on a continuous basis for the application." *Id*. Cellspin "believed that having a constant connection would be the key to the overall improvement in the application architecture and responsiveness of the application." *Id*.

### ***3. The district court's claim constructions.***

The district court construed the Asserted Claims in at least three ways relevant to this appeal, which Cellspin does not challenge.

First, the district court correctly held that Cellspin's amendments and statements during prosecution "constitute clear and unambiguous disclaimer of paired connections that are not maintained on a continuous basis." Appx8001 (Cl. Constr. Order at 14:24–15). The district court correctly observed that "Cellspin had 'unequivocally and unambiguously' disavowed systems that fail to maintain a continuous paired connection, characterizing this feature as 'key' to the improvements of the invention, and cannot now interpret the claims to cover such systems." Appx8002 (Cl. Constr. Order at 15:1–4). "Accordingly, the Court construe[d] 'after the paired connection is established' as 'after the paired connection is established ***and maintained on a continuous basis***.'" *Id.* (15:7–8) (emphasis added).

Second, the district court construed "paired" as "***in the condition of having an exchanged link key*** (either before connection establishment was requested or during connecting phase)." Appx8005 (Cl. Constr. Order at 18:5–6) (emphasis added). The parties agreed that the claimed "paired" Bluetooth connection involved a "link key," in view of the 2007 Bluetooth specification. Appx8004–8005. However, the district court correctly rejected Cellspin's proposal to construe "paired" and "connection" as a single term, which sought to eliminate the "connection" requirement. *Id.* Recognizing the problem with removing the "connection" requirement, the district court correctly construed "paired" as a

limitation distinct from the "connection." *Id.*; *see also* Appx15522–15523 (*Markman* Hr'g Tr. at 35:6–37:11).

Third, the district court construed "cryptographically authenticated"—as recited in the '847 Asserted Claims—as "verified as legitimate by use of encryption and decryption involving an algorithm," pursuant to the parties' agreement. Appx8005.

### B. Cellspin's Infringement Theories for Under Armour Were Based on Two Representative Accused Products

Cellspin's Northern District of California Local Patent Rule 3-1 Infringement Contentions took a "representative products" approach for the Asserted Patents. Appx14766–14768 (Cellspin L.P.R. 3-1 Disc'l); *see also, e.g.,* Appx8515–8516. Cellspin's expert witness on infringement—Mr. Rahul Vijh—adopted Cellspin's representative product approach and focused his analysis on the Samsung Galaxy Watch Active2 – UA Edition 40mm ("Samsung Galaxy Watch") and the HOVR Sonic 3 ("HOVR Sonic 3"), in lieu of addressing every Accused Product.[4] Appx715–

[4] Cellspin originally retained Dr. Ryan Garlick as its infringement expert and he drafted and signed the September 3, 2021 expert reports referred to now as the "Vijh Rpt." Appx698. After Cellspin informed the district court of Dr. Garlick's unavailability, the court allowed Cellspin to replace Dr. Garlick with Mr. Vijh Appx11065–11066, who adopted the opinions set forth in Dr. Garlick's reports in full and without modification. Appx14798 (Tr. of Dep. of Rahul Vijh at 17:11–24 (hereinafter "Vijh Tr.")).

718 (Opening Expert Report of Mr. Rahul Vijh at ¶¶ 61–65 (hereinafter, "Vijh Rpt.")); *see also, e.g.,* Appx8515–8516 (Vijh Rpt., '752 Ex. 2 for HOVR Sonic 3).

Cellspin's Infringement Contentions and Mr. Vijh alleged that (i) the Samsung Galaxy Watch was representative of the accused UA Band and (ii) the HOVR Sonic 3 was representative of the remaining products accused. Appx717–718 (Vijh Rpt. at ¶¶ 64–65); *see also, e.g.,* Appx8515–8516 (Vijh Rpt., '752 Ex. 2 for HOVR Sonic 3). Under Armour adopted Cellspin's approach on summary judgment. Appx15587–15588 (Mot. for Summ. J. at 5:24–6:3); *see also* Appx14668–14669 (Rebuttal Expert Report of Dr. Jacob Sharony, Part II at ¶¶ 41–44 (hereinafter "Sharony Rpt., Pt. II"). The district court granted summary judgment in favor of Under Armour based on Cellspin's failure to proffer any evidence raising a genuine issue of material fact that the representative HOVR Sonic 3 and Samsung Galaxy Watch infringe. Appx68–76 (Summ. J. Order).

***1. The representative HOVR Sonic 3.***

The representative HOVR Sonic 3 is a shoe. Appx14670 (Sharony Rpt., Pt. II at ¶ 46 & n.3).



Appx15588 (Mot. for Summ. J. at 5:5–11). The HOVR Sonic 3 represents the "lion's share" of the Accused Products. *See* Appx14768.

The HOVR Sonic 3 has an integrated "pod" that provides a sensor and a Bluetooth Low Energy (BLE) chipset. Appx14670 (Sharony Rpt., Pt. II at ¶¶ 46–47). The Bluetooth Low Energy chipset functions in accordance with certain—but not all—features of the Bluetooth Low Energy Core Specification, version 4.2. *Id.* The pod includes two types of code: (1) compiled code for the Bluetooth Low Energy chipset provided by a third party—which Under Armour did not write and (2) application-level firmware code that Under Armour wrote, compiled, and loaded onto the pod. Appx14670 (Sharony Rpt., Pt. II at ¶ 47). Many of the features included with the Bluetooth Low Energy chipset code are optional, such as link-key-based pairing and security, encryption, and authentication. Appx14671 (Sharony Rpt., Pt. II at ¶¶ 48–49. The application-level firmware code that Under Armour wrote dictates whether the HOVR Sonic 3 can use the optional features of pairing and security in the Bluetooth Low Energy chipset. *Id.*

From an end-user perspective, the HOVR Sonic 3 is worn while engaging in some form of activity. Appx14671–14672 (Sharony Rpt., Pt. II at ¶¶ 50–51). The end-user can connect the HOVR Sonic 3, over Bluetooth Low Energy, to a mobile device on which the end-user downloaded an Under Amour "Map My" application, such as Map My Run. *Id.*




Appx15589 (Mot. for Summ. J.). Using the Map My application, the end-user can observe various metrics related to the activity performed while wearing the HOVR Sonic 3. Appx14671–14672 (Sharony Rpt., Pt. II at 14–15 ¶¶ 50–51). If the user elects to save the workout using the Map My application, the mobile device running the Map My application transmits data to an Internet server. *Id.*

### *2. The representative Samsung Galaxy Watch.*

The representative Samsung Galaxy Watch is a smart watch. Appx14672–14673 (Sharony Rpt., Pt. II at ¶ 54 & n.15–16).




Appx15589 (Mot. for Summ. J.).

An end-user can engage in activity while wearing the Samsung Galaxy Watch and can observe various metrics related to the activity on the Watch, either with or

without a Bluetooth connection to a mobile device. Appx14673–14674 (Sharony Rpt., Pt. II at ¶¶ 56–58). Using the Map My application on the mobile device, the end-user can also observe various metrics related to the activity performed while wearing the Watch. *Id.*

### C. The District Court Granted Summary Judgment of Noninfringement in Favor of Under Armour on Multiple Independent Grounds

The district court granted Under Armour's motion for summary judgment of noninfringement for the Asserted Claims of all Asserted Patents for all Under Armour Accused Products, concluding that there was no genuine issue of material fact that Under Armour fails to practice several distinct limitations of the Asserted Claims. Appx68–76 (Summ. J. Order).

**No Bluetooth Connection Maintained on a "Continuous" Basis.** The district observed the evidence that the representative HOVR Sonic 3 and Samsung Galaxy Watch are Bluetooth Low Energy devices—facts not disputed. Appx74 (Summ. J. Order at 44:3–6). The district court observed Under Armour's unrefuted evidence—including expert testimony—that Bluetooth Low Energy devices—like the HOVR Sonic 3 and Samsung Galaxy Watch—have connections that are maintained on a **discontinuous** basis. Appx74–75. The district court granted summary judgment in favor of Under Armour, because Cellspin's unsupported conclusions and unexplained documents were insufficient to genuinely dispute that

the representative HOVR Sonic 3 and Samsung Galaxy Watch cannot establish and maintain a Bluetooth connection on a "continuous" basis. Appx74–76.

