Nos. 2022-2025, 2022-2028, 2022-2029,
2022-2030, 2022-2032, 2022-2037

# United States Court of Appeals for the Federal Circuit

CELLSPIN SOFT, INC.,

Plaintiff-Appellant,

v.

FITBIT LLC; NIKE, INC.; UNDER ARMOUR, INC.; FOSSIL GROUP, INC.; MISFIT, INC.; NIKON AMERICAS, INC.; NIKON, INC.; GARMIN INTERNATIONAL, INC., GARMIN USA, INC.,

Defendants-Appellees,

*Appeal from the United States District Court for the Northern District of California in Case Nos. 4:17-cv-05928, 4:17-cv-05931, 4:17-cv-05932, 4:17-cv-05933, 4:17-cv-05936, and 4:17-CV-05934 Judge Yvonne Gonzalez Rogers*

**RESPONSE BRIEF OF DEFENDANT-APPELLEE FOSSIL GROUP, INC. & MISFIT, INC.**

NEIL J. MCNABNAY
RICARDO J. BONILLA
NOEL F. CHAKKALAKAL
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 95201
214.747.5070

*Counsel for Appellees Fossil Group, Inc. and Misfit, Inc.*

**Claim 1 of U.S. Patent No. 8,738,794 (per Fed. Cir. R. 32(a)(3))**

1. A method for acquiring and transferring data from a Bluetooth enabled data capture device to one or more web services via a Bluetooth enabled mobile device, the method comprising:

> providing a software module on the Bluetooth enabled data capture device;
>
> providing a software module on the Bluetooth enabled mobile device;
>
> establishing a paired connection between the Bluetooth enabled data capture device and the Bluetooth enabled mobile device;
>
> acquiring new data in the Bluetooth enabled data capture device, wherein new data is data acquired after the paired connection is established;
>
> detecting and signaling the new data for transfer to the Bluetooth enabled
> mobile device, wherein detecting and signaling the new data for transfer comprises:
>
> > determining the existence of new data for transfer, by the software module on the Bluetooth enabled data capture device; and
> >
> > sending a data signal to the Bluetooth enabled mobile device, corresponding to existence of new data, by the software module on the Bluetooth enabled data capture device automatically, over the established paired Bluetooth connection, wherein the software module on the Bluetooth enabled mobile device listens for the data signal sent from the Bluetooth enabled data capture device, wherein if permitted by the software module on the Bluetooth enabled data capture device, the data signal sent to the Bluetooth enabled mobile device comprises a data signal and one or more portions of the new data;
>
> transferring the new data from the Bluetooth enabled data capture device to

> the Bluetooth enabled mobile device automatically over the paired Bluetooth
> connection by the software module on the Bluetooth enabled data capture device;
>
> receiving, at the Bluetooth enabled mobile device, the new data from the
> Bluetooth enabled data capture device;
> applying, using the software module on the Bluetooth enabled mobile device, a user identifier to the new data for each destination web service, wherein each user identifier uniquely identifies a particular user of the web service;
>
> transferring the new data received by the Bluetooth enabled mobile device along with a user identifier to the one or more web services, using the software module on the Bluetooth enabled mobile device;
>
> receiving, at the one or more web services, the new data and user identifier
> from the Bluetooth enabled mobile device, wherein the one or more web services receive the transferred new data corresponding to a user identifier; and
>
> making available, at the one or more web services, the new data received from the Bluetooth enabled mobile device for public or private consumption over the internet, wherein one or more portions of the new data correspond to a particular user identifier.

Appx0396 (11:48–12:38).

**<u>Claim 1 of U.S. Patent No. 8,892,752 (per Fed. Cir. R. 32(a)(3))</u>**

1. A method for transferring data from a Bluetooth enabled data capture device to a remote internet server via a Bluetooth enabled mobile device comprising:

> performing at the Bluetooth enabled data capture device:
>
> > establishing a secure paired Bluetooth connection between the Bluetooth enabled data capture device and the Bluetooth enabled

mobile device, wherein the secure paired Bluetooth connection uses a cryptographic encryption key;

acquiring new data in the Bluetooth enabled data capture device, wherein new data is data acquired after the secure paired Bluetooth connection is established;

detecting and signaling the new data for transfer, to the Bluetooth enabled mobile device, wherein detecting and signaling the new data for transfer comprises:

> receiving a message from the Bluetooth enabled mobile device, over the established secure paired Bluetooth connection, to enable event notifications, corresponding to new data for transfer, on the Bluetooth enabled data capture device;
>
> enabling event notification on Bluetooth enabled data capture device, corresponding to new data for transfer;
>
> determining existence of the new data for transfer; and
>
> sending an event notification to the Bluetooth enabled mobile device, corresponding to existence of new data for transfer, over the established secure paired Bluetooth connection, wherein the Bluetooth enabled mobile device is configured to listen for the event notification sent from the Bluetooth enabled data capture device;

encrypting, using the cryptographic encryption key, the new data acquired in the Bluetooth enabled data capture device; and

transferring the encrypted data from the Bluetooth enabled data capture device to the Bluetooth enabled mobile device, over the established secure paired Bluetooth connection, wherein the Bluetooth enabled mobile device has access to the internet, wherein the Bluetooth enabled mobile device is configured to receive the encrypted data and obtain the new data from the encrypted data using the cryptographic encryption key, wherein the Bluetooth enabled mobile device is configured to attach a

> user identifier, an action setting and a destination web address of a remote internet server to the obtained new data, wherein the user identifier uniquely identifies a particular user of internet service provided by the remote internet server, wherein action setting comprises one of a remote procedure call (RPC) method and hypertext transfer protocol (HTTP) method, and wherein the Bluetooth enabled mobile device is configured to send the obtained new data with the attached user identifier, an action setting and a destination web address to a remote internet server.

