Nos. 2022-2025, -2028, -2029, -2030, -2032, -2037

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

CELLSPIN SOFT, INC.,

Plaintiff - Appellant

v.

FITBIT LLC, NIKE, INC., UNDER ARMOUR, INC., FOSSIL GROUP, INC., MISFIT, INC., NIKON AMERICAS, INC., NIKON INC., GARMIN INTERNATIONAL, INC., GARMIN USA, INC.,

Defendants - Appellees

Appeals from the United States District Court for the
Northern District of California,
Case Nos. 4:17-cv-05928-YGR, 4:17-cv-05931-YGR, 4:17-cv-05932-YGR
4:17-cv-05933-YGR, 4:17-cv-05934-YGR, 4:17-cv-05936-YGR
The Honorable Yvonne Gonzalez Rogers

# RESPONSE BRIEF OF APPELLEE NIKE, INC.

Stanley J. Panikowski
Richard T. Mulloy
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, CA 92121
Tel: 858.677.1400
stanley.panikowski@us.dlapiper.com
richard.mulloy@us.dlapiper.com

*Attorneys for Appellee*
*NIKE, Inc.*

**Claim 1 of U.S. Patent No. 8,738,794 (per Fed. Cir. R. 32(a)(3))**

1. A method for acquiring and transferring data from a Bluetooth enabled data capture device to one or more web services via a Bluetooth enabled mobile device, the method comprising:

> providing a software module on the Bluetooth enabled data capture device;
>
> providing a software module on the Bluetooth enabled mobile device;
>
> establishing a paired connection between the Bluetooth enabled data capture device and the Bluetooth enabled mobile device;
>
> acquiring new data in the Bluetooth enabled data capture device, wherein new data is data acquired after the paired connection is established;
>
> detecting and signaling the new data for transfer to the Bluetooth enabled mobile device, wherein detecting and signaling the new data for transfer comprises:
>
>> determining the existence of new data for transfer, by the software module on the Bluetooth enabled data capture device; and
>>
>> sending a data signal to the Bluetooth enabled mobile device, corresponding to existence of new data, by the software module on the Bluetooth enabled data capture device automatically, over the established paired Bluetooth connection, wherein the software module on the Bluetooth enabled mobile device listens for the data signal sent from the Bluetooth enabled data capture device, wherein if permitted by the software module on the Bluetooth enabled data capture device, the data signal sent to the Bluetooth enabled mobile device comprises a data signal and one or more portions of the new data;
>
> transferring the new data from the Bluetooth enabled data capture device to the Bluetooth enabled mobile device automatically over the paired Bluetooth connection by the software module on the Bluetooth enabled data capture device;
>
> receiving, at the Bluetooth enabled mobile device, the new data from the Bluetooth enabled data capture device;

> applying, using the software module on the Bluetooth enabled mobile device, a user identifier to the new data for each destination web service, wherein each user identifier uniquely identifies a particular user of the web service;
>
> transferring the new data received by the Bluetooth enabled mobile device along with a user identifier to the one or more web services, using the software module on the Bluetooth enabled mobile device;
>
> receiving, at the one or more web services, the new data and user identifier from the Bluetooth enabled mobile device, wherein the one or more web services receive the transferred new data corresponding to a user identifier; and
>
> making available, at the one or more web services, the new data received from the Bluetooth enabled mobile device for public or private consumption over the internet, wherein one or more portions of the new data correspond to a particular user identifier.

Appx396 at 11:48 to 12:38.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 22-2025, -2028, -2029, -2030, -2032, -2037

**Short Case Caption** Cellspin Soft, Inc. v. Fitbit LLC

**Filing Party/Entity** Nike, Inc.

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 03/27/2023

Signature: /s/ Stanley J. Panikowski

Name: Stanley J. Panikowski

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Nike, Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Edward H. Sikorski | | |
| Amy H. Walters | | |
| Peter P. Maggiore | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## TABLE OF CONTENTS

I. STATEMENT OF RELATED CASES........................................................1

II. STATEMENT OF THE ISSUE ..................................................................1

III. INTRODUCTION ......................................................................................2

IV. STATEMENT OF THE CASE ..................................................................4

A. The Asserted Claims Are Directed To A Particular Way To Use Bluetooth To Transmit Data..............................................................4

B. After Over Five Years Of Litigation, Cellspin Has Failed To Marshal Evidence To Prove Infringement Of Any Asserted Claim. ..........................................................................................4

1. The District Court's Claim Construction Order Made Clear That The Asserted Claims Are Limited To A Specific Way Of Using Bluetooth To Transmit Data................4

2. Cellspin's Infringement Expert Produced Largely Identical Reports In Each Case And Relied On Cellspin's Infringement Contentions Appended With Unexplained String Citations. .....................................................................5

3. The District Court Granted Summary Judgment Of Noninfringement In Favor Of All Defendants..........................5

C. The District Court Granted Summary Judgment of Noninfringement to Nike on Multiple Independent Grounds.............5

V. SUMMARY OF ARGUMENT..................................................................9

VI. ARGUMENT............................................................................................11

A. Standard of Review ........................................................................11

B. Cellspin's Global Attacks Against The District Court's Summary Judgment Order Are Meritless. .......................................11

1. The District Court's Summary Judgment Order Reflects Its Careful Consideration Of The Evidentiary Record. ...........11

2. The District Court Correctly Characterized Cellspin's Expert's Opinions As Conclusory. ....11

C. The District Court Correctly Granted Summary Judgment Of Noninfringement To Nike. ....12

1. Cellspin Lacks Evidence That The Mobile Device Attaches Or Applies A "User Identifier" To New Data ('794 And '752 Patents). ....12

2. Cellspin Lacks Evidence That The Apple Watch Nike Contains a "First Processor" That Performs All Three Required Functions ('847 Patent). ....20

3. Cellspin Lacks Evidence That The iPhone Contains a "Second Processor" That Performs All Five Required Functions ('847 Patent). ....25

4. Cellspin Lacks Evidence To Support Its Internal Testing Theory (All Three Patents). ....28

5. Cellspin Lacks Evidence To Support Its Assembly Theory ('847 Patent). ....29

6. Cellspin Lacks Evidence To Show Divided Infringement ('794 And '752 Patents). ....29

7. Additional Grounds Support Summary Judgment of Noninfringement on All Three Patents. ....32

VII. CONCLUSION ....38

# TABLE OF AUTHORITIES

## Cases

*Akamai Techs. Inc. v. Limelight Networks Inc.*,
797 F.3d 1020 (Fed. Cir. 2015) ....................30, 31

*Alloc, Inc. v. Int'l Trade Comm'n*,
342 F.3d 1361 (Fed. Cir. 2003) ....................37

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................21, 24, 27

*Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*,
249 F.3d 1341 (Fed. Cir. 2001) ....................26

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....................12

*Commil USA, LLC v. Cisco Systems, Inc.*,
575 U.S. 632 (2015)....................38

