NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**CELLSPIN SOFT, INC.,**
*Plaintiff-Appellant*

**v.**

**FITBIT LLC, NIKE, INC., UNDER ARMOUR, INC., FOSSIL GROUP, INC., MISFIT, INC., NIKON AMERICAS, INC., NIKON INC., GARMIN INTERNATIONAL, INC., GARMIN USA, INC.,**
*Defendants-Appellees*

---

2022-2025, 2022-2028, 2022-2029, 2022-2030, 2022-2032, 2022-2037

---

Appeals from the United States District Court for the Northern District of California in Nos. 4:17-cv-05928-YGR, 4:17-cv-05931-YGR, 4:17-cv-05932-YGR, 4:17-cv-05933-YGR, 4:17-cv-05934-YGR, 4:17-cv-05936-YGR, Judge Yvonne Gonzalez Rogers.

---

Decided: November 1, 2024

---

MICHAEL SCOTT FULLER, Garteiser Honea, PLLC, Tyler, TX, argued for plaintiff-appellant. Also represented by RANDALL T. GARTEISER, CHRISTOPHER A. HONEA.

KARIM ZEDDAM OUSSAYEF, Desmarais LLP, New York, NY, argued for defendants-appellees Fitbit LLC, Fossil Group, Inc., Garmin International, Inc., Garmin USA, Inc., Misfit, Inc., Nike, Inc. Fitbit LLC also represented by JAMIE KRINGSTEIN; ADAM STEINMETZ, Washington, DC.

SETH W. LLOYD, Morrison & Foerster LLP, Washington, DC, argued for defendants-appellees Nikon Americas, Inc., Nikon Inc., Under Armour, Inc. Nikon Americas, Inc. and Nikon Inc. also represented by BRIAN ROBERT MATSUI; JACK WILLIFORD LONDEN, San Francisco, CA; YUKA TERAGUCHI, Tokyo, Japan.

STANLEY JOSEPH PANIKOWSKI, III, DLA Piper LLP (US), San Diego, CA, for defendant-appellee Nike, Inc. Also represented by RICHARD T. MULLOY.

DAVID UTYKANSKI, Harness, Dickey & Pierce, PLC, Troy, MI, for defendant-appellee Under Armour, Inc. Also represented by MICHAEL DOERR; MICHAEL PATRICK KELLA, St. Louis, MO.

RICARDO BONILLA, Fish & Richardson P.C., Dallas, TX, for defendants-appellees Fossil Group, Inc., Misfit, Inc. Also represented by NOEL F. CHAKKALAKAL, NEIL J. MCNABNAY.

RACHAEL D. LAMKIN, Baker Botts LLP, for defendants-appellees Garmin International, Inc., Garmin USA, Inc.

---

Before PROST, REYNA, and TARANTO, *Circuit Judges*.

TARANTO, *Circuit Judge*.

In 2017, Cellspin Soft, Inc. brought patent-infringement actions in the Northern District of California against the following companies: Fitbit LLC; Nike, Inc.; Under Armour, Inc.; Fossil Group, Inc. and Misfit, Inc.

(collectively, Fossil); Nikon Americas, Inc. and Nikon, Inc. (collectively, Nikon); and Garmin International, Inc. and Garmin USA, Inc. (collectively, Garmin). The actions were not consolidated but were litigated in conjunction with each other, along with several other actions not at issue here. As now relevant, Cellspin alleged infringement of various claims of three of its patents. The district court granted summary judgment of noninfringement for all defendants. Cellspin appeals. We affirm.