**No "Paired" Bluetooth Connection "In the Condition of Having an Exchanged Link Key."** It is undisputed that the HOVR Sonic 3 is a Bluetooth Low Energy device and that link-key-based paired Bluetooth connections are an optional feature of the Bluetooth Low Energy specification. Appx15661 (Cellspin Resp. to Undisp. Mat. Facts). The district court observed Under Armour's evidence that the HOVR Sonic 3 does not implement any optional link-key-based pairing features of the Bluetooth Low Energy specification. Appx68–70 (Summ. J. Order). The district court granted summary judgment in favor of Under Armour, because Cellspin's unsupported conclusions and unexplained documents were insufficient to genuinely dispute that the representative HOVR Sonic 3 does not implement Bluetooth Low Energy specification's optional pairing feature and cannot establish a "paired" Bluetooth connection "in the condition of having an exchanged link key." Appx69–72.

**No "Secure" Bluetooth Connection That Uses a "Cryptographic Encryption Key" and No "Cryptographic Authentication" Using "Encryption."** The district court observed Under Armour's evidence that the HOVR Sonic 3—a Bluetooth Low Energy device—does not use any optional security features of the Bluetooth Low Energy specification for encryption or

authentication. Appx72. The district court granted summary judgment in favor of Under Armour, because Cellspin's unexplained conclusions based on how Bluetooth devices in general, "typically" function, were insufficient to raise a genuine issue of material fact and granted Under Armour's motion for summary judgment that the representative HOVR Sonic 3 and corresponding Accused Products represented thereby, cannot establish a "secure" Bluetooth connection that "uses a cryptographic encryption key" or "cryptographically authenticate" (or, as construed, "verif[y] as legitimate by use of encryption") the identity of a Bluetooth enabled phone when the products establish a Bluetooth connection. Appx72–73

## V. SUMMARY OF THE ARGUMENT

Cellspin's conclusory assertions on appeal fail to overcome the multiple independent grounds supporting affirmance.

A. Under Armour first addresses the ground concerning the limitation that the Bluetooth connection is established "and maintained on a continuous basis." This limitation cuts across all Asserted Claims and Accused Products and is therefore case dispositive. Specifically, every Asserted Claim as construed by the district court is directed to acquiring new data in a Bluetooth enabled data capture device (*e.g.*, the HOVR Sonic 3 or Samsung Galaxy Watch) after the Bluetooth "connection" is established and "maintained on a continuous basis." Cellspin does not appeal that construction, which is based on Cellspin's prosecution history disclaimer that

"having a **constant** connection would be the key to the overall improvement in the application architecture and responsiveness of the application," where Cellspin characterized its invention as taking an "opposing view" to "conventional wisdom" which was "to **not** have a constant BT connection between devices." Appx8177 (emphasis added). The undisputed evidence shows that the representative HOVR Sonic 3 and Samsung Galaxy Watch do not maintain Bluetooth connections on a continuous basis but, instead, maintain their Bluetooth connections on a **temporary** or **discontinuous** basis, like the prior art that Cellspin disclaimed. Cellspin's infringement argument on summary judgment ignored the "continuous" *connection* requirement and improperly focused on a "continuous" *pairing*. By taking this approach, Cellspin conflated the requirement to *pair* Bluetooth devices with the distinctly different requirement to establish and maintain a *continuous connection* between the devices. Cellspin offered no evidence that the representative HOVR Sonic 3 or Samsung Galaxy Watch acquire new data after maintaining a Bluetooth **connection** on a continuous basis as construed by the district court. The district court correctly rejected Cellspin's conflation of a continuous "connection" and a continuous "pairing" and granted summary judgment in favor of Under Armour.

B. Under Armour next address the remaining two grounds: one for all Asserted Claims and the lion's share of the Accused Products and another for all '752 and '847 Asserted Claims and the same lion's share of Accused Products.

1. Every Asserted Claim as construed requires establishing a "paired" Bluetooth connection between a data capture device (*e.g.*, the HOVR Sonic 3) and a mobile device (*e.g.*, an iOS or Android enabled device running a Map My application), where that "paired" connection is "in the condition of having an exchanged link key." It is undisputed that the representative HOVR Sonic 3 is a Bluetooth Low Energy device, that link-key-based paired connections are optional in Bluetooth Low Energy, and that "pairing" does not require the exchange of link keys. The district court property granted summary judgment in favor of Under Armour as Cellspin failed to proffer any evidence that the representative HOVR Sonic 3 can establish a "paired" Bluetooth connection "in the condition of having an exchanged link key."

2. Every Asserted Claim of the '752 and '847 Asserted Patents contains limitations direct to establishing a "secure" Bluetooth connection that uses "a cryptographic encryption key" ('752 Asserted Patent) or a Bluetooth enable data capture device that is configured to "cryptographically authenticate" (or, as construed, "verif[y] as legitimate by use of encryption") the identity of a cellular phone when the Bluetooth connection is established ('847 Asserted Patent). It is undisputed that the representative HOVR Sonic 3 is a Bluetooth Low Energy device and that security, encryption, and authentication are optional features of the Bluetooth Low Energy specification. The district court property granted summary

judgment in favor of Under Armour on the basis that Cellspin failed to proffer any evidence that the representative HOVR Sonic 3 can authenticate and encrypt as required by every Asserted Claim of the ’752 and ’847 Asserted Patents as construed.

## VI. ARGUMENT

### A. Standard of Review

In reviewing a grant of summary judgment, the Federal Circuit applies the law of the regional circuit. *Classen Immunotherapies, Inc. v. Elan Pharms., Inc.*, 786 F.3d 892, 896 (Fed. Cir. 2015). The Ninth Circuit reviews a grant of summary judgment *de novo*. *Ariz. Dream Act Coalition v. Brewer*, 818 F.3d 901, 908 (9th Cir. 2016).

On review of summary judgment, the Federal Circuit need not search for arguments and evidence that the litigant has not articulated or explained. *Bernhardt, L.L. C. v. Collezione Europa USA, Inc.*, 386 F.3d 1371, 1384 (Fed. Cir. 2004) (“[F]act finders are not required to furrow through voluminous evidentiary submissions in order to discern a party’s case. A party has an obligation to highlight its contentions to the district court in some form.”); *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988) (“The district judge is not required to comb the record to find some reason to deny a motion for summary judgment.”).

### B. There is No Genuine Dispute of Material Fact That the Accused Products Cannot Acquire New Data After Establishing and Maintaining a Bluetooth "Connection" On a "Continuous" Basis, As Required by All Asserted Claims

Example independent '752 Asserted Claim 1 recites in pertinent part:

> . . . performing at the Bluetooth enabled data capture device:
>
> > . . . **establishing a secure paired Bluetooth connection between the Bluetooth enabled data capture device and the Bluetooth enabled mobile device**, wherein the secure paired Bluetooth connection uses a cryptographic encryption key;
> >
> > acquiring new data in the Bluetooth enabled data capture device, wherein **new data is data acquired after the secure paired Bluetooth connection is established** . . . .

Appx411 ('752 Asserted Patent at 11:52–59). Each other Asserted Claim recites a substantially similar limitation. Appx412 ('752 Asserted Claim 12 at 13:60–64, 14:5–10; Appx396 ('794 Asserted Claims 1 and 16 at 11:56–61, 14:21–26; Appx427 ('847 Asserted Claim 1 at 12:17–31).

The district court construed the Asserted Claims—based on Cellspin's prosecution disclaimer explained *supra* Section IV.A.2—to require that the new data is acquired "after the . . . Bluetooth connection is established and maintained on a **continuous** basis." Appx8000–8001 (Cl. Constr. Order). Cellspin does not challenge this construction on appeal.

Having no evidence to support its position that the Bluetooth "*connection*" is maintained on a continuous basis, Cellspin's infringement argument incorrectly

focused on whether a "*pairing*" between devices is maintained a continuous basis. Cellspin took this position despite the court's unchallenged construction and Cellspin's admission at the *Markman* hearing that "pairing" and "connection" are distinct concepts. Appx4197 (Mot. for Summ. J. Hr'g Tr. at 144:1–11) (The court: "Do you agree that the word 'paired' and the word 'connection' . . . . have distinct meanings?" Cellspin: "Yes.") Yet, Cellspin ignored the "continuous" connection construction.