Appx0411 (11:48–12:37).

**Claim 1 of U.S. Patent No. 9,749,847 (per Fed. Cir. R. 32(a)(3))**

1. A system comprising:

a Bluetooth enabled data capture device, comprising:

a first memory device;

a first processor coupled to the first memory device;

a first Bluetooth communication device configured to establish a paired Bluetooth wireless connection between the Bluetooth enabled data capture device and a Bluetooth enabled cellular phone, wherein the Bluetooth enabled data capture device is configured to cryptographically authenticate identity of the Bluetooth enabled cellular phone when the first Bluetooth communication device establishes the paired Bluetooth wireless connection;

a data capture circuitry;

said first processor configured to acquire new-data using the data capture circuitry after the paired Bluetooth wireless connection between the Bluetooth enabled data capture device and the Bluetooth enabled cellular phone is established;

said first processor configured to store the acquired new-data in the first memory device; and said first processor configured to send an event notification and the acquired new-data to the cryptographically authenticated Bluetooth enabled cellular phone over the established paired Bluetooth wireless connection, wherein the event notification corresponds to the acquired new-data and comprises sending a signal to the cryptographically authenticated Bluetooth enabled cellular phone;

a mobile application in the Bluetooth enabled cellular phone comprising executable instructions that, when executed by a second processor inside the Bluetooth enabled cellular phone controls the second processor to:

detect and receive the acquired new-data, comprising:

> listen for the event notification, sent from the Bluetooth enabled data capture device, over the established paired Bluetooth wireless connection, wherein the event notification corresponds to the acquired new-data; and
>
> receive the event notification and the acquired new-data, from the Bluetooth enabled data capture device, over the established paired Bluetooth wireless connection, wherein receiving the event notification comprises receiving the signal sent by the Bluetooth enabled data capture device corresponding to the acquired new-data;
>
> store the new-data received over the established paired Bluetooth wireless connection, in a second memory device of the Bluetooth enabled cellular phone before transfer to a website; and
>
> use HTTP to transfer the new-data received over the established paired Bluetooth wireless connection, along with user information stored in the second memory device of the cryptographically authenticated Bluetooth enabled cellular phone, to the website, over the cellular data network;
>
> wherein the mobile application further comprises executable instructions to control the processor to provide a graphical user interface (GUI) for the new-data.

Appx0427–428 (12:13–13:3).

## CERTIFICATE OF INTEREST

Counsel for Appellees Fossil Group, Inc. and Misfit, Inc., certify under Federal Circuit Rule 47.4 that the following information is accurate and complete to the best of their knowledge:

1. The full name of every party or amicus represented by me is:

   Fossil Group, Inc.

   Misfit, Inc.

2. The name of the real party in interest (Please only include any real party in interest NOT identified in Question 3. below) represented by me:

   N/A

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

   Fossil Group, Inc.

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

   Fish & Richardson P.C.
   Ricardo J. Bonilla, Principal
   Neil J. McNabnay, Principal
   Noel F. Chakkalakal, Associate
   Rodeen Talebi, Associate

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. *See* Fed. Cir. R. 47. 4(a)(5) and 47.5(b).

   *Cellspin Soft, Inc. v. Fitbit LLC*
   2022-2025 (Fed. Cir.) (Appeal from 4:17-cv-05928 (N.D. Cal.))

   *Cellspin Soft, Inc. v. Nikon Americas, Inc.*
   2022-2032 (Fed. Cir.) (Appeal from 4:17-cv-05936 (N.D. Cal.))

   *Cellspin Soft, Inc. v. Under Armour, Inc.*
   2022-2029 (Fed. Cir.) (Appeal from 4:17-cv-05932 (N.D. Cal.))

*Cellspin Soft, Inc. v. Nike, Inc.*
2022-2028 (Fed. Cir.) (Appeal from 4:17-cv-05931 (N.D. Cal.))

*Cellspin Soft, Inc. v. Garmin International, Inc.*
2022-2037 (Fed. Cir.) (Appeal from 4:17-cv-05934 (N.D. Cal.))

*Cellspin Soft, Inc. v. Moov Inc.*
4:17-cv-05928 (N.D. Cal.)

*Cellspin Soft, Inc. v. Nike, Inc.*
6:21-cv-00803 (W.D. Tex.)

*Cellspin Soft, Inc. v. Panasonic Corp.*
*2020-1948 (Fed. Cir.)*

*Cellspin Soft, Inc. v. Canon U.S.A., Inc.*
2020-1947 (Fed. Cir.)