*DSU Med. Corp. v. JMS Co., Ltd.*,
471 F.3d 1293 (Fed. Cir. 2006) ....................38

*Duncan Parking Techs., Inc. v. IPS Grp., Inc.*,
914 F.3d 1347 (Fed. Cir. 2019) ....................36

*E-Pass Techs., Inc. v. 3Com Corp.*,
473 F.3d 1213 (Fed. Cir. 2007) ....................28

*Invitrogen Corp. v. Clontech Labs., Inc.*,
429 F.3d 1052 (Fed. Cir. 2005) ....................22, 24, 27

*L & W, Inc. v. Shertech, Inc.*,
471 F.3d 1311 (Fed. Cir. 2006) ....................36

*Nazomi Commc'ns, Inc. v. Nokia Corp.*,
10-CV-04686-RMW, 2012 WL 3536768 (N.D. Cal. Aug. 14, 2012), *aff'd*, 739 F.3d 1339, 1345-1346 (Fed. Cir. 2014)....................34

*Novartis Corp. v. Ben Venue Labs., Inc.*,
271 F.3d 1043 (Fed. Cir. 2001) ....................21, 27

*Pulse Elecs., Inc. v. U.D. Elec. Corp.*,
3:18-cv-00373-BEN, 2021 WL 981123 (S.D. Cal. Mar. 16, 2021) .................. 36

*Ricoh Co. v. Quanta Computer Inc.*,
550 F.3d 1325 (Fed. Cir. 2008) .................. 28

*Sitrick v. Dreamworks, LLC*,
516 F.3d 993 (Fed. Cir. 2008) .................. 21, 29, 32

*Synchronoss Techs., Inc. v. Dropbox Inc.*,
389 F. Supp. 3d 703 (N.D. Cal. 2019), *aff'd*, 987 F.3d 1358 (Fed. Cir. 2021) .................. 30

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
247 F.3d 1316 (Fed. Cir. 2001) .................. 33, 34

*Travel Sentry Inc. v. Tropp*,
877 F.3d 1370 (Fed. Cir. 2017) .................. 31

*Traxcell Techs., LLC v. Sprint Commc'ns Co.*,
15 F.4th 1121 (Fed. Cir. 2021) .................. 23, 26, 29, 32

**Other Authorities**

Fed. R. Civ. P. 56(e) .................. 22

## I. STATEMENT OF RELATED CASES

Appeals in some of the same civil actions were previously before this Court: *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306 (Fed. Cir. June 25, 2019) (Judges O'Malley (author), Lourie, and Taranto) (Lead Case Nos. 2018-1817 and 2018-2178).

The following appeal in some of the same civil actions is currently pending before this Court: *Cellspin Soft, Inc. v. Fitbit LLC*, No. 2023-1526 (Fed. Cir.).

The following district court cases (other than those involved in the current consolidated appeals) may be directly affected by the outcome of this appeal: *Cellspin Soft, Inc. v. Moov Inc.*, 4:17-cv-05929 (N.D. Cal.), and *Cellspin Soft, Inc. v. Nike, Inc.*, 2:22-cv-455 (E.D. Tex.).

Counsel is aware of no other case that may directly affect or be directly affected by the outcome of this appeal.

## II. STATEMENT OF THE ISSUE

Did the district court correctly grant summary judgment of noninfringement to Nike on all three asserted patents with respect to the accused Apple Watch Nike products?

## III. INTRODUCTION

The district court correctly granted summary judgment of noninfringement to Nike on multiple independent grounds. The summary judgment order encompassed all the products that Cellspin had accused of infringement: the accused Apple Watch Nike products and the accused Nike FuelBand products. Cellspin "does not appeal those portions of the [summary judgment] Order concerning the Accused Nike FuelBand Products." Cellspin Opening Brief ("OB") at 92. Accordingly, this appeal concerns only the Apple Watch Nike products.

Cellspin failed to meet its burden of offering legally sufficient evidence of infringement on multiple levels. For example, Cellspin's expert testimony was conclusory across the board. He cited large swaths of documents without any meaningful explanation of how they might support an infringement finding. He also speculated about the possible presence of multiple claim limitations without any actual supporting evidence. Cellspin also attempted to prove infringement for all Apple Watch Nike products without an adequate basis to treat the sole product it tested as representative of all versions. Compounding this error, Cellspin improperly tried to mix and match documents relating to different Nike products to stitch together its case. Cellspin even tried to use unrelated documents from the *Garmin* case to argue the accused Nike products infringed.

Moreover, even aside from these universal deficiencies in Cellspin's case, Cellspin could not raise a triable issue of fact on multiple claim limitations. Cellspin simply lacked supporting evidence for multiple elements of its infringement theories. As a result, this was a classic case for summary judgment of noninfringement on multiple independent grounds.

As shown in the chart below, Cellspin raises six issues in its appeal as to Nike. *See* OB at 92-95. Three issues pertain to only the '847 patent, two pertain to only the '794 and '752 patents, and one pertains to all three patents.

| **Noninfringement Issue** | **Asserted Method Claims** | | **Asserted System Claims** |
|---|---|---|---|
| | **'794 Patent** | **'752 Patent** | **'847 Patent** |
| Mobile Phone Does Not Attach or Apply "User Identifier" | ✓ | ✓ | |
| No "First Processor" that Performs All Three Recited Functions | | | ✓ |
| No "Second Processor" that Performs All Five Recited Functions | | | ✓ |
| Internal Testing Theory | ✓ | ✓ | ✓ |
| Assembly Theory | | | ✓ |
| Divided Infringement | ✓ | ✓ | |

The district court ruled against Cellspin on each of these issues. Each of those rulings is correct, and Cellspin fails to overcome them on appeal. Rather, Cellspin's arguments on appeal reflect the same fundamental legal deficiencies that led to the entry of summary judgment below.

The district court correctly granted summary judgment of noninfringement to Nike on multiple independent grounds for each asserted claim. The final judgment therefore should be affirmed.

## IV. STATEMENT OF THE CASE

### A. The Asserted Claims Are Directed To A Particular Way To Use Bluetooth To Transmit Data.

Nike incorporates by reference Section IV.A of the response brief filed by Appellee Fitbit LLC ("Fitbit") in Lead Appeal No. 22-2025.

### B. After Over Five Years Of Litigation, Cellspin Has Failed To Marshal Evidence To Prove Infringement Of Any Asserted Claim.

Nike incorporates by reference Section IV.B of Fitbit's response brief in Lead Appeal No. 22-2025.

#### 1. The District Court's Claim Construction Order Made Clear That The Asserted Claims Are Limited To A Specific Way Of Using Bluetooth To Transmit Data.

Nike incorporates by reference Section IV.B.1 of Fitbit's response brief in Lead Appeal No. 22-2025.

#### 2. Cellspin's Infringement Expert Produced Largely Identical Reports In Each Case And Relied On Cellspin's Infringement Contentions Appended With Unexplained String Citations.

Nike incorporates by reference Section IV.B.2 of Fitbit's response brief in Lead Appeal No. 22-2025.