## I

### A

The patents at issue are Cellspin's U.S. Patent Nos. 8,738,794; 8,892,752; and 9,749,847, which have a common specification and a common title: "Automatic Multimedia Upload for Publishing Data and Multimedia Content." The patents address issues associated with distributing multimedia content. '794 patent, col. 1, lines 48–54. Under the prior art, the specification says, a user might use one device (*e.g.*, a camera) to take a photograph, use a memory device (*e.g.*, a memory stick) to transfer the image to an internet-capable device (*e.g.*, a personal computer), and then manually upload the image to a website. *Id.*, col. 1, lines 37–47. The patents, generalizing from images to data, describe automating the distribution process: The data-capture device (*e.g.*, a camera) connects directly to the mobile device (*e.g.*, a phone) via a paired, wireless Bluetooth connection, *id.*, col. 2, lines 10–13; and the mobile device automatically publishes the new content to the internet, *id.*, col. 2, lines 35–54.

Independent claim 1 of the '794 patent recites:

> A method for acquiring and transferring data from a Bluetooth enabled data capture device to one or more web services via a Bluetooth enabled mobile device, the method comprising:

providing a software module on the Bluetooth enabled data capture device;

providing a software module on the Bluetooth enabled mobile device;

***establishing a paired connection between the Bluetooth enabled data capture device and the Bluetooth enabled mobile device***;

acquiring new data in the Bluetooth enabled data capture device, wherein new data is data acquired after the paired connection is established;

detecting and signaling the new data for transfer to the Bluetooth enabled mobile device, wherein detecting and signaling the new data for transfer comprises:

> determining the existence of new data for transfer, by the software module on the Bluetooth enabled data capture device; and
>
> sending a data signal to the Bluetooth enabled mobile device, corresponding to existence of new data, by the software module on the Bluetooth enabled data capture device automatically, over the established paired Bluetooth connection, wherein the software module on the Bluetooth enabled mobile device listens for the data signal sent from the Bluetooth enabled data capture device, wherein if permitted by the software module on the Bluetooth enabled data capture device, the data signal sent to the Bluetooth enabled mobile device comprises a data signal and one or more portions of the new data;

transferring the new data from the Bluetooth enabled data capture device to the Bluetooth

> enabled mobile device automatically over the paired Bluetooth connection by the software module on the Bluetooth enabled data capture device;
>
> receiving, at the Bluetooth enabled mobile device, the new data from the Bluetooth enabled data capture device;
>
> ***applying, using the software module on the Bluetooth enabled mobile device, a user identifier to the new data for each destination web service, wherein each user identifier uniquely identifies a particular user of the web service;***
>
> transferring the new data received by the Bluetooth enabled mobile device along with a user identifier to the one or more web services, using the software module on the Bluetooth enabled mobile device;
>
> receiving, at the one or more web services, the new data and user identifier from the Bluetooth enabled mobile device, wherein the one or more web services receive the transferred new data corresponding to a user identifier; and
>
> making available, at the one or more web services, the new data received from the Bluetooth enabled mobile device for public or private consumption over the internet, wherein one or more portions of the new data correspond to a particular user identifier.

’794 patent, col. 11, line 48, through col. 12, line 38 (emphases added).

Independent claim 1 of the ’752 patent recites:

> A method for transferring data from a Bluetooth enabled data capture device to a remote internet

> server via a Bluetooth enabled mobile device comprising:
>
> performing at the data capture device:
>
>> establishing a secure paired Bluetooth connection between the Bluetooth enabled data capture device and the Bluetooth enabled mobile device, wherein the secure paired Bluetooth connection uses a cryptographic encryption key;
>>
>> acquiring new data in the Bluetooth enabled data capture device, wherein new data is data acquired after the secure paired Bluetooth connection is established;
>>
>> detecting and signaling the new data for transfer, to the Bluetooth enabled mobile device, wherein detecting and signaling the new data for transfer comprises:
>>
>>> receiving a message from the Bluetooth enabled mobile device, over the established secure paired Bluetooth connection, to enable event notifications, corresponding to new data for transfer, on the Bluetooth enabled data capture device;
>>>
>>> enabling event notification on Bluetooth enabled data capture device, corresponding to new data for transfer;
>>>
>>> determining existence of the new data for transfer; and
>>>
>>> sending an event notification to the Bluetooth enabled mobile device, corresponding to existence of new