As explained below, the district court correctly rejected Cellspin's conflation of a continuous *connection* with a continuous *pairing*. Appx73 (Summ. J. Order at 43:22–27). And, the district court correctly found that Cellspin failed to proffer any evidence that the representative HOVR Sonic 3 and Samsung Galaxy Watch can acquire new data after maintaining a Bluetooth "**connection**" on a "**continuous basis**." Appx75–76).

#### ***1. The unrebutted evidence is that the representative HOVR Sonic 3 and Samsung Galaxy Watch cannot "establish and maintain" a Bluetooth connection "on a continuous basis."***

It is undisputed that the representative HOVR Sonic 3 and Samsung Galaxy Watch are Bluetooth Low Energy devices. Appx15619 (Cellspin Resp. to Undisp. Mat. Facts); Appx14670 (Sharony Rpt., Pt. II ¶ 46); Appx1473–1475 (Sharony Rpt., Pt. II at ¶ 57); Appx727–728 (Vijh Rpt. at ¶ 88); Appx744–745 (Vijh Rpt. at ¶ 111); Appx764–765 (Vijh Rpt. at ¶ 143); Appx14857–14858 (Vijh Tr. at 76:20–77:14).

However, Bluetooth Low Energy does not provide for Cellspin's alleged "improvement," where "having a constant connection" is the "key." Appx8001–8002 (Cl. Constr. Order); *see also* Appx14637–14638 (Sharony Rpt., Pt. I at ¶¶ 118–123 (hereinafter "Sharony Rpt., Pt. I"); Appx14716–14719 (Sharony Rpt., Pt. II at ¶¶ 142–147).

In direct contrast to the Asserted Claims, Bluetooth Low Energy connections—as used by the HOVR Sonic 3 and Samsung Galaxy Watch—are maintained on a temporary or discontinuous basis—much like the prior art that Cellspin disclaimed. *Id.*; Appx14719–14724 (Sharony Rpt., Pt. II at ¶¶ 148–157); see also Appx14662–14664 (Sharony Rpt., Pt. II at ¶¶ 18–32); Appx14714–14716 (Sharony Rpt., Pt. II at ¶¶ 135–141); Appx14735 (Sharony Rpt., Pt. II at ¶ 198); Appx14743 (Sharony Rpt., Pt. II at ¶ 232). In Bluetooth Low Energy, discontinuous connections save power. Appx14639–14640 (Sharony Rpt., Pt. I at ¶¶ 122–123); Appx14717–14719 (Sharony Rpt., Pt. II at ¶¶ 144–147).

The unchallenged record on appeal is that Bluetooth Low Energy connections established by the representative HOVR Sonic 3 and Samsung Galaxy Watch activate for a short time as part of a "connection event" to transmit or receive data. Appx14717–14724 (Sharony Rpt., Pt. II at ¶¶ 144–157). After the connection event, the devices' Bluetooth radios go to sleep (*i.e.*, shut off or disconnect) for a comparatively long interval until the next connection event. *Id*. The following

depictions from Under Armour's expert witness' report illustrate how the radios are *off* during the intervals when the Bluetooth radios are sleeping and *on* for the connection events, rendering their connections discontinuous.




Appx14720 (Sharony Rpt., Pt. II at ¶ 150).



Appx14638–14639 (Sharony Rpt., Pt. I at ¶¶ 121–123). This operation is confirmed not only by the specification for Bluetooth Low Energy, but also Dr. Sharony's connection testing showing how the Bluetooth Low Energy connections are **not** maintained on a continuous basis. Appx14719–14723 (Sharony Rpt., Pt. II at pp. 62–66 ¶¶ 148–155.) On appeal, Cellspin does not genuinely dispute the fundamental nature of the Bluetooth Low Energy connections established by the HOVR Sonic 3 and Samsung Galaxy Watch. Rather, Cellspin focuses on the wrong limitation.

#### *2. Cellspin's arguments on appeal again ignore the district court's construction and fail to raise a genuine dispute of material fact that the representative HOVR Sonic 3 and Samsung Galaxy Watch cannot establish and "maintain" a Bluetooth connection "on a continuous" basis.*

Given the undisputed nature of Bluetooth Low Energy, Cellspin failed to proffer any evidence on summary judgment that the HOVR Sonic 3 and Samsung Galaxy Watch can acquire new data after establishing and "maintaining" a Bluetooth "connection" on a "continuous" basis. There was none in view of the undisputed evidence—summarized *supra* Section VI.B.1—of the discontinuous nature of Bluetooth Low Energy connections. The district court correctly acknowledged the same. Appx76 (Summ. J. Order).

In attempt to revive its case on summary judgment, Cellspin's arguments—like here on appeal—distilled to the proposition that the HOVR Sonic 3 and Samsung Galaxy Watch "infringe as long as they '*pair*' by 'exchanging link keys'

and as long as the 'new data' is acquired after such '*pairing*' is maintained continuously." Dkt. No. 57 (Opening Br. of Pl.-Appellant) at 90 (hereinafter "Cellspin Br.") (emphasis added); Appx8506 (Cellspin Opp'n to Mot. for Summ. J. at 9:22–27). But critically, a continuous "*pairing*"[5] (or exchange of link keys) **does not** provide even a shred of evidence that HOVR Sonic 3 and Samsung Galaxy Watch acquire new data after the "*connection*" is established and maintained a continuous basis. As the district court correctly observed, "*pairing*" and "*connection*" are distinct concepts. Appx73 (Summ. J. Order).

Notably, when pressed during oral argument ***Cellspin agreed that "pairing" and "connection" are distinct concepts***. Appx4197 at 144:1–11 (The court: "Do you agree that the word 'paired' and the word 'connection' . . . . have distinct meanings?" Cellspin: "Yes."). Consistent with and well before Cellspin's agreement, the district court construed "paired" as a concept separate and apart from the "connection" requirement. The district court's unchallenged construction of "paired" affirms these distinctions. "Paired" means "in the state of having an exchanged link key (either *before connection establishment* was requested or *during connecting phase*)." Appx8004–8005 (Cl. Constr. Order). Put simply, a "*pairing*"

[5] Under Armour disputes that the representative HOVR Sonic 3 can establish a "paired" Bluetooth connection "in the condition of having an exchanged link" as required by the district court's unchallenged construction. The district court's grant of summary judgment in favor of Under Armour on this independent issue should be affirmed for the reasons explained *infra* Section VI.C.

cannot be evidence of a continuous "*connection*" if that pairing (or condition of having an exchanged link key) happens *before* the connection is even established or *in addition to* the connection. Cellspin's linguistic gymnastics—to support its attorney argument that "[t]here is only a *single* limitation and a *single* concept," Cellspin Br. at 90—find no support in the district court's unchallenged claim construction or the unrebutted evidence that a continuous "*pairing*" is not a continuous "*connection*."[6]

Further addressing Cellspin's misplaced argument on the wrong term, on appeal, Cellspin argues that its purported "evidence" raises genuine issues of material fact because "UA Instrumentalities remain 'paired' [because they have exchanged link keys] even when out of Bluetooth range . . . ." Cellspin Br. at 91 (citing Appx8736–8740 and Appx8741-8747) (brackets in original). Cellspin further argues that "UA Source Code evidences the fact that events are read after *pairing* is

---

[6] Cellspin's attempt to equate a continuous "pairing" with a continuous "connection" also leads to the unsupported proposition that two "paired" devices somehow remain continuously connected as long as they are not "unpaired," even if the devices are separated and located in different countries. *See, e.g.*, Appx14723 (Sharony Rpt., Pt. II at ¶¶ 154–155); Appx14634–14637 (Sharony Rpt., Pt. I at ¶¶ 114–117). Cellspin's proposition flies in the face of the unrebutted evidence that Bluetooth Low Energy is a *short-range* communication mechanism. *E.g.*, Appx14623 (Sharony Rpt., Pt. I at ¶ 83); Appx14630 (Sharony Rpt., Pt. I at ¶ 105); Appx15444 (Tr. of Dep. of Dr. Michael Foley at 159:1–22 (hereinafter "Foley Tr.")) ("[T]he connection may be active when they're within range of each other, but the devices could go out of range and the connection become nonactive anymore."); Appx15378 (Foley Tr. at 93:13–22).

established and maintained." *Id.* at 91 (citing Appx8767–8768). Cellspin again, as it did at the district court, ignores that a continuous "pairing" that "remains" **is not** evidence that new data is acquired (*e.g.*, during the purported "read events") after the "*connection*" is established and maintained on a "continuous" basis. What is more, it is undisputed that this unexplained code—which Mr. Vijh cited but failed to link to the operation of the HOVR Sonic 3—concerns a heart rate sensor. Appx731 (Vijh Rpt. at ¶ 92). Critically, it is undisputed that the HOVR Sonic 3 **does not** even have a heart rate sensor. Appx14660 (Sharony Rpt., Pt. II at ¶ 11); Appx14735–14736 (Sharony Rpt., Pt. II at ¶ 199). It also is undisputed that this source code is not even part of the HOVR Sonic 3. Appx14699 (Sharony Rpt., Pt. II at ¶ 138); Appx14860–14861 (Vijh Tr. at 79:20–80:6) (Mr. Vijh: "I do not rely on heart rate data for my opinions related to HOVR Sonic 3 shoes.").