6. Pursuant to Fed. R. App. P. 26.1(b), there are no organizational victims. Pursuant to Fed. R. App. P. 26.1(c), there are no bankruptcy case debtors.

N/A

Dated: March 27, 2023

*/s/ Ricardo J. Bonilla*
Ricardo J. Bonilla

# Table of Contents

**CERTIFICATE OF INTEREST** ........ **vii**

**I. STATEMENT OF RELATED CASES** ........ **x**

**II. PRELIMINARY STATEMENT** ........ **12**

**III. STATEMENT OF THE ISSUES** ........ **16**

**IV. STATEMENT OF THE CASE** ........ **17**

***A. The Asserted Claims Are Directed To A Particular Way To Use Bluetooth To Transmit Data*** ........ ***17***

***B. After Over Five Years Of Litigation, Cellspin Has Failed To Marshal Evidence To Prove Infringement Of Any Asserted Claim.*** ........ ***17***

***C. The District Court Granted Fossil Summary Judgment Of Non-infringement On At Least Two Grounds For Every Claim.*** ........ ***18***

**V. SUMMARY OF THE ARGUMENT** ........ **18**

**VI. ARGUMENT** ........ **20**

***A. Standard of Review*** ........ ***21***

***B. Cellspin's Global Attacks Against The District Court's Summary Judgment Order Are Meritless.*** ........ ***21***

***C. Cellspin Lacks Evidence That The Accused Products Meet The "User Identifier" And "User Information" Limitations*** ........ ***21***

***D. Fossil HR Hybrids Do Not "Cryptographically Authenticate" a Mobile Device.*** ........ ***24***

## I. STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5(a), Fossil Group, Inc. and Misfit, Inc.[1] ("Fossil") provides the following statement of related cases.

An appeal from the same civil action was previously before this Court as Case No. 18-1817. The Court issued a precedential opinion on June 25, 2019: 927 F.3d 1306 (Fed. Cir. 2019). The panel was composed of Circuit Judges Lourie, O'Malley, and Taranto.

The following cases are known to counsel to be pending that will directly affect or be affected by this Court's decision:

- *Cellspin Soft, Inc. v. Fitbit LLC, Nikon Americas, Inc., Nikon Inc.*, Case No. 2023-1526 (Fed. Cir.)
- *Cellspin Soft, Inc. v. Fitbit LLC,* Case No. 2022-2025 (Fed. Cir.) originating from Case No. 4:17-cv-05928-YGR (N.D. Cal.)
- *Cellspin Soft, Inc. v. Nike, Inc.*, Case No. 2022-2028 (Fed. Cir.), originating from Case No. 4:17-cv-05931-YGR (N.D. Cal.)
- *Cellspin Soft, Inc. v. Under Amour, Inc.*, Case No. 2022-2029 (Fed. Cir.), originating from 4:17-cv-05932-YGR (N.D. Cal.)

[1] Fossil Group, Inc. acquired Misfit, Inc. in December 2015. Misfit no longer exists as a separate legal entity.

- *Cellspin Soft, Inc. v. Nikon Americas, Inc., et al.*, Case No. 2022-2032 (Fed. Cir.), originating from 4:17-cv-05936-YGR (N.D. Cal.)
- *Cellspin Soft, Inc. v. Garmin International, Inc., et al.*, Case No. 2022-2037 (Fed. Cir.), originating from 4:17-cv-05934 (N.D. Cal.)

Counsel for Fossil know of no other cases pending in this Court or any other court that will directly affect or be affected by this Court's decision in this appeal.

## II. PRELIMINARY STATEMENT

Cellspin cannot overcome the glaring evidentiary deficiencies that led the district court to grant summary judgment against Cellspin on multiple grounds in all six of Cellspin's lawsuits now pending before this Court. This result was hardly surprising, as Cellspin failed to marshal the evidence necessary to show that any defendant infringed any of the claims asserted by Cellspin.[2] Indeed, this Court must reverse the district court's well-reasoned rulings on at least two independent grounds, one of which is entitled to deferential review, for this case to even merit remand. Cellspin thus faces a high hurdle, one that it does not and cannot clear.

The district court did not find in favor of Cellspin on any issue Fossil raised at summary judgment. Of the thirteen different issues that Fossil raised, Cellspin won none, while Fossil won nine.[3] Appx0077-90 (SJ Order). Five of the issues decided in Fossil's favor relate to the Fossil Wear OS

---

[2] Cellspin asserts claims 1–4, 7, 9, 16, 17, 18, 20, and 21 of U.S. Pat. No. 8,738,794 (the '794 Patent"), claims 1, 2, 4, 5, 12, 13, and 14 of U.S. Pat. No. 8,892,752 (the '752 Patent), and claims 1, 2, and 3 of U.S. Pat. No. 9,749,847 (the '847 Patent) (collectively, the "Asserted Claims"). The claims of the '794 and '752 Patents are method claims (the "Asserted Method Claims"), and the claims of the '847 Patent are system claims (the "Asserted System Claims").