#### 3. The District Court Granted Summary Judgment Of Noninfringement In Favor Of All Defendants.

Nike incorporates by reference Section IV.B.3 of Fitbit's response brief in Lead Appeal No. 22-2025.

### C. The District Court Granted Summary Judgment of Noninfringement to Nike on Multiple Independent Grounds.

Nike filed both (1) a motion for a complete summary judgment of noninfringement and (2) a *Daubert* motion challenging the reliability of the opinions of Cellspin's technical expert, Mr. Vijh. Appx208. The district court granted Nike's summary judgment motion and did not expressly rule on the *Daubert* motion. Appx55-67.

The district court first granted summary judgment on the Nike FuelBand products, which Cellspin did not appeal. Appx55-60. The court ruled that Cellspin failed to meet its burden of showing that the sole product it analyzed—the Apple Watch Nike Series 5—was actually representative of the Nike FuelBand products. Appx55-60. In doing so, the court noted that Mr. Vijh also "testified

that he never obtained, analyzed, or tested the other accused versions and series of the Apple Watch products in this case – Series 3 and 4." Appx56 at n.18.

The district court also observed that "Vijh testifies that, in his analysis, he never obtained or reviewed any source code for the Apple Watch 5 or for any Apple Watch Nike product." Appx57 at n.19. The court explained that "[t]his underscores reliability concerns with how Cellspin's expert was able to conclude that the Apple Watch 5 infringed." Appx57 at n.19.

The district court then granted summary judgment of noninfringement on the Apple Watch Nike products. Appx60-67. The court first addressed the "'attaching' or 'applying' user identification to 'new data'" limitation found in all asserted claims of the '794 and '752 patents. Appx60-62. The court summarized Nike's evidence demonstrating that "the Apple Watch Nike – not a claimed mobile device – applies or attaches user identification information to the new data." Appx60-61. The court then analyzed Cellspin's arguments. Appx61-62. The court concluded that Cellspin's arguments lacked merit because they were based on: (1) Cellspin's mischaracterizations of Nike's witnesses' testimony; and (2) Cellspin's expert's mere "conclusory assertions that the patent limitations are met." Appx61-62.

The district court next addressed the "first processor" limitation found in all asserted claims of the '847 patent. Appx62-64. The court noted that this limitation

requires that a first processor in the data capture device (the Apple Watch Nike product) be configured to perform three steps. Appx62-63. The court ruled that "Cellspin's evidence does not create a triable dispute of material fact that a single 'first processor' performs the functions recited by the '847 patent." Appx64. The court explained that: (1) "because Cellspin never took discovery from Apple, there is no evidence as to the source code or operation of the accused Apple Watch Series 5"; (2) Mr. Vijh offered only "unsupported conclusory opinion[s]" on this limitation; and (3) the remainder of Cellspin's argument consisted of "generalized" and "unsupported attorney argument." Appx63-64.

The district court then addressed the "second processor" limitation that is also found in all asserted claims of the '847 patent. Appx64-65. The court identified the five claimed functions that the "second processor" in the mobile device (the iPhone) must be configured to perform. Appx64. Similar to its ruling on "first processor," the court concluded that "Cellspin does not show that there is a triable dispute of material fact that a single 'second processor' performs the recited claims." Appx65. The court noted that Cellspin's "conclusory assertion" that the claim limitation is met "is again offered with lengthy string cites and no explanation." Appx64. The court explained that "Cellspin cannot simply cite to swaths of documents without explanation in expectation that the Court will analyze them to identify a triable issue of material fact." Appx65 (citing cases from this

Court and Ninth Circuit). The district court also observed that Cellspin's attempt to support its argument with two documents from its suit against Garmin was "flatly improper because neither of these documents were ever produced to Nike" and that those documents do not support Cellspin's position anyway. Appx65.

Next, the district court granted summary judgment on Cellspin's internal testing theory for all asserted patents. Appx65-66. The court concluded that "[t]here is no explanation how Cellspin's evidence indicates performance of the claims, much less in the order required by the Court's construction." Appx66.

The district court then granted summary judgment on Cellspin's assembly theory for the '847 patent. Appx66. The court pointed out that none of Cellspin's cited materials even mentioned this theory and, in any event, Cellspin "offers evidence without any explanation how any element of the asserted claims is met." Appx66.

Finally, the district court granted summary judgment on divided infringement for the '794 and '752 patents. Appx66-67. The court observed that Cellspin's evidence "is not offered with any explanation how it raises a genuine dispute of material fact that Nike conditions a benefit upon performance of claimed method steps." Appx67. The court further noted: "Indeed, Vijh never provides an opinion on Nike's facts, only an opinion defining one of 'the benefits of the claimed *inventions* [a]s the ease of use and the ability to seamlessly and effortlessly

transfer data.'" Appx67 (emphasis and alteration in original). The district court therefore ruled that "reasonable jurors could not conclude that Nike 'conditions' its end users' 'effortless[] transfer [of] personal fitness data' on its end users' performance of the claimed method steps." Appx67 (alterations in original).

Cellspin appealed only as to the Apple Watch Nike products and expressly waived any appeal as to the Nike FuelBand products. Appx464-465; OB at 92.

## V. SUMMARY OF ARGUMENT

The district court correctly granted summary judgment of noninfringement to Nike on multiple independent grounds. For example, the first issue pertains to all asserted claims of the '794 and '752 patents, and the second issue pertains to all asserted claims of the '847 patent. Accordingly, if this Court affirms on those two grounds alone, those rulings would dispose of Cellspin's entire appeal as to Nike.

**"User Identifier":** Cellspin had no evidence that *the mobile device* applies or attaches user identification information to the new data. Rather, the unrebutted evidence established that the Apple Watch Nike performs this task itself. But the claims require that a mobile device—not the data capture device—performs this function. Indeed, that is the whole point of Cellspin's purported invention. This is an independent ground for summary judgment on the '794 and '752 patents.

**"First Processor":** Cellspin had no evidence that a single processor in the Apple Watch Nike performs all three functions that a "first processor" in the data

capture device must be configured to perform to satisfy the claims of the ’847 patent. The district court correctly rejected Cellspin’s conclusory and speculative assertions as insufficient.

**<u>“Second Processor”</u>:** Cellspin likewise had no evidence that a single processor in the Apple iPhone can perform all five functions that a “second processor” in the mobile device must be configured to perform to satisfy the claims of the ’847 patent. The district court again correctly rejected Cellspin’s conclusory and speculative assertions as insufficient.

**<u>Internal Testing</u>:** Cellspin offered no explanation for how the evidence could support a finding that Nike infringed any asserted patent by conducting internal testing. The district court correctly rejected this theory as unexplained and unfounded.

**<u>Assembly</u>:** Cellspin also offered no explanation for how the evidence could support a finding that Nike infringed the ’847 patent by assembling any accused product. The district court likewise correctly rejected this theory as unexplained and unfounded.