> data for transfer, over the established secure paired Bluetooth connection, wherein the Bluetooth enabled mobile device is configured to listen for the event notification sent from the Bluetooth enabled data capture device;

encrypting, using the cryptographic encryption key, the new data acquired in the Bluetooth enabled data capture device; and

transferring the encrypted data from the Bluetooth enabled data capture device to the Bluetooth enabled mobile device, over the established secure paired Bluetooth connection, wherein the Bluetooth enabled mobile device has access to the internet, wherein the Bluetooth enabled mobile device is configured to receive the encrypted data and obtain the new data from the encrypted data using the cryptographic encryption key, ***wherein the Bluetooth enabled mobile device is configured to attach a user identifier, an action setting and a destination web address of a remote internet server to the obtained new data, wherein the user identifier uniquely identifies a particular user of internet service provided by the remote internet server***, wherein action setting comprises one of a remote procedure call (RPC) method and hypertext transfer protocol (HTTP) method, and wherein the Bluetooth enabled mobile device is configured to send the obtained new data with the attached

> user identifier, an action setting and a destination web address to a remote internet server.

’752 patent, col. 11, line 48, through col. 12, line 37 (emphases added).

Independent claim 1 of the ’847 patent recites:

> A system comprising:
>
> a Bluetooth enabled data capture device, comprising:
>
> a first memory device;
>
> a first processor coupled to the first memory device;
>
> a first Bluetooth communication device configured to establish a paired Bluetooth wireless connection between the Bluetooth enabled data capture device and a Bluetooth enabled cellular phone, wherein the Bluetooth enabled data capture device is configured to cryptographically authenticate identity of the Bluetooth enabled cellular phone when the first Bluetooth communication device establishes the paired Bluetooth wireless connection;
>
> a data capture circuitry;
>
> ***said first processor configured to acquire new-data using the data capture circuitry after the paired Bluetooth wireless connection between the Bluetooth enabled data capture device and the Bluetooth enabled cellular phone is established***;
>
> ***said first processor configured to store the acquired new-data in the first memory device; and said first processor configured to send an event notification and the acquired new-data to the cryptographically authenticated***

***Bluetooth enabled cellular phone over the established paired Bluetooth wireless connection***, wherein the event notification corresponds to the acquired new-data and comprises sending a signal to the cryptographically authenticated Bluetooth enabled cellular phone;

a mobile application in the Bluetooth enabled cellular phone comprising executable instructions that, when executed by a second processor inside the Bluetooth enabled cellular phone controls the second processor to:

detect and receive the acquired new-data, comprising:

listen for the event notification, sent from the Bluetooth enabled data capture device, over the established paired Bluetooth wireless connection, wherein the event notification corresponds to the acquired new-data; and

receive the event notification and the acquired new-data, from the Bluetooth enabled data capture device, over the established paired Bluetooth wireless connection, wherein receiving the event notification comprises receiving the signal sent by the Bluetooth enabled data capture device corresponding to the acquired new-data;

store the new-data received over the established paired Bluetooth wireless connection, in a second memory device of the Bluetooth enabled cellular phone before transfer to a website; and

***use HTTP to transfer the new-data received over the established paired Bluetooth wireless connection, along with user information stored in the second memory device of the cryptographically authenticated Bluetooth enabled cellular phone, to the website***, over the

> cellular data network; wherein the mobile application further comprises executable instructions to control the processor to provide a graphical user interface (GUI) for the new-data.

’847 patent, col. 12, line 13, through col. 13, line 3 (emphases added).

B

In April 2018, the district court dismissed several of the actions before it under Federal Rule of Civil Procedure 12(b)(6), concluding that the asserted claims of the three patents (and of one other patent) were invalid under 35 U.S.C. § 101 for claiming ineligible subject matter. But this court vacated the dismissal in 2019 and remanded the case to the district court. *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1320 (Fed. Cir. 2019).