Cellspin's follow-on citation to two paragraphs from Mr. Vijh's report is equally insufficient to revive its case. Cellspin Br. 91 (citing Appx720 (Vijh Rpt. at ¶ 69) and Appx730–731 (Vijh Rpt. at ¶ 92)). Like Cellspin's arguments on appeal, Mr. Vijh's centers his conclusory opinion around whether "two Bluetooth paired devices are still [paired or] 'in the condition of having an exchanged link key' and maintain that link key on a continuous basis" and whether "the Accused Instrumentalities are configured to acquire, and do acquire, new data on a near-constant or regular basis." Appx720 (Vijh Rpt. at ¶ 69); Appx730–731 (Vijh Rpt. at

¶ 92). Mr. Vijh's inapposite, conclusory opinions on continuous "data acquisition" and continuous "pairing"—with unexplained citations to a single piece of irrelevant source code noted above—are insufficient to raise a genuine dispute of material fact that the HOVR Sonic 3 and Samsung Galaxy Watch cannot acquire new data after establishing "**a connection**" on a continuous basis. *See Traxcell Techs., LLC v. Sprint Commc'ns Co. LP*, 15 F.4th 1121, 1130 (Fed. Cir. 2021) (holding that conclusory statements without any analysis to support them are insufficient to create a genuine issue of material); *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 1001 (Fed. Cir. 2008) ("Conclusory expert assertions cannot raise triable issues of material fact on summary judgment."); *see also Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1278 (Fed. Cir. 2004); *Ferring B.V. v. Barr Lab'ys, Inc.*, 437 F.3d 1181, 1193 (Fed. Cir. 2006). The district court correctly concluded as much. Appx75–76 (Summ. J. Order).

For these reasons, the Court should affirm the district court's grant of summary judgment that the representative HOVR Sonic 3, representative Samsung Galaxy Watch, and corresponding Accused Products represented thereby, do not infringe the Asserted Claims of the Asserted Patents.

### C. There Is No Genuine Dispute of Material Fact That the Representative HOVR Sonic 3 and Corresponding Accused Products Cannot Establish a "Paired" Connection That Is "In the Condition of Having an Exchanged Link Key," As Required by All Asserted Claims

Example independent '752 Asserted Claim 1 recites in pertinent part:

> 1. A method for transferring data from a Bluetooth enabled data capture device to a remote internet server via a Bluetooth enabled mobile device comprising:
>
> performing at the Bluetooth enabled data capture device:
>
> **establishing a . . . paired Bluetooth connection between the Bluetooth enabled data capture device and the Bluetooth enabled mobile devic**e . . . . transferring the . . . data from the Bluetooth enabled data capture device to the Bluetooth enabled mobile device, over the established . . . **paired** Bluetooth connection . . . .

Appx411 ('752 Asserted Patent at 11:48–56, 12:17–20). The requirement of establishing a "paired" Bluetooth connection is in *each* Asserted Claim of each Asserted Patent. Appx412 ('752 Asserted Claim 12 at 13:60–62); Appx396 ('794 Asserted Claim 1 at 11:56–58); Appx397 ('794 Asserted Claim 16 at 14:21–23); Appx427 ('847 Asserted Claim 1 at 12:17–20). For an established Bluetooth connection to be "*paired*," the district court's construction requires that the connection be "*in the condition of having an exchanged link key* (either before

connection establishment was requested or during connecting phase).” Appx8004–8005 (Cl. Constr. Order).

The undisputed evidence before the district court was that (i) the representative HOVR Sonic 3 is a Bluetooth Low Energy device and (ii) that link-key-based “paired” connections are only optional according to the Bluetooth Low Energy specification. The district court correctly found that Cellspin failed to proffer any evidence to genuinely dispute that the representative HOVR Sonic 3 cannot establish a “paired” Bluetooth connection “in the condition of having an exchanged link key.” *See, e.g., See Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327–28 (Fed. Cir. 2010) (affirming district court’s grant of summary judgment of noninfringement where “the relevant section of the standard is optional, and standards compliance alone would not establish that the accused infringer chooses to implement the optional section.”).

#### ***1. Cellspin admits that the representative HOVR Sonic 3 is a Bluetooth Low Energy device and that link-key-based paired connections are optional in Bluetooth Low Energy.***

It was undisputed on summary judgment that the representative HOVR Sonic 3 is a Bluetooth Low Energy device. Appx15611 (Cellspin’s Response to Under Armour’s Undisputed Material Facts). The district court correctly observed there was also no factual dispute that the representative HOVR Sonic 3 is a Bluetooth Low Energy (BLE) device and, as such, that evidence of “Bluetooth”—or even “pairing”

in general—is not evidence of the link-key-based paired connection required by the court's construction. Appx69–70 (Summ. J. Order).

There remains no factual dispute on appeal that link-key-based pairing is an **optional** feature of the BLE specification. As a BLE device, the representative HOVR Sonic 3 is designed to implement certain features found in the Bluetooth Low Energy Core Specification version 4.2. For example, a developer can choose to design a BLE device in accordance with **Mode 1, Level 3** or **Mode 1, Level 4**, which provide options for pairing with encryption. Appx14625–14626 (Sharony Rpt., Pt. I at ¶¶ 89–92); Appx14460 (Sharony Rpt., Pt. I at ¶ 124); Appx14684–14686 (Sharony Rpt., Pt. II at ¶¶ 98–102); Appx15122–15124 (Bluetooth Low Energy Core Spec. v. 4.2, Vol. 3, Pt. C, § 10.2.1 (hereinafter "BLE Spec.")).

> *Generic Access Profile* Bluetooth®
>
> **10.2.1 LE Security Mode 1**
>
> LE security mode 1 has the following security levels:
>
> 1. No security (No authentication and no encryption)
> 2. Unauthenticated pairing with encryption
> 3. Authenticated pairing with encryption
> 4. Authenticated LE Secure Connections pairing with encryption

Appx15123–15124 (BLE Spec., as cited at Appx14625–14626 (Sharony Rpt., Pt. I), Appx14640 (Sharony Rpt., Pt. I), Appx14685–14686 (Sharony Rpt., Pt. II)).

However, a developer can instead choose to design the BLE device in accordance with the BLE specification's **Mode 1, Level 1**—in which there is no pairing. *Id.*

> *Generic Access Profile* Bluetooth®
>
> **10.2.1 LE Security Mode 1**
>
> LE security mode 1 has the following security levels:
>
> 1. No security (No authentication and no encryption)
> 2. Unauthenticated pairing with encryption
> 3. Authenticated pairing with encryption
> 4. Authenticated LE Secure Connections pairing with encryption

Appx15123–15124 (BLE Spec.).