[3] The district court did not reach Fossil's arguments regarding "web service," "web address," "website," or representative products "because it concludes that other issues are dispositive of Fossil's summary judgment motion." Appx0090 (n.45).

products, while the other four relate to the Fossil HR Hybrids. *Id*. Cellspin's evidentiary deficiencies[4] were so acute that it did not appeal the district court's grant of summary judgment as to the Fossil Wear OS products, which were the majority of the Fossil devices accused of infringement. Cellspin Opening Brief ("Blue Br."), at 70. Accordingly, judgment for the Fossil Wear OS products is final.

For the Fossil HR Hybrids, Cellspin's evidentiary woes were almost as bad, and they continue in this Court, further compounded by additional legal deficiencies. The district court correctly granted summary judgment on at least two grounds for every claim asserted against the Fossil HR Hybrids. Appx0084–90. As shown in the chart below, Cellspin ostensibly raises four grounds for appeal. Blue Br. at 70–75. But Cellspin did not argue one in its brief, and improperly incorporated argument as to another, resulting in waiver of both those grounds and the corresponding claims (marked by "*"). *Id*. This Court may dispose of this appeal on the basis of waiver alone.

[4] Cellspin did not gather any evidence from Google despite the fact that the Fossil Wear OS products run the Google Wear OS operating system, and pair with Google's Wear OS mobile application.

| **Non-infringement Issue** | **Asserted Method Claims** | | | **Asserted System Claims** |
|---|---|---|---|---|
| | **’794 Patent (Claim 1)** | **’794 Patent (Claim 16)** | **’752 Patent** | **’847 Patent** |
| No “User Identifier” or “User Information”* | ✓* | ✓* | ✓* | ✓* |
| No Signaling New Data for Transfer* | ✓* | | ✓* | ✓* |
| No Polling | | ✓ | | |
| No “Cryptographically Authenticates” | | | | ✓ |

With Cellspin’s dearth of evidence, waiver was *fait accompli*. Although Cellspin’s Blue Brief includes “signaling new data for transfer” as part of one section heading (and in the Table of Contents), that section does not address the limitation at all. Blue Br., at 73–75. It only addresses the “polling” limitation. Accordingly, Cellspin has waived “signaling new data for transfer” as a ground for appeal. *Smithkline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) (“Our law is well established that arguments not raised in the opening brief are waived.”); *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 738 (9th Cir. 1986) (“The Court of Appeals will not ordinarily

consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief."). Claim 16 of the '794 Patent and its dependents are the only claims without this limitation, and thus, judgment should be final as to the other claims. Cellspin also waives the "user identifier" and "user information" issue by not addressing the district court's ruling on the issue as they relate to Fossil. Blue Br. at 73. Nevertheless, Fossil addresses every issue purportedly raised by Cellspin.

Cellspin's other issues fare no better on appeal in the face of the district court's well-reasoned rulings. For one issue, Cellspin fails to identify any abuse of discretion on the part of the district court (because none exists). Blue Br. at 40–43, 73. For another, Cellspin repeats the same irrelevant allegations that the district court rejected in granting summary judgment, without adding anything that would alter the analysis. *Id.* at 71–73. And for the third, Cellspin admits its expert's testimony was deficient, while extraordinarily contending that the district court did not "appreciate the entirety of its own Construction." *Id.* at 73–75. But the district court did understand, not only the boundaries of its claim construction but also Cellspin's failure to raise a genuine issue of material fact as to any issue raised by Fossil.

Cellspin put forth a fatally flawed case, one that relied on untimely and unsupported theories, mischaracterizations of evidence, and misstated law. The district court saw the case for what it was, and it issued a well-reasoned summary judgment order that identified and explained the evidentiary deficiencies that make it impossible for Cellspin to prove infringement as a matter of law.

Accordingly, for the reasons discussed below, this Court should affirm the district court's grant of summary judgment.

## III. STATEMENT OF THE ISSUES

1. Whether, for all Asserted Claims, the district court properly exercised its discretion to exclude Cellspin's only infringement theory for the "user identifier" and "user information" limitations as untimely under the local patent rules and thus properly granted summary judgment of non-infringement, and whether Cellspin waived this issue as to Fossil by only incorporating its arguments against Fitbit.

2. Whether, for the Asserted System Claims, the district court correctly granted summary judgment of non-infringement because Cellspin provided no evidence that the Fossil HR Hybrids "cryptographically authenticate" a mobile device under the district court's construction, especially where the evidence before the district court contradicts such an

assertion.

3. Whether, for Claim 16 of the ’794 Patent, the district court correctly granted summary judgment of non-infringement because the Fossil Smartwatches Application (the “Fossil App”) does not “poll[]” the Fossil HR Hybrids under the unchallenged construction of the district court.[5]

## IV. STATEMENT OF THE CASE

### A. The Asserted Claims Are Directed To A Particular Way To Use Bluetooth To Transmit Data.

Pursuant to Federal Rule of Appellate Procedure 28(i), Fossil incorporates by reference §IV.A of Appellee Fitbit’s response brief in Lead Appeal No. 22-2025.

### B. After Over Five Years Of Litigation, Cellspin Has Failed To Marshal Evidence To Prove Infringement Of Any Asserted Claim.

Pursuant to Rule 28(i), Fossil incorporates by reference §IV.B of Appellee Fitbit’s response brief in Lead Appeal No. 22-2025.