**<u>Divided Infringement</u>:** Cellspin failed to offer legally sufficient evidence to satisfy any of this Court’s tests for divided infringement of the two asserted method patents. The district court correctly rejected Cellspin’s argument as conclusory and not even tethered to Nike-specific evidence.

Finally, as explained in section VI.C.7 below, additional grounds support the summary judgment ruling, if this Court even needs to reach them.

The final judgment therefore should be affirmed.

# VI. ARGUMENT

## A. Standard of Review

Nike incorporates by reference Section VI.A of Fitbit's response brief in Lead Appeal No. 22-2025.

## B. Cellspin's Global Attacks Against The District Court's Summary Judgment Order Are Meritless.

Nike incorporates by reference Section VI.B of Fitbit's response brief in Lead Appeal No. 22-2025.

### 1. The District Court's Summary Judgment Order Reflects Its Careful Consideration Of The Evidentiary Record.

Nike incorporates by reference Section VI.B.1 of Fitbit's response brief in Lead Appeal No. 22-2025.

### 2. The District Court Correctly Characterized Cellspin's Expert's Opinions As Conclusory.

Nike incorporates by reference Section VI.B.2 of Fitbit's response brief in Lead Appeal No. 22-2025.

### C. The District Court Correctly Granted Summary Judgment Of Noninfringement To Nike.

Cellspin bore the burden of proof on infringement. Cellspin thus had the burden of adducing evidence to show a genuine issue of material fact after Nike had pointed out the absence of legally sufficient evidence to support its claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986). As the district court correctly ruled, Cellspin failed to carry this burden for multiple independent reasons on each asserted patent claim.

#### 1. Cellspin Lacks Evidence That The Mobile Device Attaches Or Applies A "User Identifier" To New Data ('794 And '752 Patents).

All claims of the '794 and '752 patents require the "Bluetooth enabled mobile device" to "apply[]" or "attach[]" a "user identifier" to the data collected by the data capture device. *E.g.*, Appx396 at 12:20-24 ('794 patent, claim 1); Appx412 at 14:26-32 ('752 patent, claim 12). As the parties agreed during claim construction, the claimed mobile device is separate and apart from the data capture device. Appx7996. Here, the accused mobile device is the iPhone, and the accused data capture device is the Apple Watch Nike. According to Cellspin's lead inventor, a key purported benefit of the patented invention was to leverage the processing power of the mobile phone as opposed to that of the wearable device. *See* Appx15734-15735 ("[A]s of the Date of Invention, data capture devices posed a number of specific challenges associated with publishing data to a web service

from a capture device using a mobile device. . . . Making changes to the data in transit, at the mobile device, and not at the data capture device where the data originated from, results in a much-improved user experience making the process much easier on the user and improving data capture device battery life”). The district court also construed “applying” and “attaching” as having their plain and ordinary meaning, just as Cellspin had advocated. Appx8008-8009.

The unrebutted evidence established that the Apple Watch Nike applies or attaches the user identifier information to the new “activity data” identified by Cellspin. No evidence supported the notion that the iPhone performs this function, as the claims require. As a matter of law, therefore, Cellspin is unable to show infringement of the ’794 and ’752 patents.

Specifically, the record establishes that the Apple Watch Nike works very differently from the Cellspin patents because the Nike app located *on the Apple Watch Nike device itself* applies or attaches the user identifier information to the activity data collected by the Watch. Appx15690-15691. When a user engages in an activity tracking session using a Nike app on their Apple Watch Nike device, the activity data that the Watch sends already has the information within the data’s header (*i.e.*, a portion of the transmission that is packaged along with the activity data) to identify the user with whom the data is associated. Appx15691.

The Apple Watch Nike operates in this way regardless of whether (1) the Watch sends that data directly to the cloud via a cellular or WiFi connection without using the phone or (2) data is sent through a mobile phone over a Bluetooth connection on its way to the cloud. Appx15691. Unlike the data capture devices contemplated in the Cellspin patents, the Apple Watch Nike can send data directly to the cloud via a WiFi and/or cellular connection (for those devices that have cellular capability) without using the mobile phone at all. Appx15691; *see also* Appx15686-15692. In fact, Nike encourages users to use the Apple Watch Nike products *without* their phone. *See* Appx15712-15713; Appx15727-15728. The accused approach is therefore the antithesis of Cellspin's asserted patents. *See* Appx396 at 12:20-24 ("applying, using the Software module on the Bluetooth enabled mobile device, a user identifier to the new data for each destination web service, wherein each user identifier uniquely identifies a particular user of the web service"); Appx412 at 13:30-36 ("wherein the Bluetooth enabled mobile device is configured to attach a user identifier, . . . , wherein the user identifier uniquely identifies a particular user of internet service provided by the remote internet server"); *see also* Appx15731-15732 ("As of the Date of Invention, publishing captured data from an *Internet-incapable* data capture device to a web-service was plainly cumbersome and inefficient") (emphasis added)); Appx15730-15736 (describing purported advantages of patented invention).

If the Nike app on the Apple Watch Nike were instead designed to rely on the mobile phone to attach user identification information, then data sent directly from the Watch to the receiving cloud server (bypassing the phone) could not be associated with any user. Appx15691. Even when the Nike app sends the data packet through an iPhone on its way to the Nike cloud server, the device works the same way: it is still the Apple Watch Nike—not the iPhone—that attaches the user identifier information. Appx15691 ("[T]he NRC app on the iPhone, if present on the iPhone, does not attach or apply any user identifier or Nike cloud destination address to the NRC activity data or to the header that encapsulates it; those pieces of information were already attached by the NRC app running on the Watch so the iPhone acts as merely a passive relay of data between the Watch and the Nike cloud destination.").

Cellspin offered no evidence that the iPhone applies or attaches user identifier information to the data collected by the Apple Watch Nike. As the district court noted, Cellspin conducted no discovery of Apple and failed to analyze any Apple source code. Appx57 at n.19; Appx63-64. Cellspin's expert instead pointed to a few pages of Nike's source code for his conclusory assertion of infringement. *See* Appx644; Appx672. But during his deposition, he made two admissions that were fatal to Cellspin's case.

First, Mr. Vijh admitted that he did not know whether the source code he cited is from the Nike app located on the iPhone or from the Nike app located on the Apple Watch Nike. Appx8957-8958. In doing so, he conceded that the code expressly refers to the "watch." Appx8957-8958.

Second, Mr. Vijh admitted that, in any event, the code he cited does not attach or apply the user identification data, and some other unidentified "separate function" performs the required applying/attaching step. Appx8958-8959. Cellspin's reliance on source code that does not perform the claimed function is, of course, insufficient to raise a triable issue of fact on this limitation.

In sum, Cellspin had no evidence that the mobile device applies or attaches the user identifier required by the claims of the '794 and '752 patents. The district court therefore correctly granted summary judgment of noninfringement on all asserted claims of these patents.

Cellspin's appeal argument merely confirms the district court's conclusion. OB at 92. Cellspin cites three pieces of evidence, none of which supports its conclusory assertion that this limitation is met.