In April 2021, the district court issued a claim-construction order. *Cellspin Soft, Inc. v. Fitbit, Inc.*, No. 4:17-cv-05928, 2021 WL 1417419 (N.D. Cal. Apr. 14, 2021) (*Claim Construction Order*). The court there construed “Bluetooth enabled data capture device” to require a device “separate and apart from the mobile device.” *Id.* at *5. Relying on a prosecution disclaimer, the court also construed “paired connection” to require a connection that is “established and maintained on a continuous basis.” *Id.* at *9.

In January 2022, Fitbit, Nike, Under Armour, Fossil, Nikon, and Garmin moved for summary judgment of noninfringement. The claims in the case were: claims 1, 2–4, 7, 9, 16, 17, 18, 20, and 21 of the ’794 patent; claims 1, 2, 4, 5, and 12–14 of the ’752 patent; and claims 1–3 of the ’847 patent. The district court granted all six motions, addressing them in a single opinion explaining all six “orders.” *Cellspin Soft, Inc. v. Fitbit, Inc.*, No. 4:17-cv-05928, 2022 WL 2784467 (N.D. Cal. June 15, 2022) (*Summary Judgment Opinion*).

The court addressed the asserted grounds for summary judgment defendant by defendant and ground by ground. But not all the court's determinations need to be summarized here. Certain defendants shared certain grounds for summary judgment. A limited subset of the court's determinations suffices to support the bottom-line grants of summary judgment.

Notably, for Fitbit, Fossil, and Garmin, the district court granted summary judgment because they each had shown the absence of a genuine dispute of material fact regarding whether the accused products had the claimed "user identifier" or "user information" required to be attached to the data. *Id.* at *10–11, *32–33, *39. For Nike, the district court granted summary judgment because it had shown the absence of a genuine dispute of material fact regarding whether the "user identifier" is attached by the mobile device and whether a first processor performs the claimed trio of functions (acquiring new data, storing said data, and sending an event notification). *Id.* at *17–20. For Under Armour and Nikon, the district court granted summary judgment because each had shown the absence of a genuine dispute of material fact regarding whether a paired connection is maintained on a continuous basis. *Id.* at *24–26, *41–43.

On June 15, 2022, the district court entered judgments of noninfringement for all six defendants. (As noted *infra*, that judgment was not then final in three of the cases.)[1]

---

[1] The district court amended its judgment in Garmin's case on July 19, 2022—not in substance but only to make clear that it was issued under Federal Rule of Civil Procedure 54(b), reflecting the fact that it applies only to the '794, '752, and '847 patents that were the subject of the *Summary Judgment Opinion* and not to another patent that was asserted against Garmin in the case but was not

Cellspin filed notices of appeal for the six judgments by July 15, 2022, within the time allowed by 28 U.S.C. § 2107(a), and the six appeals were consolidated for briefing in this court.

II

The appeals before us are from the district court's judgments, in June 2022, that Fitbit, Nike, Under Armour, Fossil, Nikon, and Garmin do not infringe the '794, '752, and '847 patents. We have jurisdiction over the appeals if and only if the decisions appealed are "final decisions." 28 U.S.C. § 1295(a). Final decisions are "decisions that end litigation on the merits and leave nothing for the court to do but execute the judgment." *Amgen Inc. v. Amneal Pharmaceuticals LLC*, 945 F.3d 1368, 1374 (Fed. Cir. 2020); *see also Robert Bosch, LLC v. Pylon Manufacturing Corp.*, 719 F.3d 1305, 1308 (Fed. Cir. 2013) (en banc) ("This court's jurisdiction is governed by the final judgment rule.").

The judgments of noninfringement in the cases against Nike, Under Armour, and Nikon were final judgments, there being no outstanding counterclaims. But the judgments in the cases against Fitbit, Fossil, and Garmin, when issued, were not final. Those three defendants had filed counterclaims against Cellspin that remained outstanding after the district court's June 2022 summary-judgment orders, as they were not addressed in those orders and some of them remained unadjudicated after an April 2021 ruling on a motion for summary judgment of ineligibility under 35 U.S.C. § 101, *see Cellspin Soft, Inc. v. Fitbit, Inc.*, No. 4:17-cv-05928, 2021 WL 1421612, at *18

---

the subject of that opinion or another adjudication. We and the parties see no need for a new or amended notice of appeal in this circumstance. *See State Contracting & Engineering Corp. v. State of Florida*, 358 F.3d 1329, 1334–35 (Fed. Cir. 2001).