Faced with the undisputed evidence, Cellspin and its experts admit that link-key-based pairing is optional in Bluetooth. Appx15611 (Cellspin Resp. to Undisp. Mat. Facts); Appx14858–14860 (Vijh Tr. at 77:15–79:9); Appx14927–14928 (Rebuttal Expert Rpt. of Dr. Michael Foley at ¶ 100 (hereinafter "Foley Rpt.")) ("[P]airing, cryptographic authentication, authorization, encryption are an optional rather than default Bluetooth mechanism . . . ."); *see also* Appx15308 (Foley Tr. at 23:14–24:5); Appx15318–15319 (Foley Tr. at 33:22–34:21); Appx15320 (Foley Tr. at 35:9–12).[7]

[7] Cellspin offered to the Rebuttal Expert Report of Dr. Michael Foley on validity of the Asserted Patents. Appx14896 (Foley Rpt.); Appx14910 (Foley Rpt. at ¶¶ 58–60). Dr. Foley previously served as the Executive Director and CEO at the Bluetooth Special Interest Group (SIG). Appx14900 (Foley Rpt. at ¶ 5).

### 2. *There is no genuine dispute of material fact that the representative HOVR Sonic 3 does not implement Bluetooth Low Energy's optional link-key-based pairing.*

The district court considered expert testimony from both Under Armour and Cellspin. The district court correctly concluded that Cellspin's unexplained, conclusory expert testimony failed to raise a genuine dispute of material fact that HOVR Sonic 3 operates outside of Mode 1 Level 1 and does not use the Bluetooth's optional link-key-based pairing. *See, e.g., Fujitsu Ltd.*, 620 F.3d at 1327–28; *see also Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1330 (Fed. Cir. 2001) ("[T]hat a device is capable of being modified to operate in an infringing manner is not sufficient, by itself, to support a finding of infringement."); *INVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361, 1377 (Fed. Cir. 2022) ("[T]he patent owner cannot establish infringement simply by arguing that the product practices the standard but must compare the claims to the accused products or, if appropriate, prove that the accused products implement any relevant optional sections of the standard.").

#### a. *Under Armour's expert explained in detail the unrebutted evidence that the representative HOVR Sonic 3 does not establish link-key-based paired connections.*

The district court correctly observed that Under Armour's expert on the infringement issue—Dr. Jacob Sharony—thoroughly explained how and why the Bluetooth Low Energy specification's link-key-based pairing feature is only

optional. Appx68–70 (Summ. J. Order). Dr. Sharony's well-articulated testimony was that BLE devices implementing BLE's Security Mode 1 Level 1 do not establish a "paired" Bluetooth connection "in the condition of having an exchanged link key." *Id.*; *see also* Appx14624–14627 (Sharony Rpt., Pt. I at ¶¶ 86–94); Appx14640 (Sharony Rpt., Pt. I at ¶ 124); Appx14684–14687 (Sharony Rpt., Pt. II at ¶¶ 94–104). Dr. Sharony explained that the HOVR Sonic 3 is a BLE device that implements Security Mode 1 Level 1 and therefore does not establish a "paired" Bluetooth connection "in the condition of having an exchanged link key." Appx14665 (Sharony Rpt., Pt. II at ¶ 33); Appx14681–14702 (Sharony Rpt., Pt. II at ¶¶ 85–89, 91–92, 94–115); Appx14733–14634 (Sharony Rpt., Pt. II at ¶¶ 188–195); Appx14743 (Sharony Rpt., Pt. II at ¶ 231).

The district court correctly observed that Dr. Sharony's finding was based on interviews with Under Armour's engineer Mr. Chris Green,[8] detailed analysis of the BLE specification, a thorough analysis of the source code for the HOVR Sonic 3, and actual testing (packing captures with data logging and sniffing) of the HOVR Sonic 3's establish Bluetooth connection showing that there is no "paired" Bluetooth connection "in the condition of having an exchange link key." Appx68–71 (Summ.

[8] Mr. Green is the engineer who was responsible for implementing features of the Bluetooth chipset in the HOVR Sonic 3, as well as the application-level firmware that facilitates communication between the HOVR Sonic 3 and mobile devices running the Accused Mobile Applications. Appx14688 (Sharony Rpt., Pt. II at ¶¶ 108–110).

J. Order); *see also* Appx14665 (Sharony Rpt., Pt. II at ¶ 33); Appx14681–14702 (Sharony Rpt., Pt. II at ¶¶ 85–89, 91–92, 94–115); Appx14733–14634 (Sharony Rpt., Pt. II at ¶¶ 188–195); Appx14743 (Sharony Rpt., Pt. II at ¶ 231).

#### ***b. Cellspin's conclusory expert testimony and unexplained evidence fail to raise a genuine dispute of material fact that the representative HOVR Sonic 3 cannot establish a "paired" Bluetooth connection "in the condition of having an exchanged link key."***

Against this backdrop, the district court correctly observed that Cellspin's purported evidence did not genuinely dispute the overwhelming evidence that the representative HOVR Sonic 3 cannot establish a "paired" Bluetooth connection "in the condition of having an exchange link key." Appx68–72 (Summ. J. Order).

Cellspin's arguments on summary judgment, in attempt to manufacture a genuine dispute of material fact, were astoundingly vague and supported by attorney argument with citation to conclusory expert testimony and unexplained evidence (often for products that have nothing to do with how the HOVR Sonic 3 establishes Bluetooth connections). *See, e.g., id.* Again, Cellspin admitted link-key-based paired connections in Bluetooth Low Energy are optional. *E.g.*, Appx69 (Summ. J. Order at 39 n.33); Appx15611 (Cellspin Resp. to Undisp. Mat. Facts). Yet, Cellspin offered nothing more than unexplained citations to technical documents that do not stand for proposition stated. Appx32 (Summ. J. Order); Appx69–72. And, the expert testimony on which Cellspin relied was equally vague and conclusory. *Id.*

The district court's conclusion that Cellspin failed to meet its burden was correctly based on the realities of Cellspin's evidentiary failures and not—as Cellspin theorizes on appeal—some purported crediting (or discrediting) of the experts or weighing of evidence. *See Mahdavi v. C.I.A.*, 898 F.2d 156 (9th Cir. 1990) ("To defeat a motion for summary judgment, the nonmoving party must set forth specific facts which support his position.") (internal quotations omitted); *Traxcell Techs., LLC*, 15 F.4th at 1130; *Invitrogen Corp. v. Clontech Lab'ys, Inc.*, 429 F.3d 1052, 1080 (Fed. Cir. 2005) ("A party does not manufacture more than a merely colorable dispute simply by submitting an expert declaration asserting that something is black . . . [T]here must be some foundation or basis for the opinion.").

Cellspin's revisionist efforts to manufacture a genuine dispute of material fact fair just as poorly here on appeal.

***c. The district court did not erroneously conclude that Cellspin failed to meet its evidentiary burden to show a triable issue on whether the representative HOVR Sonic 3 establishes a "paired" Bluetooth connection in the manner required by the court's claim construction.***

Cellspin first directs this Court to two paragraphs from Mr. Vijh's report and three source code components, which Cellspin implies the district court erroneously ignored. Cellspin Br. at 85 (citing Appx727–728 (Vijh Rpt. at ¶ 88); Appx744–745 (Vijh Rpt. at ¶ 111); Appx8510-8511; Appx8512; and Appx8513). Not so. The district court properly acknowledged that Mr. Vijh's testimony stands for nothing

more than the proposition that Bluetooth connections "typically" use link keys—which of course is insufficient evidence that the HOVR Sonic 3 is designed to use Bluetooth Low Energy's optional link-key based pairing. Appx70 (Summ. J. Order at 40:13–28) (citing Appx727–728 (Vijh Rpt. at ¶ 88) and Appx744–745 (Vijh Rpt. at ¶ 111)).

The district court also acknowledged Cellspin's citation to the three source code components that Cellspin references on appeal. Appx70 (Summ. J. Order at 40) (citing Appx8510-8511; Appx8512; Appx8513). However, this source code provides zero evidence that the HOVR Sonic 3 establishes a "paired" Bluetooth connection, much less "in the condition of having an exchanged link key." It only highlights Cellspin's lack of evidence by affirming Cellspin's misplaced reliance on security "options" for which there is no evidence of implementation. *See* Appx8510-8511 (line 628); Appx8512 (lines 188, 196); Appx8513 (line 196).