[5] Cellspin did not argue, and has accordingly waived, the “signal[] new data for transfer” issue; otherwise, it would be included in the Statement of the Issues as “Whether, for all claims other than Claim 16 of the ’794 Patent, the district court correctly granted summary judgment of non-infringement because the Fossil HR Hybrids do not “signal[] new data for transfer.”

### C. The District Court Granted Fossil Summary Judgment Of Non-infringement On At Least Two Grounds For Every Claim.

As shown in the chart above, for the Fossil HR Hybrids, the district court granted summary judgment of non-infringement of **every Asserted Claim** on at least **two independent grounds**.[6] Accordingly, to reverse the district court's finding of non-infringement on **any** claim, this Court would have to reverse the district court on at least two or more issues. This Court would also have to find that Cellspin did not waive at least one, if not two, issues.

## V. SUMMARY OF THE ARGUMENT

The district court's grant of summary judgment should be affirmed on each of its four independent grounds. Fossil first addresses non-infringement based on the "user identifier" and "user information" limitations because that ground affects all Asserted Claims and is reviewed under the deferential "abuse of discretion" standard. Fossil addresses the remaining two issues in the same order that Cellspin presents them in its Blue Brief.

1. Every Asserted Claim includes a limitation directed to a "user identifier" or "user information." Cellspin attempted to rely on an untimely

[6] *See* FN 3.

theory for those limitations based on the Accused Instrumentalities' purported use of "OAuth tokens," which Cellspin had not disclosed in its infringement contentions. The district court acted within its discretion to exclude the OAuth token theory for violation of the local patent rules. Upon exclusion of that untimely theory, the court properly granted summary judgment because Cellspin had no evidence to prove that the "user identifier" or "user information" limitations are met by the Fossil accused devices. Cellspin appeals that decision by incorporating its arguments for Defendant Fitbit, without explaining how it presented notice of the OAuth token theory to Fossil, thereby waiving the issue as to Fossil. Additional evidence refutes Cellspin's OAuth token theory as to the Fossil HR Hybrids entirely.

2. To prove infringement of the Asserted System Claims of the '847 Patent, Cellspin must provide evidence that the Fossil HR Hybrids are configured to "cryptographically authenticate" the user's mobile device. Under the district court's claim construction for that term, which is not challenged on appeal, Cellspin must therefore show that the Fossil HR Hybrids are configured to "**verify [the mobile device] as legitimate** by use of encryption and decryption involving an algorithm." The district court was correct when it found that Cellspin provided no evidence that the Fossil HR Hybrids verify a mobile device as legitimate, and also when it found that

other evidence, identified by Fossil, dispels any such notion.

3. All but one of the Asserted Claims requires the data capture device to "signal[]" data for transfer while the mobile device "listen[s]." The remaining Asserted Claim requires "polling the Bluetooth enabled data capture device using the software module on the Bluetooth enabled mobile device" while the data capture device "listens for the polling request sent from the Bluetooth enabled mobile device." Cellspin presents no argument related to "signal new data for transfer" and has therefore waived this issue. Further, the district court correctly found that Cellspin improperly tried to re-interpret the district court's construction of "polling" and that Cellspin presented no evidence showing either the "signaling new data for transfer" or "polling" limitation were met, while Fossil presented unchallenged evidence, conceded by Cellspin in its Blue Brief, showing that the Fossil App pulls data from the Fossil HR Hybrids **based on user request**, not signaling or polling.

## VI. ARGUMENT

The district court's grant of summary judgment should be affirmed on each of its four independent grounds. Cellspin begins its appeal brief by attacking the district court's summary judgment order globally, arguing that "[t]hroughout its Order," the district court failed to properly credit Cellspin's

cited evidence. Blue Br. at 17, 20, 37. Cellspin then proceeds to substantively challenge two grounds (instead of four) on which the district court granted summary judgment in favor of Fossil. But Cellspin cannot prevail on **any** of the issues, let alone a sufficient number to warrant vacatur of any judgment with respect to any asserted claim.

### A. Standard of Review

Pursuant to Rule 28(i), Fossil incorporates by reference §VI.A of Fitbit's brief in Lead Appeal No. 22-2025.

### B. Cellspin's Global Attacks Against The District Court's Summary Judgment Order Are Meritless.

Pursuant to Rule 28(i), Fossil incorporates by reference §VI.B of Fitbit's brief in Lead Appeal No. 22-2025.

### C. Cellspin Lacks Evidence That The Accused Products Meet The "User Identifier" And "User Information" Limitations.

Fossil moved for summary judgment for all its accused products on the basis that Cellspin lacked evidence that the accused Fossil devices meet the *user identifier* and *user information* claim limitations. Appx11307. In response, Cellspin relied exclusively on an "OAuth token" infringement theory that Cellspin never disclosed in its infringement contentions. Appx4676-4678. The district court exercised its discretion to exclude this untimely theory for violation of the lower court's Patent Local Rules, and the

court then found that Cellspin lacked any evidence that those limitations are met by the accused devices. Appx0087-89. On appeal, Cellspin does not contest this decision with respect to the Fossil Wear OS products, but only as to the Fossil HR Hybrids. Blue Br. at 70.