First, Cellspin cites to the district court's quotation of the testimony of Nike witness Mr. Austin. OB at 92 (citing Appx61 at 31:16-21). This excerpt states:

> BY MR. FULLER:
>
> Q How does the activity service know which user's account the data should go to?
>
> MR. MAGGIORE: Same objection.
>
> THE WITNESS: The account that's logged in on the phone at the time that data is sent.
>
> BY MR. FULLER:
>
> Q So, when the data is sent to the activity service, I take it there's some indicator or number that's uniquely associated with that user that tells the activity service which account the data should go to.
>
> A Basically, yes.

Appx61 (quoting Appx9578 at 44:11-22). Nothing in this testimony states or suggests that the mobile device applies or attaches a user identifier to data collected by the Apple Watch Nike. Appx9578. Rather, Mr. Austin's testimony simply states that the activity service (which is located on the servers, not the phone) has a unique identifier for each user. Appx9578.

In fact, the district court quoted this testimony precisely in response to Cellspin's mischaracterization of it. Appx61 ("Cellspin responds that Austin 'testified that the user data is assigned a unique identifier at the time it is transmitted from the mobile device to the server – not when it is received from the

Apple Nike Watch.' [Appx8787]. That is not what Austin said. Instead, Austin says: [quoted testimony above]."). As the district court correctly observed, "Austin never testifies that a mobile phone attaches a user identifier to data. Viewed in the light most favorable to Cellspin, Austin's testimony can only be read to say that data is sent to an activity service with a unique identifier for each user." Appx61. The testimony thus provides no support for Cellspin's assertion that this claim limitation is met.

Second, Cellspin cites to an excerpt of the testimony of another Nike witness, Mr. Gale. OB at 92 (citing Appx9415 at 61:3-11). As the district court correctly noted, Cellspin mischaracterizes this testimony too. Appx61-62. Mr. Gale testified merely that "[w]hen the account is created, then they have unique credentials for that user" and "[e]ach user has a single log-in ID for their account." Appx9415. Mr. Gale did not testify that the mobile phone applies or attaches a user identifier to data generated by the Apple Watch Nike. Appx9415; Appx61. Mr. Gale stated simply that when an account is created using the Nike mobile applications, a user is assigned a unique user ID. Appx9415. His testimony says nothing about how the user ID is applied or attached to new data captured by the Apple Watch Nike product. Appx9415. Accordingly, Mr. Gale's testimony likewise does nothing to help Cellspin meet this claim limitation.

Third, Cellspin cites to a snippet of its expert report that is directed to claim 2 of the ’847 patent. OB at 92 (citing Appx630 at ¶ 105). On its face, this conclusory snippet does not even say that the mobile device applies or attaches a user identifier to data. Appx630. Moreover, neither Cellspin nor its expert explained how the two pages of source code cited in this paragraph of the expert report (Appx9430-9431, which Cellspin also cites in OB at 92) could possibly show that the mobile device applies or attaches a user identifier to the data collected by the data capture device. As the district court correctly noted, Mr. Vijh “does not explain how the source code demonstrates that the mobile device performs the claimed function.” Appx62. This evidence is therefore unavailing.

Finally, Cellspin fails to even acknowledge, much less adequately explain away, the dispositive admissions that Mr. Vijh made with respect to the other source code on which Cellspin relied below. *See supra* at 15-16; *see also* Appx15691-15692 (Nike witness explaining that source code Cellspin identified as relevant to this limitation included “code used by the NRC app on the Watch” (not the mobile phone) and Android source code that is “not compatible with, or intended for use by, Apple’s iPhone or Watch (including Apple Watch Nike)”).

The district court was right that Cellspin failed to raise a triable factual issue on this limitation. For this reason alone, the summary judgment of noninfringement on the ’794 and ’752 patents should be affirmed.

### 2. Cellspin Lacks Evidence That The Apple Watch Nike Contains a "First Processor" That Performs All Three Required Functions ('847 Patent).

All asserted claims of the '847 patent require that the data capture device include a "first processor" that is "configured to" perform three functions in particular ways. Appx427 at 12:14-41. The three steps, in short, are: (1) "acquire new-data"; (2) "store the acquired new-data"; and (3) "send an event notification and the acquired new-data" to the cellular phone. Appx427 at 12:27-41.

As the district court correctly ruled, Cellspin failed to offer evidence that a single "first processor" in the data capture device performs all three functions required by the claim. Appx62-64. Cellspin's expert report refers to an "S5" application processor in the Apple Watch. Appx9448. But Cellspin's expert does not cite any evidence to establish that the "S5" application processor actually performs each of the three required functions. Appx9475-9509. In fact, Cellspin's expert recognized that the Apple Watch Nike has multiple processors. Appx8912-8913. He further testified that the Bluetooth chip would work not only with the "application processor" identified in his expert report, but also with a separate (and unidentified) "base band processor" in the Apple Watch Nike device. Appx8912-8913. Mr. Vijh offered no evidence that the application processor—as opposed to some other processor or component, or some combination of processors or components—performs all three recited functions, as the claims require.

Moreover, there is no evidence—such as Apple internal technical documents or source code—that provides any guidance regarding what functions any of the processors within the Apple Watch Nike perform. Again, as the district court noted, Cellspin conducted no discovery of Apple and failed to analyze any Apple source code. Appx57 at n.19; Appx63-64. Cellspin's failure is significant because it is undisputed that Apple—not Nike—performed all engineering, development and manufacture of the accused Apple Watch Nike products. *See, e.g.*, Appx15696-15711 (Apple installs and controls the operating system on Watch products, and Nike does not provide any operating system code; internal operations within Watch products are designed by Apple and are "hidden" from Nike); Appx15718-15720; Appx15723-15724 (Nike has no knowledge of, or contribution to, the development, engineering, or manufacture of Apple Watch Nike, which is "100 percent owned by Apple"). Bereft of probative evidence, Cellspin's expert's conclusory and speculative opinions cannot create a genuine dispute of fact. *See, e.g.*, *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1051 (Fed. Cir. 2001) (holding that "mere 'theoretical speculations' lacking a basis in the record will not create a genuine issue of fact") (citation omitted); *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 1001 (Fed. Cir. 2008) ("Conclusory expert assertions cannot raise triable issues of material fact on summary judgment.").

In fact, Cellspin's expert repeatedly stated in his report that his opinions concerning the "first processor" limitations of the '847 patent are "based on information and belief." Appx9432; Appx9444-9445; Appx9448; Appx9475; Appx9498. Mere "information and belief" allegations may be appropriate for a complaint, but they are not evidence and cannot help a party withstand summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) ("Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.").