(N.D. Cal. Apr. 14, 2021). "[A] judgment that does not dispose of pending counterclaims is not a final judgment." *Nystrom v. TREX Co., Inc.*, 339 F.3d 1347, 1351 (Fed. Cir. 2003) (quoting *Pandrol USA, LP v. Airboss Railway Products, Inc.*, 320 F.3d 1354, 1362 (Fed. Cir. 2003)).

At oral argument before this court, however, counsel representing Fitbit, Fossil, and Garmin volunteered to dismiss the remaining counterclaims without prejudice, and Cellspin agreed. Oral Arg. at 7:51–8:41, https://oralarguments.cafc.uscourts.gov/default.aspx?fl=22-2025_10072024.mp3. That representation cures the jurisdictional defect and renders the district court's judgment a final decision that is reviewable within our jurisdiction. *See Amgen*, 945 F.3d at 1374 (finding jurisdiction where party "represented that it would 'give up' its invalidity defense and claim"); *Synchronoss Technologies, Inc. v. Dropbox, Inc.*, 987 F.3d 1358, 1365–66 (Fed. Cir. 2021) (finding jurisdiction where party "agreed to give up its invalidity counterclaims" at oral argument); *Atlas IP, LLC v. Medtronic, Inc.*, 809 F.3d 599, 604–05 (Fed. Cir. 2015) (determining that "a consented-to dismissal without prejudice" of counterclaims "produces a final decision under § 1295(a)(1)"). Accordingly, we have jurisdiction over all six appeals under § 1295(a)(1).

## III

We decide the correctness of the district court's grant of summary judgment de novo, following Ninth Circuit law and asking if there is no genuine dispute of material fact, such that the movant is entitled to judgment as a matter of law when the evidence is viewed in the light most favorable to the non-movant. *Treehouse Avatar LLC v. Valve Corp.*, 54 F.4th 709, 714 (Fed. Cir. 2022) (citing Fed. R. Civ. P. 56(a)); *San Diego Police Officers' Association v. San Diego City Employees' Retirement System*, 568 F.3d 725, 733 (9th Cir. 2009); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 257 (1986). We review the district court's

application of the local court rules for any abuse of discretion. *SanDisk Corp. v. Memorex Products, Inc.*, 415 F.3d 1278, 1292 (Fed. Cir. 2005). Thus, we uphold the district court's application of the local rules unless it was (1) clearly unreasonable, arbitrary, or fanciful; (2) based on erroneous conclusions of law; (3) clearly erroneous; or (4) unsupported by any evidence. *Id.*

Our discussion below addresses four issues. Finding no error in the district court's decision as to those issues suffices for us to affirm the grant of summary judgment of noninfringement. We need not and do not address other rulings of the district court.

A

In seeking summary judgment of noninfringement, Fitbit, Fossil, and Garmin argued that the evidence did not permit a reasonable finding of satisfaction of the claim element "user identifier" or "user information," which the parties treat as indistinguishable and which (in one form or the other) are present in all asserted claims of the '794, '752, and '847 patents, with particular roles to be played by that element. Cellspin responded by relying on a product feature called "OAuth" as satisfying that element. But the district court barred Cellspin's reliance on "OAuth" as too late. *Summary Judgment Opinion*, at *10–11, *32–33, *39.