Cellspin—like Mr. Vijh—on appeal again ignores that these security options state "[i]f you do not use security, the application will reject the remote pairing request." Appx8510 (lines 640–641). Yet, Cellspin fails to point to even a shred of evidence that the HOVR Sonic 3 is designed to use Bluetooth Low Energy's optional security features to implement link-key-based Bluetooth pairing. *See, e.g., Telemac Cellular Corp.*, 247 F.3d at 1330. Nor does Cellspin identify any other evidence contradicting Dr. Sharony's analysis that the HOVR Sonic 3 does not use such

options to accept Bluetooth pairing requests and—therefore—automatically rejects them. *E.g.*, Appx14695–14699 (Sharony Rpt., Pt. II at ¶¶130—140).

Cellspin's expert—Mr. Vijh—likewise fails to explain this purported evidence or otherwise link it to design and operation of the HOVR Sonic 3. *See OSRAM Sylvania, Inc. v. Am. Induction Techs., Inc.*, 701 F.3d 698, 707 (Fed. Cir. 2012) ("Where, as here, the record is devoid of meaningful analysis, we will not conduct such an analysis in the first instance."). Critically, Cellspin could not even genuinely dispute that these three source components are software development kit files that are not for the HOVR Sonic 3. Appx14699–14700 (Sharony Rpt., Pt. II at ¶¶ 138–139); Appx4123–4124 (Mot. for Summ. J. Hr'g Tr. at 70:12–23) (The court: "Do you agree with the basic proposition that the six source code excerpts that Mr. Vijh cited do not in any way relate to the HOVR 3's functionality?" Cellspin: "I'm not sure how to respond to that . . . I can't speak to . . . technical issues of that nature.").

Accordingly, the district court correctly concluded that Cellspin proffered no evidence concerning "how the code constitutes evidence of infringement" given the Court's construction that all asserted claims require establishing a "paired" Bluetooth connection "in the condition of having an exchanged link key." Appx69 (Summ. J. Order at 39:5–6).

Next, Cellspin invites this Court to scour swaths of unexplained citations in Cellspin's voluminous infringement contention charts for a "detailed explanation" of the manner by which HOVR 3 Products establish a secure paired Bluetooth connection . . . ." Cellspin Br. at 85 (citing Appx8529–8550). Critically, Cellspin fails to identify where this "explanation" exists. It is neither this Court's nor the district court's burden to search for Cellspin's purported evidence. *E.g., Traxcell Techs., LLC*, 15 F.4th at 1133 ("To be sure, Traxcell has cited swaths of documents. But it failed to link those documents to the SON Portal or to explain how those documents support its infringement theory. It didn't do so at the trial court, and it didn't do so here. In conclusion, we agree that summary judgment of noninfringement based on this limitation was proper," internal citations omitted); *Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biomorph, Inc*., 249 F.3d 1341, 1353 (Fed. Cir. 2001) ("It is not the trial judge's burden to search through lengthy technologic documents for possible evidence."); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) ("[A] district court is not required to comb the record to find some reason to deny a motion for summary judgment.") (internal quotations omitted); *see also Intell. Sci. & Tech., Inc. v. Sony Elecs*., Inc., 589 F.3d 1179, 1185 (Fed. Cir. 2009) ("Merely referring to the IC–109 multiplexer, however, does not suffice to show infringement . . . . Dr. Michalson's

opaque identification is not enough to permit any reasonable juror to make that leap.").

Notwithstanding Cellspin's improper evidentiary approach on summary judgment, the district court thoroughly analyzed the bases underlying Cellspin's expert opinions—including the purported "explanations" in Cellspin's voluminous infringement contention charts—and correctly found them conclusory and lacking substance. Appx32 (Summ. J. Order at 2:11–17); *see also id.* at Appx68–72 (Summ. J. Order at 38:10–42:12). This Court will too. For example, Cellspin falsely states that there is an explanation with "screenshot images of UA instructions on how to perform pairing and images of the actual HOVR 3 Products pairing with the UA Mobile Application." Cellspin Br. at 85. Again, this Court will find none, much less an explanation of how the HOVR 3 purportedly establishes a "paired" Bluetooth connection "in the condition of having an exchanged link key."

Being charitable, Cellspin's purported "evidence" stands for the unremarkable proposition that the HOVR 3 can connect to a mobile device running a mobile application. But again, it is not genuinely disputed that evidence of a Bluetooth connection **is not** evidence of a "paired" Bluetooth connection "in the condition of having an exchanged in key." Appx15611 (Cellspin Resp. to Undisp. Mat. Facts); Appx14927–14928 (Foley Rpt. at ¶ 100) ("There are, in fact, Bluetooth compliant devices that lack the capability to pair . . . . [P]airing. . . [is] an optional rather than

default Bluetooth mechanism . . . ."). Nor can Cellspin genuinely dispute that even "pairing" in general provides **no** evidence of a connection that is "in the condition of having an exchange link key." *See, e.g.*, Appx15037 (Foley Rpt. at ¶ 361) ("In ANT pairing, there isn't an exchange of link keys.").

Unlike the optional link-key-based paring in Bluetooth Low Energy, it is not genuinely disputed that Under Armour's connected footwear—like the HOVR Sonic 3—uses a *different* type of pairing where the device merely becomes associated with a user's account *without* the exchange of a link key. Appx15176 (Tr. of Dep. of Chris Green at 51:1–17 (herein after "Green Tr.")); Appx15203–15204 (Green Tr. at 78:24–79:2) (Chris Green explaining that Under Armour's connected shoes do not use Bluetooth's link-key-based pairing but instead pair in the sense that the shoes become associated with the user's account). Cellspin's own proffered material on summary judgment—excerpted below—is consistent with Mr. Green's explanation that the representative HOVR Sonic 3 uses a different type of pairing. Appx15625 (excerpt below).

> **3** Tap the shoe icon at the top right of the screen to pair your shoes to your UA account. Follow the instructions on the screen.

Cellspin next identifies "evidence of record" that purportedly includes documents "establishing" (a) that the HOVR 3 "remains paired even when out of Bluetooth range," Cellspin Br. at 85 (citing Appx8736–8740; Appx8741–8747), and

(b) "use of Bluetooth SoC with Key Generation and AES-128 Hardware Encryption," *Id.* (citing Appx8748–8749; Appx8752; Appx8759; Appx8763). Cellspin touts this purposed evidence as "establishing the fact that the HOVR 3 Products remain paired even when out of Bluetooth range" and argues that "Vijh has explained that such functionality is evidence that link keys have, in fact, been exchanged . . . ." Cellspin Br. at 86 (citing Appx8501–8502 (Cellspin Opp'n to Mot. for Summ. J. at 4:22-5:10); Appx720 (Vijh Rpt. at ¶ 69)). Not so.

Mr. Vijh's testimony again fails to address the critical question—whether the HOVR Sonic 3 can even establish a "paired" Bluetooth connection "in the condition of having an exchanged link." As the district court properly observed, Mr. Vijh's unexplained, conclusory opinion is insufficient to raise a genuine dispute of material fact that the HOVR 3 cannot establish a "paired" Bluetooth connection "in the condition of having an exchanged link key." Appx71 (Summ. J. Order at 41:9–17). *See, e.g., Invitrogen Corp.,* 429 F.3d at 1080; *Traxcell Techs., LLC*, 15 F.4th at 1130.

Indeed, neither Mr. Vijh nor Cellspin provides any explanation for how the "evidence of record" genuinely disputes that the HOVR Sonic 3 cannot establish a link-key-based paired Bluetooth connection. As the district court properly observed, it is not the Court's job to "search through lengthy technologic documents for possible evidence." *Biotec Biologische Naturverpackungen GmbH & Co. KG*, 249 F.3d at 1353; *see also OSRAM Sylvania, Inc.*, 701 F.3d at 707. Regardless, the

district court considered this "evidence of record" and properly observed that these documents provide no evidence that the HOVR Sonic 3 can establish a "paired" Bluetooth connection "in the condition of having an exchanged link key." Appx71 (Summ. J. Order at 41:17–26).