Cellspin does not directly address the district court's summary judgment order in favor of Fossil on this ground. Rather, Cellspin "adopts and incorporates by reference all arguments made *supra* concerning Fitbit." Blue Br. at 73. This is improper because it assumes that the district court did not take into account all relevant facts regarding Fossil when it found that Cellspin had not properly disclosed its OAuth token infringement theory against Fossil. *Cf. FMC Corp. v. Hennessy Industries, Inc.*, 836 F.2d 521, 524 (Fed. Cir. 1987) (holding that "failure to mention does not mean failure to consider when the evidence supplies support for the district court's determination"). Here, the lack of testimony from Mr. Vijh regarding OAuth tokens as to Fossil (improper as it was against Fitbit) further supports the district court's ruling. Appx0087-89. Cellspin does not address this flaw or explain how it provided notice to Fossil in any way of the OAuth token theory. *See* Blue Br. at 73. Cellspin has thus waived this issue as to Fossil. *Cardsoft, LLC v. Verifone, Inc.*, 769 F.3d 1114, 1119 (Fed. Cir. 2014) ("Arguments that are not appropriately developed in a party's briefing may be deemed

waived.") (citing *SmithKline Beecham Corp.*, 439 F.3d at 1320; *Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n. 1 (5th Cir. 2004)).

To the extent that Cellspin's OAuth token theory arguments as to Fitbit are viable as to Fossil, pursuant to Rule 28(i), Fossil incorporates by reference Section VI.C, C(1)-C(2) of Fitbit's response brief in Lead Appeal No. 22-2025.

Additionally, as an alternative ground for affirmance, Fossil's testimony offered through Mr. Inamdar, which is the entire basis for Cellspin's (through Mr. Vijh) OAuth token theory for Fossil, does not provide any evidence for any reasonable jury to find infringement. Mr. Inamdar unequivocally stated, "[T]he Fossil smartphone app gives the option to the user to create an account with the Fossil server. Those users do not use OAUTH." Appx4937; Appx13939. Cellspin never addresses this clear refutation of its OAuth token theory as it relates to the Fossil HR Hybrids, and this is the only reference in the record to OAuth tokens with respect to the Fossil HR Hybrids. Thus, there is no evidence to support Cellspin's OAuth token theory for the Fossil HR Hybrids.

The district court correctly granted summary judgment because Cellspin lacks evidence sufficient to raise a genuine dispute of material fact regarding the "user identifier" and "user information" claim limitations.

Because those limitations are in all Asserted Claims, affirmance of summary judgment of non-infringement is proper for this reason alone.

### D. Fossil HR Hybrids Do Not "Cryptographically Authenticate" a Mobile Device.

The district court correctly found that the Fossil HR Hybrids do not "cryptographically authenticate" a mobile device, as the term was agreed upon below and construed by the district court. Appx0085-86. On appeal, Cellspin resorts to the same conclusory and unsubstantiated allegations that the district court rejected. Fossil, as the district court noted, presented "evidence that neither Bluetooth LE Legacy nor LE Secure performs the **claimed** 'cryptographical[] authenticat[ion].'" Appx0086 (emphasis added). Cellspin offered no evidence to contradict the evidence presented by Fossil, and even its conclusory allegations did not address the actual claim term as it was construed by the district court. Accordingly, the district court's grant of summary judgment based on this issue should be affirmed.

Cellspin contends the district court "repeatedly rejects the evidence cited by Cellspin and resorts to its own technical assessment which contradicts the testimony of Cellspin's technical expert." Blue Br. at 71. This assertion is divorced from the facts—the district court did no such thing. As

Cellspin and Mr. Vijh ultimately acknowledged,[7] the only relevant pairing mechanisms are LE Legacy Pairing and LE Secure Connections. Appx4672; Appx8054–8055 (Vijh Depo Transcript at 173–175). The district court did not "resort to its own technical assessment" but rather found that the only evidence identified by Cellspin related to these pairing mechanisms were conclusory and unsupported statements from Mr. Vijh. Appx0084. "Conclusory expert assertions," such as those made by Mr. Vijh here, "cannot raise triable issues of material fact on summary judgment." *Sitrick v. Dreamworks*, 516 F.3d 993, 1001 (Fed. Cir. 2008). Thus, the district court properly granted summary judgment. In addition, and as explained below, Fossil showed that these conclusory statements were contradicted by the evidence of record.

Cellspin goes on to allege that the "the District Court credited Fossil's argument that the 'Just Works' Bluetooth pairing method does not perform authentication" and that the "Fossil HR Hybrid Devices nevertheless perform authentication." Blue Br. at 71. This misstates the district court's ruling, Fossil's argument, and the relevant facts. The district court correctly found that "Just Works"[8] cannot meet the **claimed** "cryptographically

[7] Cellspin's infringement contentions do not identify which pairing mechanism is used. Neither did Mr. Vijh until his deposition.