Cellspin had sufficient opportunity to seek discovery from Apple but declined to do so. It cannot then fill the evidentiary holes in its case with speculative assumptions. *See Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1080-81 (Fed. Cir. 2005) (holding that an expert's speculative opinions cannot create a genuine issue of fact on summary judgment). But Cellspin's theory is based entirely on assumptions—an assumption that there are no additional processors in the accused devices and an assumption that the processor to which Cellspin points performs all the functions that the claims require—without any supporting evidence. Because Cellspin lacked legally sufficient evidence that the Apple Watch Nike meets the "first processor" claim limitation, the district court correctly granted summary judgment on the '847 patent.

Cellspin's appeal arguments miss the mark. Cellspin starts by misconstruing the district court's order. OB at 92-93. The court did not "h[o]ld Cellspin at fault for not proving the absence of any *other* unnamed processors in the Apple Watch." OB at 92-93. Rather, the court ruled that Cellspin had failed to offer evidence that could show that *any* single processor in the Apple Watch Nike itself performs all three recited functions. Appx62-64. Cellspin's assertion that "the presence of a first processor is evident based upon the functionality of the Accused Devices and the fact that there is operating code" ignores what the claims require. OB at 93. The mere existence of a processor is not enough. The "first processor" instead must be configured to perform the three recited functions. Appx427 at 12:14-41.

Like its arguments below, Cellspin's remaining arguments "amount[] to 'conclusory statement[s] . . . without any analysis to support' them." *Traxcell Techs., LLC v. Sprint Commc'ns Co.*, 15 F.4th 1121, 1130 (Fed. Cir. 2021) (alteration in original) (citation omitted). Cellspin's assertion that "the evidence establishes how the Apple Nike Watch performs the recited functions" is accompanied by a string cite to expert testimony that itself made only conclusory assertions with unexplained citations to Nike source code. OB at 93. As the district court correctly observed, "there is no explanation how the source code of the mobile application indicates that the Apple Watch performs the recited functions, let alone how they are all performed by a single 'first processor.'"

Appx63; *see Traxcell*, 15 F.4th at 1133 (affirming district court grant of summary judgment of noninfringement where patentee "cited swaths of documents . . . [b]ut failed to . . . explain how those documents support its infringement theory").

Cellspin's invocation of "Vijh's reliance on typical computer architecture" fares no better. OB at 93. The district court correctly observed that "Vijh's report never mentions this basis for any of his opinions – and never discusses the S5 processor identified in the Apple user manual. Instead, Cellspin makes this generalized 'standard computer system architecture' opinion without any citation to the record or expert testimony and is thus unsupported attorney argument." Appx63-64 (citing *Invitrogen*, 429 F.3d at 1068 ("Unsubstantiated attorney argument regarding the meaning of technical evidence is no substitute for competent, substantiated expert testimony. It does not, and cannot, support [a party's] burden on summary judgment.")). Cellspin's attempt to contradict the district court merely proves the district court's point. Cellspin cites five pages from its Preliminary Infringement Contentions based on "information and belief" allegations. OB at. 93 (citing Appx9445-9449). These mere allegations cannot help Cellspin avoid summary judgment. *See Anderson*, 477 U.S. at 256. And, even on their face, the cited pages do nothing to show that a single processor in the Apple Watch Nike performs all three functions recited in the claims.

The summary judgment of noninfringement of the ’847 patent thus should be affirmed based on this claim limitation alone.

### 3. Cellspin Lacks Evidence That The iPhone Contains a “Second Processor” That Performs All Five Required Functions (’847 Patent).

Cellspin’s “second processor” argument fails for reasons largely similar to its “first processor” argument. All asserted claims of the ’847 patent require “a mobile application in the Bluetooth enabled cellular phone comprising executable instructions that, when executed by a second processor inside the Bluetooth enabled cellular phone controls the second processor to” perform five functions in particular ways. Appx427 at 12:42-67. The five functions, in short, are: (1) “detect and receive the acquired new-data”; (2) “listen for the event notification”; (3) “receive the event notification and the acquired new-data”; (4) “store the new-data”; and (5) “use HTTP to transfer the new-data.” Appx427 at 12:47-67.

Cellspin’s expert’s opinions regarding the “second processor” in the Bluetooth enabled cellular phone are entirely conclusory and speculative. Cellspin fails to identify *any* specific processor in the iPhone that could even possibly be the “second processor.” Nor does Cellspin provide any evidence demonstrating that a single processor in the iPhone performs all five of the claimed functions associated with the “second processor.” *See* Appx9509-9554. The district court thus correctly granted summary judgment on this ground too.

Again, Cellspin elected not to conduct discovery from Apple that would have provided insight into what processors the iPhone includes and what functions those processors perform. Cellspin therefore lacked any evidence that would indicate whether, for example, the iPhone contains one processor that must perform all functions. Nor did Cellspin offer any evidence indicating whether the iPhone contains multiple processors and, if so, whether a single one of those processors performs all five functions as the claims require. As the district court correctly ruled, Cellspin's citation to "swaths of documents" without "explain[ing] how those documents support its infringement theory" is insufficient to show a triable factual issue. *Traxcell*, 15 F.4th at 1133; Appx64-65; *see also Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1353 (Fed. Cir. 2001) ("It is not the trial judge's burden to search through lengthy technologic documents for possible evidence."). Cellspin's arguments again "amounted to 'conclusory statement[s] . . . without any analysis to support' them." *Traxcell*, 15 F.4th at 1130.

Nor was it proper for Cellspin to rely on documents from the *Garmin* litigation to try to support its case against Nike. As the district court noted, these documents were not even produced to Nike. Appx65. And Cellspin's expert did not offer any opinion concerning how these documents might be relevant to Nike. Moreover, even if these documents could possibly be relevant here, the district

court correctly observed that they still do not support Cellspin's assertion that a single iPhone processor performs all five functions that the claimed "second processor" must be able to perform. Appx65.

Cellspin's appeal arguments lack merit. First, its statement that "[t]he referenced 'second processor' is merely 'controlled by'" the accused mobile application does nothing to help its cause. OB at 94. Cellspin still must prove that this claim element is met, and it cannot do so without evidence that the "second processor" can itself perform all five recited functions when it executes the mobile application's instructions. Appx427 at 12:42-67. Second, Cellspin tries to support its conclusory argument with a string citation to expert opinion that is itself conclusory and speculative, including "information and belief" allegations in Cellspin's Preliminary Infringement Contentions. OB at 94 (citing Appx621-629 and Appx9509-9550). None of this material can help Cellspin overcome summary judgment. *See, e.g.*, *Invitrogen*, 429 F.3d at 1068; *Novartis*, 271 F.3d at 1051; *Anderson*, 477 U.S. at 256.

Cellspin's lack of evidence on the "second processor" limitation is therefore another independent reason to affirm the summary judgment of noninfringement on the '847 patent.

#### 4. Cellspin Lacks Evidence To Support Its Internal Testing Theory (All Three Patents).

As another ground for summary judgment on all three patents, the district court correctly ruled that Cellspin failed to show a genuine dispute of material fact on its internal testing theory. Cellspin offered no evidence that Nike tested the accused Apple Watch Nike in a way that infringed any asserted patent claim. *See Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1335-36 (Fed. Cir. 2008) (affirming summary judgment of noninfringement in which plaintiff "failed to adduce any specific evidence that [defendant] tested any of the products . . . in a way that would constitute infringement") (quotations and citation omitted).