Under the local patent-case procedural rules of the Northern District of California, Cellspin was required to serve a "Disclosure of Asserted Claims and Infringement Contentions" containing a "chart identifying specifically where and how each limitation of each asserted claim is found within each Accused Instrumentality." Patent Local Rules 3-1(c). Cellspin served a disclosure of its infringement contentions on Fitbit, Fossil, and Garmin on June 9, 2020. Notice of Compliance, *Cellspin Soft, Inc. v. Fitbit LLC*, No. 4:17-cv-05928 (N.D. Cal. June 22, 2020), ECF No. 137; Notice of Compliance, *Cellspin Soft, Inc. v. Fossil Group, Inc.*, No. 4:17-cv-05933 (N.D. Cal. June 22,

2020), ECF No. 165; Notice of Compliance, *Cellspin Soft, Inc. v. Garmin International, Inc.*, No. 4:17-cv-05934 (N.D. Cal. June 22, 2020), ECF No. 114. But in those infringement contentions, Cellspin did not identify OAuth as the infringing "user identifier" or "user information"; instead, it said that the element was found in a "username or email address, or information based off of a user or the user's associated wearable device," J.A. 10005, 10285, and "information relating to the user, such as a username/email address, and/or a code identifying the user or the [accused device]," J.A. 10452.

The district court correctly determined that Cellspin's infringement contentions did not disclose that Cellspin was relying on OAuth to meet the claim element, and the district court did not abuse its discretion under the local rules in barring Cellspin from later reliance on OAuth. Cellspin referred to OAuth for the first time in its opening expert reports filed in September 2021—at the close of fact discovery. Cellspin could have sought to amend its infringement contentions: The relevant local rule allows such amendment with a "timely showing of good cause" and notes that the "[r]ecent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions" can provide the requisite showing. Patent Local Rules 3-6. Yet Cellspin did not seek to amend its contentions, and so whether the standards for amendment would have been met (in complex, related cases, involving claims having numerous claim limitations asserted against a variety of different products) was never tested.

In these circumstances, we cannot find an abuse of discretion by the district court in excluding the OAuth assertion. In opposing summary judgment, Cellspin did not present evidence of any other product feature as satisfying the "user identifier" or "user information" element (in the various claim limitations). It follows that

the district court correctly granted summary judgment of noninfringement because Cellspin did not create a genuine dispute of material fact as to whether Fitbit, Fossil, and Garmin's products "apply," "attach," or "store" a "user identifier" or "user information." On that basis, we affirm the grant to Fitbit, Fossil, and Garmin of summary judgment of noninfringement of the '794, '752, and '847 patents.[2]

B

The asserted claims of the '752 and '794 patents require that the mobile device "apply[]" or "attach[]" the "user identifier" to new data it receives from the data capture device. The district court granted Nike summary judgment of noninfringement of those patents on the ground that Cellspin's evidence did not allow a reasonable finding that those requirements were satisfied. *Summary Judgment Opinion*, at *17–19. Cellspin challenges that ruling, but we reject Cellspin's challenge.

The district court's claim construction, which Cellspin does not dispute, distinguishes the mobile device, which attaches the user identifier, from the data capture device,

---

[2] For Garmin, the district court granted summary judgment on this basis only as to the '752 and '794 patents, but Garmin noted in its brief to us that the district court's conclusion about the "user identifier"/"user information" issue requires summary judgment of noninfringement by Garmin on the '847 patent as well, Brief for Appellee Garmin at 15 n.2, and Cellspin acknowledged at oral argument that "there's no distinction" regarding the applicability of this ground across the three asserted patents—all of which recite a "user identifier" or "user information." Oral Arg. at 19:46–58, https://oralarguments.cafc.uscourts.gov/default.aspx?fl=22-2025_10072024.mp3.

which acquires the new data. *Claim Construction Order*, at *5. Nike presented evidence that when the Apple Watch Nike—which is the accused data capture device—is used to acquire activity data, the Apple Watch Nike attaches "an identifier associated with the user" when it packages the activity data for transmission. J.A. 15689–91. It is the data capture device, not the mobile device, that attaches the identifier; indeed, the Apple Watch Nike can send data directly to the cloud without connecting to a mobile phone. J.A. 15691. Cellspin failed to rebut this clear evidence of noninfringement, as Cellspin's evidence establishes at most that a user identifier is associated with the data—not that the mobile phone *attaches* a user identifier to the data.