This Court will find the same. For example, some of Cellspin's "evidence of record" generally relates to unexplained testing. *See* Cellspin Br. at 85 (citing Appx8736–8740; Appx8741–8747; Appx7252; Appx8759–8761). However, none references any testing of the HOVR Sonic 3 that involved establishing a "paired" Bluetooth connection "in the condition of having an exchanged link." Even if they did, which they do not, Cellspin offers no evidence that such testing occurred in combination with the numerous other steps or configurations required by the Asserted Claims, which—as construed by the district court—must occur in a particular order. Appx7996–7797 (construing the "temporal order" of the Asserted Claims); *see also Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1335-36 (Fed. Cir. 2008) (affirming summary judgment of noninfringement where plaintiff "failed to adduce any specific evidence that [defendant] tested any of the products accused of infringing . . . or that it tested them in a way that would constitute infringement"); *E-Pass Techs., Inc. v. 3Com Corp.*, 473 F.3d 1213, 1222 (Fed. Cir. 2007) (affirming summary judgment of noninfringement where plaintiff failed to meet its burden to introduce evidence that all claimed method steps were performed in order).

The remainder of Cellspin's "evidence of record" is also unexplained by Mr. Vijh and relates to things that are indisputably optional or irrelevant. Cellspin Br. at 85–86, citing Appx8748–8749 and Appx8763. For example, Cellspin emphasizes Appx8748–8749 as containing the words "Bluetooth SoC with Key Generation and AES-128 Hardware Encryption." Cellspin Br. at 85. Cellspin also cites—for some unstated proposition—to Appx8763, which is a merely a "BLE Interface Specification." Cellspin Br. at 85; Appx8762. Again, there is no evidence that—or explanation for how—the HOVR Sonic 3 generates a "key," establishes a "paired" Bluetooth in the condition of having that "key" exchanged, or otherwise uses a BLE Interface to establish such connection. Again, link-key-based pairing is indisputably optional.

#### *d. The district court did not improperly credit or discredit expert testimony or weigh evidence against Cellspin.*

Cellspin suggests that the district court usurped the role of the jury by "credit[ing] Under Armour's expert while rejecting the opinions expressed by Vijh." Cellspin Br. at 86. Cellspin's suggestion is unfounded.

The basis for Cellspin's suggestion is the district court's observation of one of the many explanations from Dr. Sharony for why the HOVR Sonic 3 cannot establish a "paired" Bluetooth connection "in the condition of having an exchanged link key." Cellspin Br. at 86 (citing Appx70 (Summ. J. Order) at 8–9 (citing

Appx14671 (Sharony Rpt., Pt. II at ¶ 49))). The district court certainly considered Dr. Sharony's testimony just as it did for Mr. Vijh. However, Cellspin provides no basis to support that the district court made determinations of credibility among the experts. Rather, "the [district court] . . . analyzed the bases underlying [Cellspin's] expert Rahul Vijh's opinions and [found] them conclusory and lacking substance." Appx32 (Summ. J. Order at 2:16–16). This Court should find the same. Unexplained, conclusory opinions cannot defeat summary judgment. *Invitrogen Corp.*, 429 F.3d at 1080; *Sitrick*, 516 F.3d at 1001. Cellspin's attorney argument concerning "facts" that are "not dispositive" has no bearing on Cellspin's burden to profer evidence precluding summary judgment. *See Mahdavi*, 898 F.2d.

Cellspin argues it proffered evidence from Mr. Vijh "citing to UA Source Code" and "personal testing." Cellspin Br. at 86; *see also id.* at 88 (arguing that the district court incorrectly stated Mr. Vijh failed to present results of his alleged testing). As explained *supra* Sections VI.C.2.b–c, Mr. Vijh provides no explanation for the purported "source code" or other "documents of record" to genuinely dispute that the HOVR Sonic 3 cannot establish a "paired" Bluetooth connection "in the condition of having an exchanged link." And, as the district court correctly acknowledged, "nowhere in Vijh's report does it offer any results from his purported testing to explain how the accused HOVR 3 perform any acts of infringement," much less to genuinely dispute that the HOVR Sonic 3 cannot establish a "paired"

Bluetooth connection "in the condition of having an exchanged link key." Appx72 (Summ. J. Order at 42:1–9). Again, on appeal, Cellspin does not even purport to identify any specific testing that Mr. Vijh performed from which a jury could conclude that the HOVR Sonic 3 can established a "paired" Bluetooth connection "in the condition of having an exchanged link key."

Cellspin further argues that its purported "documentary evidence . . . should be weighed in Cellspin's favor." Cellspin Br. at 87. There is no indication that the district court failed to do so. There is simply nothing in Cellspin's proffered documents from which a reasonable jury could conclude that the HOVR Sonic 3 can establish a "paired" Bluetooth connection "in the condition of having an exchanged link key."

For these additional reasons, the Court should affirm the district court's grant of summary judgment that the representative HOVR Sonic 3 and corresponding Accused Products represented thereby do not infringe the Asserted Claims of the Asserted Patents.

### D. There Is No Genuine Dispute of Material Fact That The Representative HOVR Sonic 3 and Corresponding Accused Products Cannot Establish a "Secure" Bluetooth Connection That Uses a "Cryptographic Encryption Key" or "Cryptographically Authenticate" Identity, as Required by All '752 and '847 Asserted Claims[9]

Example independent '752 Asserted Claim 1 recites in pertinent part:

> . . . establishing a **secure** paired Bluetooth connection between the Bluetooth enabled data capture device and the Bluetooth enabled mobile device, wherein the secure paired Bluetooth connection **uses a cryptographic encryption key**;
>
> acquiring new data in the Bluetooth enabled data capture device, wherein new data is data acquired after the secure paired Bluetooth connection is established;
> . . . .
> **encrypting, using the cryptographic encryption key, the new data** acquired in the Bluetooth enabled data capture device . . . .

Appx411 ('752 Asserted Patent at 11:52–59, 12:14–16). The only other independent Asserted Claim 12 of the '752 Asserted Patent recites substantially similar limitations. Appx412 ('752 Asserted Patent at 13:60–64, 14:5–11). In kind, the only independent Asserted Claim 1 of the '847 Asserted Patent recites:

---

[9] Cellspin states that its appeal on this ground for summary judgment impacts the Asserted Claims of the '847 Patent. Cellspin Br. at 88 n.31. This ground also impacts the Asserted Claims of the '752 Patent. This is clear from the district court's summary judgment order addressing both the "secure" and "cryptographically authenticate" limitations of the '752 and '847 Asserted Claims in response to Under Armour's motion on the same grounds. *E.g.*, Appx72–73 (Summ. J. Order at 42:13–14, 42:25–43:5); Appx15600–15603 (Mot. for Summ. J. at 18:7–21:28).

> . . . a first Bluetooth communication device configured to establish a paired Bluetooth wireless connection between the Bluetooth enabled data capture device and a Bluetooth enabled cellular phone, wherein the Bluetooth enabled data capture device is configured to **cryptographically authenticate** identity of the Bluetooth enabled cellular phone when the first Bluetooth communication device establishes the paired Bluetooth wireless connection . . . .

Appx427 ('847 Asserted Patent at 12:17–25).

The district court construed "**cryptographically authenticate[]**" to mean "verif[y] as legitimate by **use of encryption** and decryption involving an algorithm." Appx8005 (Cl. Constr. Order). Accordingly, the'752 and '847 Asserted Claims as construed each recite similar "encryption" limitations. Cellspin does not challenge the district court's construction on appeal.

The parties agreed on summary judgment that (i) the representative HOVR Sonic 3 is a Bluetooth Low Energy device and (ii) that Bluetooth Low Energy devices are only *optionally* designed to establish secure (encrypted or authenticated) connections. Cellspin, however, failed to proffer any evidence to dispute that the representative HOVR Sonic 3 cannot establish a "secure" Bluetooth connection that use a "cryptographic encryption key" ('752 Asserted Patent) or "cryptographically authenticate" identity (or, as construed, "verify[y] as legitimate by use of encryption") ('847 Asserted Patent). The district court correctly granted summary judgment on this basis.