[8] Cellspin does not dispute that Mr. Vijh never identified which "Just Works"

authenticate" limitation, as Fossil had shown and Mr. Vijh admitted via the annotated exhibits to his report. Appx0084–86; Appx5316; Appx6398; Appx7468; Appx5928; Appx7145; Appx7981 (Annotated Inf. Cont. Charts,'752, Ex. 2, at 15, '794, Ex. 2, at 25, '847, Ex. 2, at 20,'752, Ex. 5, at 11,'794, Ex. 5, at 16, '847, Ex. 5, at 14). Nowhere did Fossil state that "Just Works" does not perform authentication, and regardless, this allegation is irrelevant. As the district court noted, the evidence shows the "Just Works" pairing method does not offer the capability for the Fossil HR Hybrids to verify the mobile phone as authentic during the pairing process (regardless as to whether link keys[9] are exchanged). Appx0084-85. Accordingly, the district court correctly found that the evidence refutes Cellspin's conclusory claims.

Contrary to Cellspin's assertions, the district court did analyze Cellspin's source code related evidence but found it meaningless. The district court agreed with Fossil that Mr. Vijh never explains how the cited source code verifies a mobile device as legitimate. Appx0085; Appx0838 (Vijh Rpt. at ¶ 87). Because Mr. Vijh did not explain his theory regarding the source

---

method is used.

[9] The link keys are not used to pair the devices; they are used to exchange data after the devices are paired. *See* Appx5316; Appx6398; Appx7468; Appx5928; Appx7145; Appx7981.

code he cited, the district court correctly found Mr. Vijh's opinions to be conclusory. Appx0085. On appeal, Cellspin does not explain how district court was incorrect nor can it. Instead, Cellspin cites to the same documents and portions in Mr. Vijh's report and alleges that "the cited Fossil Source Code . . . describe both pairing and authentication during pairing, including use of encryption keys for authentication." Blue Br. at 72. But once again, Cellspin does not state what is being authenticated or how the authentication occurs, let alone identify any evidence to support such statements. This conclusory attorney argument, unsupported by the facts, cannot create a genuine issue of material fact. *Ferring B.V. v. Barr Labs., Inc.*, 437 F.3d 1181, 1193 (Fed. Cir. 2006) ("[A]ttorney arguments are insufficient to overcome a motion for summary judgment.") Just as the district court did, this Court will recognize that Cellspin presents no evidence as to how the purported evidence shows that the Fossil HR Hybrids meet the **claimed** "cryptographically authenticate" limitation. Nor does Cellspin explain how it overcomes the admissions (described above) that "Just Works" does not meet the claimed "cryptographically authenticate" limitation. Mr. Vijh's, and thus Cellspin's, opinions remain unsupported and conclusory.

For the foregoing reasons, the district court correctly granted summary judgment. Cellspin lacks evidence sufficient to raise a genuine dispute of

material fact regarding the "cryptographically authenticate" claim limitation. Accordingly, this Court should affirm summary judgment of non-infringement for the Asserted Claims of the '847 Patent.

### E. Fossil HR Hybrids do not "Signal new data for transfer," nor does the Fossil App "Poll[]"[24]

Confirming the district court's analysis, Cellspin concedes that the Fossil HR Hybrids "manually sync" with a mobile device, but somehow alleges that the device still meets the "polling" limitation. Blue Br. At 73 ("while the option of "manually syncing . . . may exist, the fact remains that the Accused Instrumentalities nevertheless satisfy the '**polling'** limitations" (emphasis added)). The district court correctly found that Cellspin's arguments contradict its claim construction and have no evidentiary support. Cellspin does not address the "signaling new data for transfer" limitation in its Blue Brief.

Cellspin waives the "signaling new data for transfer" issue by not arguing it. This limitation requires the Fossil Hybrid App to receive notifications from the Fossil HR Hybrid when "new data" is ready for transfer. Cellspin does not mention or address the district court's decision and reasoning related to this limitation:

> [T]he Fossil Hybrid App . . . "does not detect and receive notifications" . . . . Instead, the Fossil Hybrid Smartwatches App 'pulls' data . . . Fossil argues that

> Cellspin admits to this functionality in its '794 Patent infringement contentions. Dkt. No. 265-12 ('794 patent infringement contentions) at 189. The Court agrees.

Appx0088; Appx6270 ('794 patent infringement contentions). Cellspin does not refute this proper analysis. An issue not discussed in a brief is waived. *Smithkline Beecham Corp.*, 439 F.3d at 1319 ("Our law is well established that arguments not raised in the opening brief are waived."); *Miller*, 797 F.2d at 738 ("The Court of Appeals will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief."). Accordingly, judgment as to the asserted claims that include the "signaling new data for transfer" limitation should be final.[10]

For polling, Cellspin's argument hinges on this Court finding that that the district court misinterpreted its own construction. The Fossil Hybrid App does not request data from the Fossil HR Hybrids on the basis of any frequency set in programming. Knowing this, Cellspin and Mr. Vijh resorted to re-interpreting the district courts construction of "polling" to include "user request." Blue Br. at 74; Appx0906. But the district court found this argument to be contrary to the court's construction. Appx0089. On appeal, instead of challenging the district court's construction, Cellspin takes the

[10] Fossil addresses every issue raised by Cellspin and does not wish to rely solely on waiver as to any issue. But for the "signal new data for transfer" limitation, there is no argument for Fossil to refute.

extraordinary position that the district court "failed to appreciate the entirety of its own construction" and claims that "a user performing a manual sync satisfies the construction." Blue Br. at 74. Nonsense. Fossil agrees with the district court:

> Under the Court's construction, "polling" does not occur, as Vijh opines, upon "user request." To the contrary, a user's act of requesting a signal on the capture device does not meet the Court's construction of "polling."