Cellspin's argument on this point was conclusory and lacked any explanation of how the evidence in its lengthy string cites showed that the claim limitations were met. *See* Appx65-66. This deficiency included the absence of any evidence that Nike performed the steps of the asserted method patents in the required order. *See* Appx66 (citing *E-Pass Techs., Inc. v. 3Com Corp.*, 473 F.3d 1213, 1222 (Fed. Cir. 2007) (affirming summary judgment of noninfringement where patentee lacked proof that all claimed method steps were performed in order)).

Cellspin's appeal argument has precisely the same insufficient caliber as its argument below. OB at 94. Its conclusory assertions and unexplained string cite

cannot overcome summary judgment. *See, e.g.*, *Traxcell*, 15 F.4th at 1133; *Sitrick*, 516 F.3d at 1001.

#### 5. Cellspin Lacks Evidence To Support Its Assembly Theory ('847 Patent).

As yet another ground for summary judgment on the '847 patent, the district court correctly ruled that "Cellspin fails to raise a genuine dispute of material fact that an assembly infringes the asserted system claims because it offers evidence without any explanation how any element of the asserted claims is met." Appx66 (citing *Traxcell*, 15 F.4th at 1133). Cellspin's appeal argument merely reprises this deficiency. OB at 95. Once again, its conclusory assertions and unexplained string cite cannot overcome summary judgment. *See, e.g.*, *Traxcell*, 15 F.4th at 1133; *Sitrick*, 516 F.3d at 1001.

#### 6. Cellspin Lacks Evidence To Show Divided Infringement ('794 And '752 Patents).

The district court also correctly ruled that Cellspin failed to show a triable case of divided infringement under this Court's precedent. Aside from its evidentiary failure on the multiple specific claim elements discussed above, Cellspin was unable to show that Nike or any other single entity or user performed in the required order all acts that were alleged to constitute the claimed methods. Nor could it show that Nike sells a "Bluetooth enabled mobile device" (*i.e.*, an iPhone). Cellspin thus was required to meet this Court's test for a cognizable case

of divided infringement. Cellspin failed to do so. This is another reason why summary judgment was appropriate on all asserted ’794 and ’752 patent claims.

“Direct infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity. . . . Where more than one actor is involved in practicing the steps, a court must determine whether the acts of one are attributable to the other such that a single entity is responsible for the infringement.” *Akamai Techs. Inc. v. Limelight Networks Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (citation omitted). “Divided infringement refers to a narrow situation where absent third parties are involved in practicing steps in a claimed method, but where the third parties’ acts ‘are attributable to the [defendant] such that [the defendant] is responsible for the infringement.’” *Synchronoss Techs., Inc. v. Dropbox Inc.*, 389 F. Supp. 3d 703, 712 (N.D. Cal. 2019), *aff’d*, 987 F.3d 1358 (Fed. Cir. 2021) (quoting *Akamai*, 787 F.3d at 1022).

“An entity [is] responsible for others’ performance of method steps in two sets of circumstances: (1) where that entity directs or controls others’ performance, and (2) where the actors form a joint enterprise.” *Akamai*, 797 F.3d at 1022. Here, Cellspin did not assert any “joint enterprise” theory, but instead tried to proceed only under a “directs or controls” theory. Appx67 at n.29. Under this theory, “liability . . . can [] be found when an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented

method and establishes the manner or timing of that performance." *Akamai*, 797 F.3d at 1023.

Here, the undisputed evidence showed that Nike does not direct or control Apple because it is Apple that develops, manufactures, and programs the Apple Watch Nike products and Apple (not Nike) that decides what technologies (such as Bluetooth, WiFi, and cellular) are included or not included. *See, e.g.*, Appx15696-15711. Nike's lack of involvement in developing and engineering the accused functionality in the Apple Watch Nike precludes any finding that Nike somehow directs or controls Apple. *See Akamai*, 797 F.3d at 1022. Nor was there any evidence that Apple performs any of the steps required by the asserted method claims.

Cellspin also lacked any evidence that Nike directs or controls any of its customers to perform all method steps. Nike resells Apple Watch Nike products and makes Nike apps available for download via Apple's App Store, but there is no evidence that use of the Apple Watch Nike is conditioned on using that product in a way that practices the claims, much less that Nike establishes the manner or timing of that alleged use. *See id.* at 1023. "[M]ere guidance or instruction is insufficient to show 'conditioning' under *Akamai V*." *Travel Sentry Inc. v. Tropp*, 877 F.3d 1370, 1378-79 (Fed. Cir. 2017). Cellspin's theory also cannot be squared with the fact that Nike encourages users to use the Apple Watch Nike products

*without* their phone. *See supra* at 14; Appx15712-15713; Appx15727-15728; *see also infra* at 37.

Further, as the district court correctly ruled, Cellspin's purported evidence of divided infringement was "not offered with any explanation how it raises a genuine dispute of material fact that Nike conditions a benefit upon performance of claimed method steps." Appx67. "Indeed, Vijh never provides an opinion on Nike's facts, only an opinion defining one of 'the benefits of the claimed *inventions* [a]s the ease of use and the ability to seamlessly and effortlessly transfer data.'" Appx67 (citing Appx599 at ¶ 51) (emphasis and alteration in original).

Cellspin fails to overcome any of these dispositive points on appeal. Cellspin instead tries to tack on an unexplained string cite to matters in the Nike case record to the argument it makes with respect to Fitbit. OB at 95. This approach, however, cannot overcome the deficiencies in Cellspin's case against Nike before the district court. *See, e.g.*, *Traxcell*, 15 F.4th at 1133; *Sitrick*, 516 F.3d at 1001. Summary judgment was thus warranted for the asserted method claims on this ground too.

#### 7. Additional Grounds Support Summary Judgment of Noninfringement on All Three Patents.

The multiple independent grounds on which the district court expressly relied are more than enough to affirm the final judgment in its entirety here. But to

the extent the Court may even need to reach them, Nike raised additional grounds in its motion that also support the summary judgment ruling.

**Alteration of accused product.** Instead of relying on the underlying technical documentation and source code necessary to establish how the Apple Watch Nike products work, Cellspin relies on a test that its expert conducted on just one Apple Watch Nike product: the Apple Watch Nike Series 5 (GPS+Cellular) 44m device. *See, e.g.*, Appx605-606; Appx9057-9138; Appx9275-9379; Appx9506-9564. In addition to its other deficiencies, that test cannot support infringement because Cellspin's expert materially altered the device's function and operation. *See Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1330 (Fed. Cir. 2001) (affirming summary judgment of noninfringement where allegedly infringing functionality was "present in the phone's source code," but was not enabled; "that a device is capable of being modified to operate in an infringing manner is not sufficient, by itself, to support a finding of infringement").