Thus, we see no error in the district court's ruling that Cellspin did not establish a genuine issue of material fact as to whether Nike satisfies an element of the asserted claims of the '752 and '794 patents. Accordingly, we affirm the grant to Nike of summary judgment of noninfringement of those two patents.

C

Regarding the '847 patent, the district court granted Nike summary judgment of noninfringement on a different ground. The asserted claims of the '847 patent require a "first processor" configured to do three things—acquire new data, store the acquired new data, and send an event notification and the acquired new data to the mobile phone. The district court ruled that the evidence would not permit a reasonable jury to find that requirement satisfied by the accused Nike product. *Summary Judgment Opinion*, at *19–20. We agree with the district court.

To argue that Nike practices the "first processor" limitation, Cellspin cites its expert's testimony generally asserting that "the presence of a first processor is evident based upon the functionality of the Accused Devices and the fact that there is operating code." Cellspin's Opening Brief at 93 (citing J.A. 615 ¶ 86, 617–21 ¶¶ 90–93). The

evidence cited by Cellspin, however, does not show that the "first processor" limitation is practiced, as Cellspin's expert identified a "first processor" but did not demonstrate that the identified processor was configured to perform each of the claim-specified functions. J.A. 9445–48, 9475–9509. Although the Apple Watch Nike contains multiple processors, Cellspin did not point to any evidence that any one of them was configured to perform all the claim-required functions. J.A. 8912–13.

For those reasons, we affirm the district court's grant to Nike of summary judgment of noninfringement of the '847 patent.

D

For Nikon and Under Armour, a dispositive issue involves the requirement of "a paired connection" (sometimes a "paired Bluetooth connection"), which is recited in each of the asserted claims for the '794, '752, and '847 patents. The district court's claim construction, which Cellspin does not appeal, requires that the "paired connection" be "established and maintained on a continuous basis." *Claim Construction Order*, at *9. The district court concluded that the evidence would not allow a reasonable finding that the requirement was met by Nikon's or Under Armour's accused products. *Summary Judgment Opinion*, at *22–26, *41–45. We reject Cellspin's challenge to that conclusion.

Nikon uses a two-connection process: First, the Nikon products use a low-speed connection to signal to the mobile phone that there are new images ready to transfer. Then, the mobile phone detects that transfer request and disconnects the low-speed connection before initiating a high-speed connection. As the district court correctly identified, this two-connection process is not "maintained on a continuous basis," and Cellspin did not present evidence permitting a contrary finding.

Cellspin's arguments focus on the *pairing* between the Nikon products and the mobile phone rather than the *connection* between the Nikon products and the mobile phone. During prosecution, however, Cellspin differentiated "establishing a pairing" from "establishing a constant connection," using this distinction to avoid the prior art and asserting that "having a constant *connection* would be the key." J.A. 8177 (emphasis added). Thus, Cellspin's arguments relating to pairing through the exchange of link keys provide no basis for finding that a continuous connection is maintained.

The Under Armour products use a connection that activates for a short period of time before going to sleep and disconnecting until the next connection event. J.A. 14717–27. That disconnecting feature saves power and makes the Bluetooth connection "Low Energy." J.A. 14639–40, 14717–19. Cellspin failed to provide evidence contrary to Under Armour's evidence of this noncontinuous connection. Instead, Cellspin repeats its pairing arguments, asserting that "the condition of having an exchanged link key" constitutes a continuous connection—an assertion at odds with the district court's claim construction. J.A. 720 ¶ 69.

Given this record, we affirm the district court's grant to Nikon and Under Armour of summary judgment of noninfringement of the '794, '752, and '847 patents.

## III

As discussed above, we do not address the remaining aspects of the district court opinion. Our conclusions on the four issues reviewed here suffice to support summary judgment as to all claims and all parties. We therefore affirm the district court's grant of summary judgment of noninfringement of the '794, '752, and '847 patents.

**AFFIRMED**