#### 1. *The is no genuine dispute of material fact that the representative HOVR Sonic 3 cannot establish a "secure" Bluetooth connection that uses a "cryptographic encryption key" or "cryptographically authenticate."*

It is undisputed that the representative HOVR Sonic 3 is a Bluetooth Low Energy (BLE) device, as explained *supra* Section VI.C. As a BLE device, the representative HOVR Sonic 3 is designed to implement certain features found in the Bluetooth Low Energy Core Specification version 4.2. For example, as explained *supra* Section VI.C.1, a developer can choose to design a BLE device in accordance with **Mode 1, Level 3** or **Mode 1, Level 4**, which provide options for pairing with authentication and encryption. Appx14625–14626 (Sharony Rpt., Pt. I at ¶¶ 89–92); Appx14460 (Sharony Rpt., Pt. I at ¶ 124); Appx14684–14686 (Sharony Rpt., Pt. II at ¶¶ 96–102); Appx15122–15124 (BLE Spec.). However, as also explained *supra* Section VI.C.1, a developer can also choose to design the BLE device in accordance with the BLE specification's **Mode 1, Level 1**—in which there is no pairing and, in fact, no security (no authentication and encryption). *Id.*

> **10.2.1 LE Security Mode 1**
>
> LE security mode 1 has the following security levels:
>
> 1. No security (No authentication and no encryption)

Appx15123–15124 (BLE Spec.).

Again faced with this undisputed evidence, Cellspin and its experts admit that "security," "authentication," and "encryption" are optional features of the Bluetooth

Low Energy specification. Appx15615–15616 (Cellspin Resp. to Undisp. Mat. Facts); Appx14625–14629 (Sharony Rpt., Pt. I at ¶¶ 89–94, 101); Appx14640 (Sharony Rpt., Pt. I at ¶ 124); Appx14683–14687 (Sharony Rpt., Pt. II at ¶¶ 92–105); Appx14858–14859 (Vijh Tr. at 77:15–78:13); Appx14927–14928 (Foley Rpt. at ¶ 100); Appx14994–14995 (Foley Rpt. at ¶ 228); Appx15026 (Foley Rpt. at ¶ 327); Appx15319–15320 (Foley Tr. at 34:9–35:3).

Similarly, Cellspin does not dispute that the *optional* link-key-based "pairing" feature in the Bluetooth Low Energy specification is only *optionally* implemented to establish secure (encrypted and authenticated) connections. *Id.* Indeed, Mr. Vijh agreed that the optional security features "begin with encrypting the link" and that "[t]his is performed through operations derived from the long term key (link key)." Appx714 (Vijh Rpt. at ¶ 57).

As Dr. Sharony explained in detail—see *supra* Section VI.C.2—the representative HOVR Sonic 3 does not use a link key and therefore cannot establish a "secure" Bluetooth connection that uses a "cryptographic encryption key" for "encrypting the new data" ('752 Asserted Patent) or "cryptographically authenticate" identity (or, as construed, "verif[y] as legitimate by use of encryption" ('847 Asserted Patent). Appx14625–14626 (Sharony Rpt., Pt. I at ¶¶ 89–92); Appx14640 (Sharony Rpt., Pt. I at ¶ 124); Appx14665–14666 (Sharony Rpt., Pt. Part II at ¶¶ 34–35); Appx14670–14671 (Sharony Rpt., Pt. II at ¶¶ 46–49); Appx14681–

14700 (Sharony Rpt., Pt. II at ¶¶ 85–140); Appx14700–14702 (¶¶ 111–115); Appx14733–14734 (Sharony Rpt., Pt. II at ¶¶ 188–195); Appx14763 (Sharony Rpt., Pt. II at ¶¶ 200–201); Appx14744–14745 (Sharony Rpt., Pt. II at ¶¶ 234–236).

Again, the representative HOVR Sonic 3 is designed to use Mode 1, Level 1 of the Bluetooth Low Energy specification's security model—where there is no link-key-based paring and therefore no security (no encryption and no authentication). *E.g.*, Appx14686 (Sharony Rpt., Pt. II at ¶ 103); Appx15124 (BLE Spec.).

Against this backdrop, the district court correctly concluded that Mr. Vijh's conclusory, unexplained testimony—that Bluetooth Low Energy devices, in general, "**typically**" use the BLE specification's optional cryptographic link keys to implement an optional security feature—was insufficient to overcome summary judgment. *See, e.g., Fujitsu Ltd.*, 620 F.3d at 1327–28; *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1051 (Fed. Cir. 2001) ("[M]ere theoretical speculations lacking a basis in the record will not create a genuine issue of fact") (internal quotations omitted); *Invitrogen Corp.,* 429 F.3d at 1080.

**2. *The district court did not err in granting summary judgment on the basis that the representative HOVR Sonic 3 cannot establish a "secure" Bluetooth connection that uses a "cryptographic encryption key" or "cryptographically authenticate."***

On appeal, Cellspin argues that the district erred because the representative HOVR Sonic 3 purported establishes secure paired Bluetooth connections "via the

exchange of link keys" and "remains paired even when out of Bluetooth range." Cellspin Br. at 88–89. As the district court correctly concluded, this argument fails because Cellspin has pointed to zero evidence genuinely disputing the HOVR Sonic 3 cannot establish link-key-based paired connections to establish secure (encrypted or authenticated) connections in the first instance. Appx72–73; *Invitrogen Corp.*, 429 F.3d at 1080.

Cellspin then refers again to the same conclusory testimony from Mr. Vijh and unexplained "UA documents"—addressed *supra* Section VI.C.2.c—for the proposition that the HOVR Sonic 3 uses link-key-based pairing and thus establishes secure connections. Cellspin Br. at 89. For example, Cellspin repeats its citation to Appx8648–8749 to show the words "Bluetooth SoC with Key Generation and AES-128 Hardware Encryption." Cellspin Br. at 89. Again, Cellspin fails to point to any evidence that the HOVR Sonic 3 implements "Key Generation" to generate a link key to establish a secure Bluetooth connection using "Encryption." The Bluetooth Low Energy specification's link-key-based pairing and security features are indisputably optional, Mr. Vijh's generalizations about what may "typically" occur for some unspecified Bluetooth devices is insufficient to overcome summary judgment. *E.g., Fujitsu Ltd.*, 620 F.3d at 1327–28; *Novartis Corp.*, 271 F.3d at 1051; *OSRAM Sylvania, Inc.*, 701 F.3d at 707; *Traxcell Techs., LLC*, 15 F.4th at 1130.

For these additional reasons, the Court should affirm the district court's grant of summary judgment that the representative HOVR Sonic 3 and corresponding Accused Products represented thereby do not infringe the Asserted Claims of the Asserted Patents.

## VII. CONCLUSION

For the foregoing reasons, the Court should affirm the district court's grant of summary judgment.

Dated: March 27, 2023

Respectfully, submitted,

*/s/ George D. Moustakas*

George D. Moustakas
HARNESS, DICKEY, & PIERCE, P.L.C.
5445 Corporate Drive, Ste. 200
Troy, MI 48098
Tel: 248.641.1600
Email: gdmoustakas@harnessip.com

Michael P. Kella
HARNESS, DICKEY & PIERCE, P.L.C.
4400 Bonhomme Ave, Ste. 400
St. Louis, MO 63105
Tel: 314.446.7665
Email: mkella@harnessip.com

*Counsel for Defendant-Appellee Under Armour, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2023, I served a complete copy of the foregoing on all counsel of record by filing it with the United States Court of Appeals for the Federal Circuit using the CM/ECF system.

Dated: March 27, 2023

*/s/ George D. Moustakas*

George D. Moustakas
HARNESS, DICKEY, & PIERCE, P.L.C.
5445 Corporate Drive, Ste. 200
Troy, MI 48098
Tel: 248.641.1600
Email: gdmoustakas@harnessip.com

*Counsel for Defendant-Appellee Under Armour, Inc.*

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief complies with the type-volume limitation set forth in Fed. Cir. R. 32(a) and Fed. R. App. P. 32(a)(7)(B). Excluding exempt portions, this brief contains:

- 11,833 words as counted by Microsoft Word for Microsoft 365, the word-processing system used to prepare this paper and
- 208 words in the illustrations, counted manually.

This brief's total word count, excluding exempt portions, is 12,041 words, which complies with the 14,000 word limit set by this Court.

The undersigned further certifies that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 and 14-point Times New Roman type.

Dated: March 27, 2023

*<u>/s/ George D. Moustakas</u>*
George D. Moustakas
HARNESS, DICKEY, & PIERCE, P.L.C.
5445 Corporate Drive, Ste. 200
Troy, MI 48098
Tel: 248.641.1600
Email: gdmoustakas@harnessip.com

*Counsel for Defendant-Appellee Under Armour, Inc.*