Appx0089. Re-interpreting "polling" to include a "user request" would make the limitation meaningless. And basing infringement on this re-interpretation, as Cellspin did, rather than challenging the original construction, is improper. *See Phonometrics, Inc. v. Northern Telecom Inc.*, 133 F.3d 1459, 1464 (Fed. Cir. 1998). Judgment in favor of Fossil is therefore appropriate.

Additionally, the district court did not "weigh[] evidence against Cellspin at summary judgment" or weigh the "expert testimony and credibility as between Cellspin's expert (Vijh) and Fossil's expert (Rysavy)," as Cellspin alleges. Blue Br. at 74. Rather, the district court correctly determined that Mr. Vijh's conclusions "**contradict[] the language and reasoning behind a court's claim construction order**" and further found that Mr. Vijh cited to "two documents with **no explanation** how

they indicate infringement." Appx0089 (emphasis added). Accordingly, the court correctly determined Cellspin had not raised a genuine issue of material fact. Mr. Rysavy provided the explanations that Mr. Vijh failed to. Appx0090 ("Cellspin's expert says nothing to contradict [Mr. Rysavy's] explanation."). Thus, this was not a case of dueling opinions, but one where one party provided evidence while the other failed to.

The district court also did not "fail[] to properly credit the infringing functionality evidenced by the Fossil Source Code as cited and explained by Vijh." Blue Br. at 74. Cellspin alleges that the cited source code "**collectively** illustrate the fact that the Accused Instrumentalities comprise programming which sets the frequency of status checks at a period of 60 seconds, with a **corresponding programming** setting a sync data read." Blue Br. at 74-75 (emphasis added). This alleged "fact" is false. As the district court correctly observed, Mr. Vijh could not even explain the relevancy of the cited source code to "polling," let alone relate them. Appx0089-90 ("Vijh could not answer or explain how the [LAST_SYNC_UPDATE_INTERVAL] document—evidence he based his own opinion on—constituted evidence of "polling;" "neither Cellspin nor Vijh explain how the "BleCommunicator class for 'onSyncDataRead'" indicates that the Fossil HR Hybrids perform "polling."). Accordingly, the district court properly found Mr. Vijh's source

code opinions deficient.

Cellspin concludes its argument by quoting Mr. Vijh, and in the process, proving Fossil's point: "[I]t would be incorrect for me and imprudent for me to say that the device *always* syncs at 60 seconds. What I'm saying here is there are parameters in the source code that put a particular regular time interval." Blue Br. at 75. Fossil does not disagree there are parameters in the source code that have a regular time interval. But Mr. Vijh did not identify a parameter related to polling or explain how any document relates to polling. Appx0089-90. Even in its brief, Cellspin admits this, confirming that Mr. Vijh could not explain the cited source code, nor could he find any relevant analysis in his expert report. Cellspin claims Mr. Vijh would have been able to, had he been "permitted to review the Source Code in question" at his deposition. Blue Br. at 75. But Mr. Vijh's requests to cure his deficient expert report at deposition were improper; to the extent Mr. Vijh's expert report lacked the relevant analysis, summary judgement was appropriate. *Cedillo v. Secretary of Health Human Serv*, 617 F.3d 1328, 1341 (Fed. Cir. 2010) ("an expert report must contain 'a complete statement of all opinions the witness will express and the basis and reasons for them'") (internal citations omitted); *see also O2 Micro Intern. v. Monolithic Power Sys*, 467 F.3d 1355, 1369 (Fed. Cir. 2006).

Accordingly, Cellspin has presented no evidence that satisfies the "polling" limitation as construed, and the district court's grant of summary judgement should be affirmed.

## CONCLUSION

The district court correctly granted summary judgment of non-infringement to Fossil on multiple independent grounds for each asserted claim of each asserted patent. The final judgment therefore should be affirmed in its entirety.

Dated: March 27, 2023

/s/*Ricardo J. Bonilla*
NEIL J. MCNABNAY
RICARDO J. BONILLA
NOEL F. CHAKKALAKAL
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 95201
214.747.5070

*Counsel for Appellees Fossil Group, Inc. and Misfit, Inc.*

## **CERTIFICATE OF COMPLIANCE**

This Brief complies with the type-volume limitation of Federal Circuit Rule 32(b) as modified by Order of the Court at Docket No. 37. This Brief contains 4505 words. This brief incorporates by reference 5284 words from the Fitbit brief, making the total for the Fossil brief 9,789 words excluding those portions of the brief exempted by Federal Circuit Rule 32(b)(2). This Brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 14-point Times New Roman font.

/s/ *Ricardo J. Bonilla*
Ricardo J. Bonilla

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on March 27, 2023 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system. To the extent confidential information is contained herein, the above and foregoing document will be served to all counsel of record via electronic mail.

/s/ Ricardo J. Bonilla
Ricardo J. Bonilla