Specifically, in order to demonstrate that the Apple Watch Nike Series 5 (GPS+Cellular) product infringes the claims' requirement that certain information be transmitted via Bluetooth, Mr. Vijh admitted that he made several alterations and changes to the Apple Watch Nike product and the Apple iPhone. *See* Appx8855-8857; Appx8901-8902.

First, Mr. Vijh affirmatively disabled the Apple Watch Nike's default WiFi communication capabilities in order to force the device to communicate via Bluetooth. Appx8901-8902. This alteration is significant because communications via WiFi cannot infringe Cellspin's asserted patent claims, which require communication via Bluetooth.

Second, Mr. Vijh declined to activate the cellular capability of the product he tested. Appx8855-8857. This decision is significant because communications via cellular network also cannot infringe.

Mr. Vijh's testing does not support Cellspin's case because one cannot alter the standard or default settings of a product to prove infringement. *See, e.g.*, *Telemac*, 247 F.3d at 1330; *Nazomi Commc'ns, Inc. v. Nokia Corp.*, 10-CV-04686-RMW, 2012 WL 3536768, at *5–6 (N.D. Cal. Aug. 14, 2012) (granting summary judgement of noninfringement where relevant circuitry in the accused product was "'dormant' by default"), *aff'd*, 739 F.3d 1339, 1345-46 (Fed. Cir. 2014). Here, the changes Mr. Vijh made significantly affected the way in which the Apple Watch Nike product communicated information from the Watch to the iPhone. Even apart from its other methodological and substantive deficiencies, Cellspin's testing thus cannot establish that Nike or any third party actually practiced any asserted patent claim. Indeed, there is no evidence that Nike or any third party made the specific alterations that Mr. Vijh did in his test, or that the products would practice

the claims if those alterations were not made. This is another independent ground for summary judgment.

**No representative product.** Further, Cellspin's purportedly "representative" product analysis cannot support infringement with respect to the accused Apple Watch Nike products that its expert did not analyze. Cellspin accused 10 different models of the Apple Watch Nike, which includes 3 different series of the product released by Apple over several years (Series 3, Series 4, and Series 5), some of which have cellular capability and others that do not. Appx590-591. Although Cellspin's expert recites his conclusion that the one Apple Watch Nike Series 5 (GPS+Cellular) product that he looked at is representative of all others (Appx605-606), no evidence supports that conclusion. Cellspin's expert never obtained the other accused Apple Watch Nike products, never reviewed or inspected them to determine if their components or software are the same, and never tested those products to determine if they functioned the same. *See* Appx8823-8824; Appx8830-8832 (only tested single model of Series 5).

Moreover, because Cellspin did not conduct any discovery from Apple, Cellspin's expert had no internal Apple technical specifications, or any Apple source code, to evaluate any similarities and differences between the various Apple Watch Nike products, such as the details of their Bluetooth operations. In short, Cellspin's expert's conclusory assertion that products are representative without

providing any documentation, source code, or factual testimony regarding those products to support that conclusion is insufficient. *See, e.g.*, *L & W, Inc. v. Shertech, Inc.*, 471 F.3d 1311, 1317-18 (Fed. Cir. 2006); *Pulse Elecs., Inc. v. U.D. Elec. Corp.*, 3:18-cv-00373-BEN, 2021 WL 981123, at *19 (S.D. Cal. Mar. 16, 2021) (citing *Duncan Parking Techs., Inc. v. IPS Grp., Inc.*, 914 F.3d 1347, 1360 (Fed. Cir. 2019)). Compounding this error, Cellspin improperly invoked documents for the Nike FuelBand to try to paper over this evidentiary gap. *See, e.g.*, Appx8782-8785 (Cellspin's assertions that it did not need Apple source code for Apple Watch Nike because it had source code for Nike FuelBand).

Accordingly, Cellspin had no evidence at all beyond the single Apple Watch Nike Series 5 product that its expert tested. And that evidence itself was legally insufficient for all the reasons explained above.

**No evidence of indirect infringement.** Finally, even beyond its failure to raise a triable issue on multiple claim limitations, Cellspin had no legally sufficient evidence of indirect infringement.

First, Cellspin's infringement theory and evidence was limited to an analysis of the Watch products themselves. Appx607 ("[I]t is my opinion that each of the Accused Instrumentalities literally meet each limitation of each of the Asserted Claims."). Cellspin failed to produce any evidence that any third party directly infringed any asserted method claim. This failure is another basis for summary

judgment on the method patents. *See Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1374 (Fed. Cir. 2003) (direct infringement is a prerequisite to indirect infringement).

Second, Cellspin ignores the multiple noninfringing uses of the Apple Watch Nike that defeat Cellspin's indirect infringement claims. As discussed above, the Apple Watch Nike products use WiFi communications, and many of the products have cellular capability. Neither WiFi nor cellular communications can infringe Cellspin's asserted patent claims, which require that the data capture device communicate via Bluetooth. Moreover, to the extent Nike encourages customers to do anything with the Apple Watch Nike products, it is to use that product without a phone, which would not infringe (among other reasons) due to the lack of any "continuous paired connection" that the asserted patent claims require. *See* Appx8001 ("prosecution disclaimer limits the term to maintaining continuous paired connections while new data is acquired in this case"); Appx15727-15728 (describing the "added benefit" of "enabling you to leave your phone behind and track your in-run data all on your wrist"); Appx15712-15713 (one of the "primary benefits to users" is "mobility" which means "[y]ou can just go on a run without carrying your phone versus just having your watch").

Third, Cellspin has not presented any evidence that Nike had knowledge of infringement with respect to the Apple Watch Nike, nor any evidence that Nike

specifically intended to encourage others' infringement. As a result, in addition to its myriad other evidentiary voids, Cellspin cannot establish an essential element of its inducement claims. *See Commil USA, LLC v. Cisco Systems, Inc.*, 575 U.S. 632, 637, 639-42 (2015); *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006).

Cellspin's infringement claims therefore fail as a matter of law for multiple additional reasons beyond those on which the district court expressly relied.

## VII. CONCLUSION

The district court correctly granted summary judgment of noninfringement to Nike on multiple independent grounds for each asserted claim of each asserted patent. The final judgment therefore should be affirmed.

Dated: March 27, 2023

Respectfully Submitted,

*/s/ Stanley J. Panikowski*

Stanley J. Panikowski
Richard T. Mulloy
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, CA 92121
Tel: 858.677.1400

*Attorneys for Appellee*
*NIKE, Inc.*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS**

This response brief complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because the filing has been prepared using a proportionally-spaced typeface and includes 11,715 words (inclusive of all portions of Appellee Fitbit LLC's response brief (in Lead Appeal No. 22-2025) that Appellee NIKE, Inc. has expressly incorporated by reference into this response brief).

Dated: March 27, 2023

Respectfully Submitted,

*/s/ Stanley J. Panikowski*

Stanley J. Panikowski
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, CA 92121
Tel: 858.677.1400

*Attorneys for Appellee*
*NIKE, Inc.*